# DECLARATION OF JOHN BRINSON

I, John Brinson, hereby state and declare as follows:

1. All of the statements made herein are based on my personal knowledge and if called as a witness I could and would testify competently thereto.

2. I am a defendant in the case entitled <u>United States v. Arlan Wesley Harrell</u>, 17-CR-00404-AB. I submit this declaration in support of the motion to suppress my post-arrest statements, which are contained in a four-part video-taped post-arrest interrogation. I submit this declaration under the authority of <u>Simmons v. United States</u>, 390 U.S. 377 (1968) and pursuant to Local Criminal Rule 12-1.1 for the Central District of California. It is my understanding that nothing I say in this declaration, or the fact of its existence, can or will be used against me or admitted into evidence in the prosecution's case-in-chief at trial; and I expressly reserve my Fifth Amendment rights.

3. I was arrested on June 13, 2017 in Fresno, CA. On the same day, immediately following my arrest, I was subjected to a post-arrest interrogation conducted by HSI agents Greg Squire and John Kuzma at the Fresno County

Sheriff's office. In accordance with the requirements under Local Criminal Rule 12-1.1, the facts supporting this motion are set forth below:

    a. I was under overwhelming pressure to submit to the interrogation and to answer questions on June 13, 2017. I was in a state of great fear and was coerced into answering questions because I felt had no choice but to submit to questioning. I was not in a clear state of mind and unable to think things through as a result the pressure from the agents to comply with their demands to cooperate with them.

    b. From the outset of the interview when Agent Squire read the Miranda warnings, he immediately began explaining to me how he wanted the interview to proceed and he set an aggressive agenda that resisted any attempt on my part to assert my right to an attorney or to refuse answering his questions, even though I tried to hold out for the first hour. Among the tactics used by agent Squire was his statement that he wanted to have an "open and honest" conversation with me and warned me that before I say anything he wanted me to know some of the evidence law enforcement agents had gathered and who the law enforcement agents had been speaking to. I felt pressured by agent Squire to speak without

the presence of an attorney, even though I expressed my desire to have an attorney.

c. I was extremely overwhelmed and confused. I did not want to speak to the agents without the presence of an attorney but I did not want to upset the agents, either. The agents repeatedly talked about my self-preservation, protecting myself, and that it was time to help myself.

d. I made a statement to the agents about having an attorney present which the agents completely ignored. I did not understand the agent's response to my request for an attorney, and their indifference to my statements created extreme anxiety that made me feel that I had no choice but to submit to their demands to speak to them.

e. I was very frightened because I did not want to agitate the agents or appear uncooperative. I struggled for the entire first hour of the interrogation between my desire to have an attorney but also my fear of antagonizing the agents, and as a result I sat silently for a long time hoping that by remaining silent for so long, the agents would give in and respect my rights by arranging for me to have an attorney. I hoped that if I just remained silent and did not answer their questions they would respect my desire to remain silent and stop asking questions. But that did

not happen. The agents just kept pressing on and on, ignoring my condition and insisting on having a dialogue about the facts of the case. The kinds of questions they were asking were exactly the subject matters that I wanted to consult with an attorney about first before answering; but the agents were persistent, and I did not know how to handle the situation.

f. Over the course of the first hour, my anxiety became so extreme that I became physically ill, and I told the agents that I needed to vomit. One of the agents gestured to me there was a bucket right behind me and then continued asking me questions, ignoring my physical condition. I asked if the agents would hand me the bucket and they did not. I was so sick I could not get up myself to get it.

g. I was sick, scared and extremely confused. The agents kept insisting I answer their questions and telling me I'd get credit for cooperating and I could help myself. All I wanted to do was consult with an attorney; but the agents ignored my condition and repeatedly made statements along the lines of: if you help us, we can help you. I felt overwhelmed and confused by the agent's repeated insistence that I would lose my opportunity to earn credit by cooperating.

4

h. After an hour had passed, I lost the ability to hold out and could no longer handle the pressure exerted on me by the agents. My will was overborne. I felt that I had no choice but to give in and talk to the agents.

i. At no time did I feel that I was speaking to the agents voluntarily or of my own free will. Nor do I feel that I ever waived any of my rights knowingly or voluntarily.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: May 15, 2019

*[signature]*
JOHN BRINSON