GREGORY NICOLAYSEN, SBN 98544
27240 Turnberry Ln, Ste 200
Valencia, CA. 91355
Tel: (818) 970-7247
Fax: (661) 252-6023
Email: gregnicolaysen@aol.com
Attorney for Defendant
JOHN  BRINSON

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br><br>vs.<br><br><br>ARLAN WESLEY HARRELL, et al.,<br><br><br>Defendants, | CASE NO.  CR 17 - 404(A) - AB<br><br>NOTICE OF MOTION AND MOTION BY DEFENDANT JOHN BRINSON TO SUPPRESS PHYSICAL EVIDENCE SEIZED DURING VEHICLE SEARCH, AND FRUITS THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>DATE: OCTOBER 11, 2019<br>TIME: 1:30 p.m.<br>CTRM: The Hon. Andre Birotte, Jr. |

TO THIS HONORABLE COURT AND TO PLAINTIFF UNITED STATES,

THROUGH ITS ATTORNEYS OF RECORD, ASSISTANT U.S. ATTORNEYS

DEVON MYERS AND LAUREN KUPERSMITH:

NOTICE IS HEREBY GIVEN that on October 11, 2019, at 1:30 p.m., before the Honorable Andre Birotte, Jr. Judge of the United States District Court, located at 350 W. First Street, Los Angeles, CA 90012, defendant John Brinson, by and through his counsel of record, Gregory Nicolaysen, will respectfully move this Court for an order (1) suppressing all evidence seized from Mr. Brinson's vehicle and any fruits derived therefrom; and for this purpose, (2) granting an evidentiary hearing to establish facts that support the contentions addressed herein.

This motion is based on the case law cited in the motion and is brought pursuant to this notice of motion, the accompanying memorandum of points and authorities, all papers contained in the district court file, and any additional evidence the court permits counsel to introduce at the hearing on the motion.

By this motion, Mr. Brinson respectfully requests that the Court set an evidentiary hearing and direct the government to produce all officers and agents who participated the search of Mr. Brinson's vehicle and seizure of items therefrom, without the necessity of defense subpoena, to give testimony regarding the subject of this motion.  These include the following:

    1.  Dept. of Homeland Security (DHS) agent John Kuzma;

    2.  DHS agent Elaine Kwong;

    3.  Fresno County Sheriffs Deputy Michelle Veneman

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

         In addition, defendant Brinson requests that the Court direct the government

to produce to the defense at least one week prior the hearing a complete set of the

Dept of Homeland Security and Fresno County Sheriff's Dept policy manuals

covering inventory searches, including any language pertaining to the community

caretaking exception applicable to inventory searches.


DATED: August 12, 2019                    Respectfully Submitted,



                                   _____/S/_____
                                   GREGORY NICOLAYSEN
                                   Attorney for Defendant
                                   John Brinson

MEMORANDUM AND POINTS OF AUTHORITY

I.

INTRODUCTION

A.    Opening Statement

Defendant John Brinson is charged in a First Superceding Indictment

with the following violations: 18 U.S.C. 2252A(g) [Count 1, Engaging in a Child

Exploitation Enterprise]; 8 U.S.C. 2251(a), (e) [Count 13, 14, Production of Child

Pornography].

On June 13, 2017, pursuant to a federal arrest warrant, Mr. Brinson was

arrested as he was walking to his parked vehicle on the street in front of a residence

located at 1029 N. Mariposa Avenue in Fresno, CA. ("the Mariposa residence") by

agents from the Department of Homeland Security (HSI).  Contemporaneously

with his arrest at the site of the parked vehicle, and prior to obtaining a search

warrant, agents searched the vehicle and seized items, including a laptop and

blanket. The vehicle was then towed to a local tow yard, where the vehicle was

again searched, with additional items being seized.  Hours after the searches were

conducted, the DHS agents filed for and obtained a warrant for the search and

seizure of the items already taken from the vehicle.[1]

The items seized from the vehicle are the subject of this motion.

B.   Summary of Defendant's Contentions

While the government appears to contend that the warrantless searches constituted inventory searches, the circumstances in which the searches were conducted directly contradict such a contention, a matter for which an evidentiary hearing is needed with testimony from the officers and agents involved in the searches.

The search warrant does not cure the defects in the warrantless searches, as the warrant applies to items already in the possession of the agents and does not retroactively validate the warrantless search of the vehicle, nor the seizure of the items.  Evidence established at a hearing will demonstrate that the warrantless searches of the vehicle went far beyond the scope of a lawful inventory search, and that obtaining a warrant after the fact was nothing more than a tactic to conceal and disguise the illegality of the warrantless searches.

---

[1]      The search warrant is attached hereto as Exhibit A.  The warrant seeks authorization for both a residence and as to "Items Seized from the Vehicle with License Plate 4VKF538."  This motion pertains only to the items seized from the vehicle.  The residence is not part of this motion.

C.   <u>Statement of Facts</u>

At the time of his arrest, Brinson was walking toward his parked vehicle after exiting the Mariposa residence.  The arresting agents requested consent to search Brinson's vehicle, which Brinson denied.[2]  The agents then proceeded to conduct a warrantless search of the vehicle.  The Custody Receipt generated by the agents that lists items seized shows that the search was conducted at 10:45 a.m.[3]

The vehicle was then towed to a yard, where a second warrantless search was apparently conducted at 11:30 a,m., according to the "Fresno County Sheriff's Office Vehicle Report."[4]

At 4:00 p.m., the agents applied for the search warrant.[5]  By its terms, the warrant purports to seek authorization "seize items in the custody of the Fresno County Sheriff's Department(.)" As written, the warrant application gives the impression that the agents never seized any items and that all seizures prior to seeking the warrant had been conducted by the Fresno County Sheriff's Dept (FCSD), which has retained custody of all items from the vehicle.  The items which were taken from the vehicle are described as follows in the warrant

---

[2]   See Exhibit B: investigative report by DHS agent John Kuzma, at page 5 of 6.

[3]   See Exhibit D: Custody Receipt, signed by DHS agent Elaine Kwong.

[4]   See Exhibit E.

[5]   Exhibit B, at page 5.

application:[6]

> (1) a Dallas Cowboys blanket which matched the blanket
>
> observed in one of the sexually explicit videos associate with
>
> "King"; (2) a document pertaining to the Kings County Unified
>
> School District; (3) receipts to restaurants like Chucky
>
> Cheese's; (4) a boys basketball team photograph; (5) a laptop
>
> bag containing placards with the username "King" handwritten
>
> on the paper, as well as other placards with words indicative of
>
> child sexual abuse; and (6) other documents such as receipts
>
> and envelopes that could provide evidence as to where and
>
> when Brinson traveled with minor victims. Additionally, I
>
> observed a silver Apple laptop computer, bearing serial
>
> number C02H2F31DV13, which was located in the backseat of
>
> the car inside the black computer bag.

Curiously, the warrant application only states that the agent "observed a silver

Apple laptop computer" inside the vehicle, and does not state that the agent(s)

seized it – clearly a tactic to avoid being placed in the position of admitting an

---

[6]    Exhibit A, at page 2 (Bates HARRELL_005259).

illegal warrantless search.

Agent Kwong's warrant application is directly contradicted by reports attached hereto, two of which appear to have been prepared by the agent herself:

(1)  the Custody Receipt (Exhibit C) which shows that the agents seized the laptop from the vehicle at 10:45 a.m.  This is not merely that the agent "observed" Brinson's laptop in the vehicle, as the warrant application states.  The agents took the laptop right there at the scene of the arrest, while the car was parked on the street.  As the agents took the laptop, it was not in the custody of the Fresno Sheriffs Dept, as the warrant application represents.  The Custody Receipt makes that unambiguously clear.  Ironically, it appears that agent Kwong herself wrote the Custody Receipt.

(2) A handwritten listing of items seized, which also appears to have been prepared by agent Kwong.[7]  This list includes the laptop, the laptop bag, the blanket, and miscellaneous documents that are included in the warrant application quoted above, with references to where in the vehicle the item was found (e.g., back seat).  As this list was also prepared by agent Kwong, it directly supports the defense position that the agents seized these items and maintained custody of them up to the time of the warrant application, based on their opinion that these items

---

[7]     See Exhibit D hereto.

were relevant to the criminal investigation – thus contradicting the warrant

application's assertion that the items were being maintained by the FCSD in

accordance with an inventory search.

(3) Further contradiction of the warrant application is found in Fresno County

Sheriff's Office Vehicle Report,"[8] which purports to be an inventory of items taken

from the vehicle at the tow yard.  The list of items is set forth in a category on the

form entitled, "List Property, Tools And Other Items."

Of great significant is the OMISSION of the physical items listed in the two

handwritten forms prepared by agent Kwong (Exhibits C and D), such as the laptop

and the blanket.  They are nowhere to be found in the Vehicle Report (Exhibit E).

In fact, none of the items listed in the search warrant application, quoted earlier in

this motion, is included in the Vehicle Report.  And that is for one simple and

obvious reason: by the time the vehicle reached the tow yard, the agents had

already seized the items they considered relevant to their investigation, such as the

laptop and blanket.

Therefore, by the time agent Kwong submitted the warrant application at 4:00

pm, the agents had taken and maintained custody and control over the items in

question, a fact that directly contradicts the warrant application and raises serious

---

[8]	See Exhibit E hereto.

credibility – and integrity – questions about the agents' practices both in conducting an illegal warrantless search of the vehicle and in misrepresenting the status of the items taken to the issuing judge in the warrant application.

Indeed, the misrepresentations in the warrant application go beyond the subject of items seizued.  For example, the application misrepresents the circumstances of Brinson's arrest, mis-characterizing it as a traffic stop:

1.  "The agents stopped the vehicle and arrested Brinson."[9]  This statement is patently false.  It is an obvious attempt by the agent to justify the towing of the vehicle under Cal Veh Code § 22651, which sets forth the standards by which law enforcement may remove (i.e., tow) a vehicle.  The agents clearly sought to justify the impound of Brinson's vehicle under section 22651(h)(1), which provides:[10]

> When an officer arrests a person driving or in control of a
> vehicle for an alleged offense and the officer is, by this code or
> other law, required or permitted to take, and does take, the
> person into custody.

The agents' reliance on section 22651(h)(1) is clear from the Fresno Sheriffs Vehicle Report (Exhibit E), which expressly cites to section 22651(h)(1) in the

---

[9]      Exhibit A, at page 4, par. 9 (Bates HARRELL_005260).

[10]      A copy of Cal Veh Code § 22651 is attached hereto as Exhibit F.

upper left-hand corner of the report under the heading, "Reason For Impound Or

Storage Authority."

Unfortunately for the government, the characterization is simply untrue and is

directly contradicted by agent Kuzma's report (Exhibit B), which correctly

describes the circumstance in which Brinson was approached by agents and

arrested:

> A few minutes later, Brinson was observed returning to his
>
> vehicle.  At this point, HSI personnel approached the vehicle,
>
> contacted Brinson, and took him into custody without incident,
>
> pursuant to the federal arrest warrant.[11]

Based on the facts presented to this Court by this motion and to be established

by testimony at an evidentiary hearing, defendant Brinson contends that the

warrantless searches of his vehicle and the seizures of the items in question, do not

fall within the purview of an inventory search and should therefore be suppressed.

---

[11]    Exhibit B, at page 5.

D.   Standing

Standing is not an issue here.  Pretrial discovery documents confirm that the vehicle belonged to Brinson:

1.   The report by agent Kuzma states that "Government and law enforcement record checks related to Brinson revealed the following. . . Registered vehicle: Mitsubishi 2002; CA license plate #4VKF538."

2.   This information directly tracks the assertions in the search warrant application regarding Brinson's vehicle: "HSI agents, including myself, were able to locate and identify Brinson when they observed Brinson's 2002 Mitsubishi vehicle, with a license plate (4VKF538) matching that of the vehicle registered to Brinson, parked in front of a residence located at 1029 Mariposa St."[12]

3.   The VIN # of the vehicle is listed in the Fresno Vehicle Report (Exhibit E).  This is the same VIN # set forth in Brinson's DMV records.[13]

---

[12]     Exhibit A, at par. 8 (Bate HARRELL_005260).

[13]     Exhibit G hereto.

1

2

3

II.

4

THIS COURT SHOULD SUPPRESS ALL EVIDENCE SEIZED

5

FROM DEFENDANT BRINSON'S VEHICLE

6

7

AND ANY FRUITS THEREOF, DUE TO ILLEGAL

8

WARRANTLESS SEARCHES AND MISREPRESENTATIONS

9

IN THE SEARCH WARRANT APPLICATION,

10

FOR WHICH A FRANKS HEARING SHOULD BE HELD

11

12

A.    Applicable Standards For Warrantless Inventory Searches

13

14

1.    The Government's Burden To Establish That It Has Satisfied The

15

Community Caretaking Exception

16

17

The Fourth Amendment proscribes warrantless searches and seizures by law

18

enforcement officers as "per se unreasonable . . . subject only to a few specifically

19

established and well-delineated exceptions." United States v. Cervantes, 703 F.3d

20

21

1135, 1138-39 (9th Cir. 2012)("Because warrantless searches are per se

22

unreasonable, the government has the burden of demonstrating that a warrantless

23

24

search or seizure falls within an exception to the Fourth Amendment's warrant

25

requirement."), citing United States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001).

26

27

28

Page 13 of  29

One of those exceptions is an inventory search conducted pursuant to the community caretaking exception of the warrant requirement, subsequent to the impoundment of the vehicle. "The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005).

Under the "community caretaking" doctrine, police may, without a warrant, impound and search a motor vehicle so long as they do so in conformance with the standardized procedures of the local police department and in furtherance of a community caretaking purpose, such as promoting public safety or the efficient flow of traffic. Cervantes, 703 F.3d at 1141. This requirement ensures that impoundments are conducted "on the basis of something other than suspicion of evidence of criminal activity." Miranda, 429 F.3d at 863 (quoting Colorado v. Bertine, 479 U.S. 367, 375 (1987)); see also Florida v. Wells, 495 U.S. 1 (1990) ("[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."). The government bears the burden of establishing that a vehicle's impoundment and search are justified under an exception to the warrant requirement. Cervantes, 703 F.3d at 1140-41.

In this case, the search warrant application prepared by agent Kwong characterizes the searches of defendant Brinson's vehicles as a single search

described as a "vehicle and inventory search".[14] In his report, agent Kuzma

likewise uses the term, "inventory search".[15]  SA Kwong states:

The Cervantes opinion, in which the Ninth Circuit reversed the district court's

denial of a suppression motion challenging an inventory search, provides useful

guidance on the issues presented here, including its discussion of the officers'

reliance on  California Vehicle Code § 22651(h)(1), on which the agents in this

case likewise rely to justify the  impoundment" of Brinson's vehicle.[16]

In Cervantes, the appellant came into contact with police pursuant to a traffic

stop. He informed the arresting officers that his license had been suspended as a

result of an arrest for driving under the influence. After finding no driver's license

under the name that appellant provided, the officers decided to impound his vehicle

and conduct an inventory search.  703 F.3d at 1138.

In denying Cervantes' suppression motion challenging the inventory search,

the district court found that the officers had lawfully impounded Cervantes's

vehicle pursuant to the California Vehicle Code, citing section 22651(h)(1), and

LAPD policy; and that the impoundment and search were justified under the

[14] Exhibit A, at  pages. 4-5, par 10 (Bates HARRELL_005256).

[15] Exhibit B, at page 5 (Bates HARRELL_005488).

[16] Exhibit E, which cites to Cal. Veh. Code  § 22651(h)(1) under heading, "Reason For Impound
Or Storage Authority."

community caretaking exception to the Fourth Amendment's warrant requirement.

In reversing the district court's denial of the suppression motion, the Ninth Circuit in Cervantes described the limits of the community caretaking exception:

> Under the community caretaking exception, "police officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic." Miranda v. City of Cornelius, 429 F.3d 858, 864 (9th Cir. 2005) [internal quotation marks omitted].  Once a vehicle has been legally impounded, the police may conduct an inventory search, as long as it conforms to the standard procedures of the local police department. South Dakota v. Opperman, 428 U.S. 364, 375-76, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976);  see also United States v. Wanless, 882 F.2d 1459, 1463 (9th Cir. 1989). However, "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." Florida v. Wells, 495 U.S. 1, 4, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990).

Cervantes, 703 F.3d at 1141.

Quoting from the earlier Ninth Circuit opinion in United States v. Caseres, 533 F.3d 1064, 1074 (9th Cir. 2008), the Cervantes opinion emphasized the strict requirements of inventory searches in regard to the protection of an individual's property, and specifically noted that the community caretaking function standard must be satisfied whenever the officers seek to justify the impoundment under CVC section 22651(h)(1):

> [W]arrantless inventory searches of vehicles are lawful only if conducted pursuant to standard police procedures that are aimed at protecting the owner's property and at protecting the police from the owner charging them with having stolen, lost, or damaged his property. Additionally, a vehicle can be impounded under [California Vehicle Code] § 22651(h)(1) only if impoundment serves some "community caretaking function."

Cervantes, 703 F.3d at 1141, quoting Caseres, 533 F.3d at 1074-75 (inventory search held unconstitutional because government presented no evidence that impoundment served any caretaking function).

Adopting the analysis in Caseres, the Cervantes opinion made clear that if "the government fail[s] to establish a community caretaking function for the

impoundment" then it "fail[s] to establish the constitutional reasonableness of the seizure and subsequent inventory search." Id.


B.   The Government Cannot Meet Its Burden Of Demonstrating That the Community Caretaking Exception Applies

The government has not established that Brinson's vehicle was removed consistent with the community caretaking exception as the government's documents fail show that Brinson's parked vehicle was in a position to "jeopardize public safety and the efficient movement of vehicular traffic". Cervantes, 703 F.3d at 1141, citing Miranda, 429 F.3d at 864.

Because Brinson's vehicle was unlawfully impounded, the subsequent searches were illegal, and all seizures must therefore be suppressed. United States v. McClendon, 713 F.3d 1211, 1215 (9th Cir. 2013) citing Wong Sun v. United States, 371 U.S. 471, 484-87 (1963)("fruit of the poisonous tree" doctrine).

The government relies on CVCode § 22651(h)(1) as its authority for the impoundment of Brinson's vehicle.  However, subsection (h)(1), quoted below, does not support the government:

A peace officer, as defined in Chapter 4.5 (commencing with

Section 830) of Title 3 of Part 2 of the Penal Code, or a

regularly employed and salaried employee, who is engaged in

directing traffic or enforcing parking laws and regulations, of a

city, county, or jurisdiction of a state agency in which a vehicle

is located, may remove a vehicle located within the territorial

limited in which the officer or employee may act, under the

following circumstances:

*     *     *

(h)(1) If an officer arrests a person *driving or in control of a*

*vehicle for an alleged offense and the officer* is, by this code or

other law, required or permitted to take, and does take, the

person into custody. [Italics Added]


The circumstances of this case do not satisfy criteria of subsection (h)(1).

Brinson was not "driving." The vehicle was parked.  Further, Brinson was not "in

control of a vehicle."  He was walking to his parked vehicle when the agents

approached him and took him into custody, as confirmed by agent Kuzma's report

(Exhibit B):

A few minutes later, Brinson was observed *returning to his*

*vehicle*. At this point, HSI personnel approached the vehicle,

Page 19 of  29

contacted Brinson and took him into custody without incident

pursuant to the federal arrest warrant. (*Italics added*).

The agents were not oblivious to the noncompliance with subsection (h)(1) at

the time they applied for the warrant at 4:00 p.m., hours after having conducted the

warrantless search of Brinson's vehicle and seizure of items in question.  In an

attempt to disguise the noncompliance, agent Kwong proceeded to mischaracterize

the circumstances of the arrest as a traffic stop so as to place it within the "driving"

criterion of subsection (h)(1):

> The agents *stopped* the vehicle and arrested Brinson.[17]

> (*Italics added*).

This assertion is patently false and constitutes a misrepresentation to the

issuing judge, for which a *Franks* hearing should be conducted.

As the government has failed to comply with the requirements of subsection

(h)(1) to CVC §22651, the government clearly cannot establish that the

impoundment of Brinson's vehicle served any caretaking function.  As the

impoundment was conducted illegally, it is irrelevant whether the warrantless

search of the vehicle conformed to the standard procedures of Fresno County

---

[17] Exhibit A, Bates No.  HARRELL_005260 SA Kwong's search warrant application.

Sheriffs Dept because such conformity only comes into play after it has been established that a valid impoundment was conducted, which did not occur here. Cervantes, 703 at 1141 ("Once a vehicle has been legally impounded, the police may conduct an inventory search, as long as it conforms to the standard procedures of the local police department.").

In fact, what the officers did in this case was to rummage through Brinson's vehicle as soon as he was intercepted while walking back to his car and placed under arrest. The officers grabbed the laptop, blanket and other items that they viewed as incriminating and then let the vehicle be impounded to the tow yard, where the inventory list of remaining items taken from the vehicle fails to show any of the items in question that the agents had already seized. Case law is clear that such rummaging fails to qualify as an inventory search. Cervantes, 703 F.3d at 1141 ["However, 'an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence(,)'" quoting Florida v. Wells, 495 U.S. 1, 4 (1990)].

For the reasons discussed herein, all items seized from Brinson's vehicle, and the fruits thereof, including any contents of Brinson's laptop obtained during a search of the laptop, must be suppressed.

.     C.     The Warrant Does Not Cure The Noncompliance With The

Inventory Search Standard, And A *Franks* Hearing Should Be

Conducted To Establish The False Representations In The Warrant

Application

1.     Standards For A *Franks* Hearing

"In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court determined

the circumstances in which it is appropriate to suppress evidence derived from a

warrant issued on the basis of an affidavit that contained false statements

concerning probable cause." United States v. Ippolito, 774 F.2d 1482, 1484- 85

(9th Cir. 1985) (referencing Franks).

To prevail on a Franks challenge, the defendant must establish two things by a

preponderance of the evidence: (1) the affidavit contains intentionally or recklessly

made false or misleading statements or omissions in support of the warrant; and (2)

the false or misleading statement or omission was necessary to a finding of

probable cause. United States v. DeLeon, 979 F.2d 761, 763 (9th Cir. 1992);

United States v. Perkins, 850 F.3d 1109, 1116 (9th Cir. 2017) (quoting United

States v. Martinez-Garcia, 397 F.3d 1205, 1214-15 (9th Cir. 2005).

Further, "[a] deliberate or reckless omission by a government official who is

Page 22 of  29

not the affiant can be the basis for a Franks suppression [hearing]." DeLeon, 979 F.2d at 764; see also United States v. Aviles, 170 F.3d 863, 867 (9th Cir. 1999) (finding a task force member "has an obligation to disclose to a fellow task force member all information material to [a warrant] application."), amended on other grounds at 216 F.3d 881 (9th Cir. 2000).

Under the first step of Franks, the defendant must show by a preponderance of evidence that the mistake was the result of more than a mistake or negligence. Id. (citing Franks). Clear proof of a deliberate or reckless omission or misrepresentation is not required. United States v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985), amended on other grounds, 769 F.2d 1410 (9th Cir. 1985). Rather, all that is required for a Franks hearing is that the defendant make a substantial preliminary showing of deliberate or reckless falsity. Id.; United States v. Chesher, 678 F.2d 1353, 1362 (9th Cir. 1982).

The Ninth Circuit has found that an officer affiant who selectively includes information bolstering probable cause, while omitting information that does not, acts intentionally or recklessly and misleads the magistrate. Perkins, 850 F.3d at 1117-18. "An affiant can mislead a magistrate by reporting less than the total story, thereby manipulating the inferences a magistrate will draw." Id. (citing Stanert, 762 F.2d at 781) (internal quotation marks and formatting omitted). The magistrate

must be able to make an independent evaluation of the matter set forth in a warrant affidavit, and incomplete and misleading recitation of the facts and withholding of evidence available to the affiant usurps the magistrate's duty to do so. Id. at 1116-18.

Under the second step of Franks, the Court determines whether an omitted fact or misrepresentation is material by inquiring into "whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omission" or purged of falsities. Id; Stanert, 762 F.2d at 782. "The effect of misrepresentations and omissions on the existence of probable cause is considered cumulatively." Stanert, 762 F.2d at 782. If after this inquiry, there is not a substantial basis for concluding that probable cause existed to support the search warrant, a Franks hearing should be conducted. Id.

> 2. A *Franks* Hearing Should Be Conducted Because The Facts Presented In This Motion Make A Substantial Preliminary Showing That Agent Kwong Acted With Intentional Or Reckless Disregard For The Truth In The Submission Of The Search Warrant Application

The facts demonstrating a substantial preliminary showing have been set forth

in the factual statement early in this motion.  To briefly summarize,

1.   The warrant application misrepresents that Brinson was stopped in a traffic stop so as to give the issuing judge the false impression that he was driving, for the purpose of justifying the impound under CVC § 22651(h)(1).  (Exhibit F).  In fact, the agents intercepted Brinson as he was walking back to his parked car and placed him under arrest. (Exhibit B).  The misrepresentation is material because it was strategically aimed at deceiving the issuing judge into believing that the impound was justified under subsection (h)(1) of §22651, when in fact the circumstances here do not fall within the purview of subsection (h)(1), or any other subsection, of §22651, which means quite simply that the impound was illegal.

2.   The warrant application misrepresents that the seized items in question are in the custody of the Fresno County Sheriffs Dept, when the custody receipts written by agent Kwong show that the agents removed the items at issue from the vehicle, including the laptop at 10:45 a.m. – more than five hours prior to obtaining the search warrant.  (Exhibits C and D).  The Fresno County Vehicle Report (Exhibit E) lists items taken from the vehicle at the tow yard,

and none of the items at issue – such as the laptop and blanket – are included in that list.  Moreover, the search warrant application goes to great lengths to mislead the issuing judge in regard to the fact that the laptop had been seized by agents at 10:45 a.m., by stating in the application that the agents merely "observed" a laptop in the vehicle.

The evidence presented by this motion establishes that agent Kwong's affidavit contained several false statements and omissions, and the false statements and omissions were all facts that agent Kwong had readily available to her, if not already within her personal knowledge.

Agent Kwong not only failed to describe the evidence accurately, but she did not attach to the search warrant a copy of the custody receipts showing that she had already taken possession of the laptop and other items at issue at 10:45 a.m. and personally handwrote the custody lists of items seized by the agents.  She withheld this information despite having a duty to provide all relevant information to the magistrate. *See* Perkins, 850 F.3d at 1116. ("An officer presenting a search warrant application has a duty to provide, in good faith, all relevant information to the magistrate."). Moreover, her outright misrepresentation that "[t]he agents stopped the vehicle and arrested Brinson" is simply an outright lie designed to trigger the

caretaking exception by purporting to show compliance with subsection (h)(1) of

CVC §22651.  These misstatements and omissions should indicate to this Court

that there is a fair probability that agent Kwong acted with at least a reckless

disregard for the truth. *See* Perkins at 1118-19 (finding the affiant acted with at

least a reckless disregard for the truth by "providing an incomplete and misleading

recitation of the facts and withholding the images," thus "usurp[ing] the

magistrate's duty to conduct an independent evaluation of probable cause.").

Moreover, the false statements and omissions raised by this motion all bolster

the case for probable cause, which suggests the mistakes were not the product of an

innocent mistake or mere negligence. *See,* Chism v. Washington State, 661 F.3d

380, 388 (9th Cir. 2011).

In sum, Defendant Brinson has presented a record adequate to show by a

preponderance of the evidence that agent Kwong at least recklessly made

misleading statements and omissions in support of the warrant application.

Defendant has therefore satisfied the first step of Franks.

As discussed in detail above, "[u]nder the second step of Franks, the question

is whether the omitted fact is 'material;' that is, whether it is 'necessary to the

finding of probable cause.'" Perkins, 850 F.3d at 1119 (quoting Franks, 438 U.S. at

156). Once corrected, the search warrant application in this case would show that

the vehicle impound laws had not been complied with and that the warrantless

search of the vehicle and seizure of the items at issue could not be justified under

the inventory search doctrine.  In this way, significant credibility and integrity

issues arise that warrant further scrutiny into the accuracy and reliability of the

search warrant application as to matters that can only be properly dealt with during

witness examination at an evidentiary hearing.  The question then is whether a

corrected affidavit would be adequate for a finding of probable cause that

Defendant Brinson committed the child pornography offenses referenced in the

search warrant.  On this basis, the defense has satisfied the second step and is

therefore entitled to a Franks hearing.


IV.

CONCLUSION

For the reasons discussed herein, defendant Brinson respectfully requests that

the Court schedule a Franks hearing, at the conclusion of which the defense will

request that all items seized by the agents from Brinson's vehicle, including the

laptop and blanket, be suppressed.

1

Dated: August 12, 2019                    Respectfully Submitted,

2

3

4                                         _____/S/_____

5                                         GREGORY NICOLAYSEN

                                          Attorney for Defendant
6                                         John Brinson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28