1        UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5   UNITED STATES OF AMERICA,        )
                                     )
6                   PLAINTIFF,       )
                                     )
7          vs.                       ) No. CR 17-404-AB
                                     )
8   JOHN RICHARD BRINSON, JR.,       )
                                     )
9                   DEFENDANT.       )
    _____ )

10

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14               FRIDAY, APRIL 22, 2022

15                   10:14 A.M.

16             LOS ANGELES, CALIFORNIA

17

18

19

20

21

22   _____

23              **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
                FEDERAL OFFICIAL COURT REPORTER
24              350 WEST FIRST STREET, ROOM 4311
                LOS ANGELES, CALIFORNIA 90012
25                  cmjui.csr@gmail.com

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1   APPEARANCES OF COUNSEL:

2   FOR THE PLAINTIFF:

3           OFFICE OF THE UNITED STATES ATTORNEY
            BY: DEVON A. MYERS
4           ASSISTANT U.S. ATTORNEY
            312 NORTH SPRING STREET
5           LOS ANGELES, CALIFORNIA 90012
            (213) 894-8550/0649
6

7           OFFICE OF THE UNITED STATES ATTORNEY
            BY: LAUREN S. KUPERSMITH
8               KYLE P. REYNOLDS
            ASSISTANT U.S. ATTORNEYS
9           1301 NEW YORK AVENUE NW
            WASHINGTON, D.C. 20530
10          (202) 514-1564
            (202) 616-2842
11

12  FOR THE DEFENDANT:

13          GREGORY NICOLAYSEN LAW OFFICES
            BY:  GREGORY NICOLAYSEN, ATTORNEY AT LAW
14          27240 TURNBERRY LANE SUITE 200
            VALENCIA, CALIFORNIA 91355
15          818-970-7247

16

17  ALSO PRESENT:  ELAINE KWONG, HSI SPECIAL AGENT

18

19

20

21

22

23

24

25
```

```
 1            LOS ANGELES, CALIFORNIA; FRIDAY, APRIL 22, 2022

 2                          10:14 A.M.

 3                            - - -

 4            THE CLERK:  Calling Criminal Case 17-404, United

 5  States of America versus John Richard Brinson, Jr.

 6            Counsel, please state your appearances.

 7            MS. MYERS:  Good morning, Your Honor.

 8            Devon Myers on behalf of United States.  With me

 9  at counsel table is CEOS DOJ trial attorney

10  Lauren Kupersmith, who will be arguing today, CEOS DOJ trial

11  attorney, Kyle Reynolds, and HSI Special Agent Elaine Kwong.

12            THE COURT:  All right.  Good morning to you all.

13            MR. NICOLAYSEN:  And good morning, Your Honor.

14            Gregory Nicolaysen appearing as counsel of record

15  for the defendant, John Brinson, who is present.

16            Your Honor, I would ask if the Court might

17  consider removing the restraints.  I don't know how long --

18            THE COURT:  Yeah.  Is there an issue that I need

19  to be made aware of as far as Mr. Brinson security-wise?

20            Can we remove the arm restraints at least, please.

21  Okay.  Thank you.

22            MR. NICOLAYSEN:  All right.  Thank you,

23  Your Honor.

24            THE COURT:  So we're here for sentencing today.

25            I've had the chance to review the numerous
```

1   documents that were filed in this case -- the PSR, the

2   revised PSR, the addendum to the PSR, the government's

3   position, defendant's position, the objections to the

4   government's position, the government's opposition, the

5   letters and the reports submitted.

6           I have had a chance to review all those.  I think

7   the parties know, obviously, I am familiar with the case by

8   virtue of the -- I have handled the other sentencings, and I

9   think I see some family members that have testified and been

10  before the Court in other proceedings.

11          Is there anything that I have missed, from the

12  government's perspective?

13          And I'm sorry.  One other thing.  One of the

14  documents, Exhibit D, was -- I got the clean version.

15          I actually thought -- and I was going to inquire

16  about it.  I thought it was encrypted.  And you were showing

17  me the encrypted version of the report.  And so I haven't

18  had a chance to review that this morning.

19          Anything else that I may have missed from the

20  government's perspective?

21          Is it Ms. Kupersmith?

22          MS. KUPERSMITH:  There is nothing else,

23  Your Honor, although we do have evidence we would like to

24  submit today.

25          THE COURT:  All right.  Anything that I have

```
 1   missed from the defense perspective?

 2             MR. NICOLAYSEN:  No, Your Honor.

 3             I would respectfully object to any additional

 4   evidence being presented today, and that's part of my

 5   objections that I filed.

 6             THE COURT:  Right.  Okay.  And so let's talk about

 7   that for a moment, I guess.

 8             So Mr. Nicolaysen, you submitted your papers --

 9   you have raised some points -- and you are saying that the

10   government should not be able to respond to those points?

11   Or what's the issue?

12             MR. NICOLAYSEN:  If the government wishes to

13   respond to my sentencing brief, the government certainly

14   should have an opportunity to do that, but I would ask that

15   the Court set a briefing schedule and not conduct a hearing

16   until all of the government's evidence has been submitted in

17   writing so that I can properly respond and be prepared to

18   address it at the sentencing hearing.

19             THE COURT:  And why does it need to be submitted?

20   Well, I guess first off, the discovery, you have received

21   all of the discovery in the case.  Correct?

22             MR. NICOLAYSEN:  Yes.  It's very voluminous and --

23             THE COURT:  And you have reviewed it with

24   Mr. Brinson; right?

25             MR. NICOLAYSEN:  I have gone through the discovery
```

```
 1   with Mr. Brinson.  I have done all of that but --

 2           THE COURT:  Right.  So then as it relates to the

 3   evidence that's at issue in this case or at least based on

 4   some of the things that you have raised, are you -- I mean,

 5   I am trying to understand.  None of this is a surprise or,

 6   in other words, the government is not going to present

 7   something -- well, I don't believe the government is going

 8   to present anything new.  They are going to submit the

 9   evidence that was provided during the course of discovery in

10   the case.

11           MR. NICOLAYSEN:  The government is presenting

12   opinions that they have not substantiated.

13           For example, the government has always made

14   available -- I don't disagree with that at all -- the images

15   and the videos.  They are controlled by the Adam Walsh Act.

16   I understand all of that.

17           But what the government is arguing in its

18   papers -- and that's one of the key reasons I have raised

19   foundational objections -- is their opinion that a certain

20   video, a certain image was created by Mr. Brinson, not just

21   that it may have been found on his laptop.  That doesn't

22   answer the question.  Or that it depicts him specifically

23   doing something.

24           THE COURT:  And so you --

25           MR. NICOLAYSEN:  Oh, I do dispute.  I absolutely
```

```
 1    do.  And my objection is foundational, and it's an important

 2    objection because, without any declarations to lay a

 3    foundation for those opinions, those interpretations of the

 4    videos and the images, the government's sentencing brief is

 5    simply a running narrative.

 6              Let's remember -- and I know Your Honor knows

 7    this, but I want the record to be clear, and I argue it in

 8    my papers -- the government's sentencing brief goes far

 9    beyond the charges in this federal Indictment.

10              THE COURT:  But there is -- I mean, I guess, as it

11    relates to that, almost every sentencing -- and I think

12    Mr. Brinson was told this during the sentencing, during the

13    change of plea colloquy, that the Court can consider

14    evidence outside the four corners of the Indictment,

15    relevant conduct and certainly outside of the factual basis.

16              MR. NICOLAYSEN:  To the extent the government

17    seeks to have this Court consider evidence outside the four

18    corners of the Indictment, which means we are going outside

19    of relevant conduct within the guidelines, it is of

20    particular importance that a proper foundation of

21    reliability and accuracy is established.

22              The government's papers are not depending on the

23    factual basis that we agreed on for the guilty plea.  They

24    are going far beyond that.

25              THE COURT:  But I guess, as it relates to that,
```

```
 1    the government doesn't have to stick to the four corners of
 2    the factual basis.
 3            MR. NICOLAYSEN:  Oh, that's right.  I agree with
 4    all of that.  But when they go beyond the factual basis, as
 5    the Court knows, a foundational showing of reliability is
 6    critical.  That's fundamental to due process.
 7            THE COURT:  And what's the standard?  What's the
 8    burden of proof as it relates to that foundational element?
 9    Isn't it a preponderance of the evidence?
10            MR. NICOLAYSEN:  It is a preponderance within the
11    guidelines.  We all know the guidelines are preponderance
12    driven.
13            THE COURT:  Okay.
14            MR. NICOLAYSEN:  But when we look at due process
15    as a constitutional consideration, which is really what
16    reliability is about, it goes -- the Appellate Court looks
17    to the abuse of discretion standard in terms of whether
18    Your Honor found that there was or wasn't enough
19    reliability.  And here --
20            THE COURT:  So hold on one second.
21            MR. NICOLAYSEN:  Sure.
22            THE COURT:  Then as it relates to that, then the
23    review would be whether or not the Court abused its
24    discretion in determining whether or not the evidence --
25            MR. NICOLAYSEN:  Met the due process standard
```

```
 1    of --

 2              THE COURT:  By a preponderance of the evidence --

 3              MR. NICOLAYSEN:  Correct.

 4              THE COURT:  -- right?

 5              MR. NICOLAYSEN:  The government should not be

 6    allowed to come to this hearing and present something that

 7    could have been and should have been presented in their

 8    papers.

 9              THE COURT:  Why could it and should it have been

10    if in fact the only time that this issue has been raised is

11    in response to your papers to which the government says,

12    Well, we're here now.  It's a preponderance of the evidence.

13    And to your point, whether I decide to hear it or not will

14    be evaluated under an abuse of discretion.

15              MR. NICOLAYSEN:  But it's unfair surprise.  Why --

16              THE COURT:  Wait.  Hold on.  Hold on.

17              Why is it a surprise if the evidence that's going

18    to be presented -- maybe -- maybe I am wrong on this.  But I

19    believe the evidence, to the extent the government is going

20    to present any, would be the discovery that was provided to

21    you and your client leading up to the change of plea.

22              MR. NICOLAYSEN:  Not in terms of their

23    interpretation of the evidence.

24              The evidence -- the discovery was produced, but,

25    when the government argues in its papers, as they have, that
```

```
 1   a certain video or image was created by Mr. Brinson, depicts
 2   Mr. Brinson doing certain things, that's not the discovery
 3   per se.  That's the government's interpretation.
 4          That could -- just a moment, if I may.  That could
 5   take us into the forensic world of a forensic analyst
 6   saying --
 7          THE COURT:  Okay.  So -- but hold on.  Hold on.
 8   Let me ask you this:  If there are statements -- I don't
 9   know this to be true.  I just want to play this out for a
10   second.
11          If there are statements made by Mr. Brinson
12   suggesting that he made the video or he's in the video, what
13   would your response be to that?  Are you --
14          MR. NICOLAYSEN:  Well, my response, first of all,
15   would be put them in your sentencing papers.  Why weren't
16   they in your sentencing papers?
17          That would be part of the foundation.  Why are
18   you, the government, showing up at the sentencing hearing
19   and pointing to something said -- I don't know where he said
20   it.  I don't think he did.
21          But let's say the government claims he made a
22   statement in his four-hour post-arrest interview.  That
23   should have been in the sentencing position.
24          There should have been a declaration by an agent,
25   by a forensic analyst, by someone who attests to facts that
```

```
 1   would support the narrative that the government has given
 2   because their position paper is just a running narrative
 3   with unsubstantiated assertions that a certain video was
 4   created by Mr. Brinson -- or image, a certain image or video
 5   depicts Mr. Brinson in a certain way, and that's beyond just
 6   producing discovery.  That's in the world of interpretation.
 7   And that should have been part of the sentencing position
 8   paper.
 9          And if the government is seeking to call a witness
10   today, I strenuously object to that.  That is the epitome of
11   unfair surprise.
12          So what they should do is submit their response in
13   writing, give me an opportunity to respond to that -- and I
14   am not denying the government an opportunity to respond, but
15   they shouldn't respond here at the hearing.
16          THE COURT:  Okay.  Let me hear from the
17   government.
18          Ms. Kupersmith.
19          MS. KUPERSMITH:  Thank you, Your Honor.
20          Just to clarify, you are correct that none of this
21   is new.  This is all stuff that was part of the original
22   discovery.  It is also stuff that in our sentencing papers
23   we said that we would make available to the Court and that
24   we told defense counsel that, if he wanted to come and see
25   it -- the specific ones that we discussed, that we would
```

 1   also make that available to the Court.

 2              In terms of the argument for the sentencing

 3   hearing, we are here for a sentencing hearing.  This is not

 4   a trial.  The Federal Rules of Evidence don't apply.

 5   Hearsay doesn't exclude things.

 6              We -- in sentencing hearings, the Court can

 7   consider any relevant evidence without concern for its

 8   admissibility provided that there is some indicia of

 9   reliability.

10              THE COURT:  And Mr. Nicolaysen raises the points

11   of some sort of interpretation or some sort of foundational

12   evidence to support, I guess, the couple of examples, I

13   think, in paragraph 68 that Mr. Brinson is depicted in these

14   videos and that he's either baby-sitting overnight or things

15   of that nature.

16              How would the government intend to prove that at

17   the hearing today?

18              MS. KUPERSMITH:  Well, we have the certain bits of

19   evidence that we did submit as part of our papers which

20   includes the chats, which includes some of the posts, which

21   includes description of the videos.

22              But what we also have here today is we have a

23   declaration by Special Agent John Kuzma that also sets more

24   of the stage of that.

25              THE COURT:  Has that been filed?

```
 1          MS. KUPERSMITH:  It has not.  We have it here
 2   today.
 3          THE COURT:  Got it.
 4          MS. KUPERSMITH:  And we have -- more specifically,
 5   we have the images and videos with us today, and we would
 6   present that to the Court.
 7          We have some logistical questions to deal with
 8   through the Court of the best way to do that, but what we
 9   would suggest is providing that to you in-camera for you to
10   review because of the nature of it.
11          And we also have a separate stand-alone computer
12   that Mr. Nicolaysen can review with that, and it's presented
13   to the Court as evidence as part of the sentencing hearing.
14          THE COURT:  And just walk me through your -- you
15   have got a declaration from an agent.  Is the agent here or
16   no?
17          MS. KUPERSMITH:  The agent is here, yes,
18   Your Honor.
19          THE COURT:  And he's going to say -- the agent is
20   going to say what?
21          MS. KUPERSMITH:  In the declaration, they provide
22   details about the videos that we are then providing as
23   exhibits to the Court.
24          We do not anticipate having him testify.  We don't
25   believe that that is necessary.  But if the Court finds that
```

```
 1    the evidence is of a sufficient reliability, then the Court
 2    can do that, and that does not have to be in the form of
 3    testimony.  A declaration is one way to do that.
 4          The other way that the Court can decide that
 5    something is reliable is the way that we introduced it in
 6    our papers or the way that we have the videos themselves.
 7    The Court can -- the defendant --
 8          THE COURT:  Let me stop you.
 9          The one issue that I think Mr. Nicolaysen raise --
10    well, not one.  One of the issues he raised is he -- I think
11    he is disputing that Mr. Brinson's in these videos.
12          What's the evidence that the government suggests
13    or would submit to counter that?  Is Kuzma going to say it's
14    him?  And if so, how does he know it's him?  Is there some
15    other evidence via the form of Mr. Brinson and/or other
16    co-defendant saying it's Mr. Brinson?  What's the chain as
17    it relates to that?
18          MS. KUPERSMITH:  Absolutely.
19          So the declaration lays out some of that, of why
20    the individual videos we know it is Mr. Brinson.
21          But some of the videos also have Mr. Brinson's
22    face in it.  They have Mr. Brinson's voice in it.  They have
23    Mr. Brinson saying things that match up to the chat messages
24    that we included in our sentencing papers.
25          And all in all, we submit to the Court that the
```

```
 1    reliability of that evidence and the evidence we submitted

 2    as part of our memorandum, the evidence that we have here

 3    today, is all corroboration of itself.

 4              It helps enhance the reliability because of the

 5    similarities in the videos, because of the victims that are

 6    in the videos.  The victims call him out by the name that we

 7    know he is called.  He himself refers to himself as that

 8    name.

 9              Some of the videos have basically an electronic

10    signature by the defendant because it has a picture that was

11    taken with a note that says "King of Website A," and it was

12    posted on Website A, and then that note was found in

13    Mr. Brinson's possession.

14              And all of that is laid out in the declaration to

15    support the reliability of this evidence.

16              THE COURT:  And let's talk, while you're here,

17    logistics.  Are you proposing to play these videos here in

18    court or --

19              MS. KUPERSMITH:  We are not, due to the

20    sensitivity of these videos.  But we do have them available,

21    and we have them, and we were going to bring it to the

22    Court's attention to see the best way to do this.

23              We have a few different options.  We have them on

24    a password-protected flash drive, if the Court wanted to

25    review them in chambers.  We also have a stand-alone
```

```
 1   computer that we could use to show them to the Court that
 2   way.  And in fact, we have two stand-alone computers in case
 3   there was an issue of showing them to Mr. Nicolaysen
 4   separately.  So we have a number of ways to do that.
 5           And I just -- one other thing to point out,
 6   Your Honor, is that I've -- Your Honor is familiar with this
 7   case.  We have been here a number of times, and we have not
 8   gotten to the point where we felt we had to show these
 9   videos.  These are extremely sensitive.  There is a lot of
10   logistic concerns how to do this while still protecting the
11   victims' privacy.
12           THE COURT:  No, look.  I'm not relishing -- I am
13   not advocating for it.  It just -- I think we now have a
14   situation where Mr. Nicolaysen is saying, I don't know.
15   There is no proof to show that it's this defendant on the
16   video.
17           MR. NICOLAYSEN:  Or that he created them.  This is
18   a manufacturing child porn case.
19           THE COURT:  Well, both things.  And so --
20           MR. NICOLAYSEN:  I would ask for a proffer on is
21   the government claiming that my client created -- this is
22   a --
23           THE COURT:  And when you say "created," is it by
24   virtue of like him holding the camera, or is it enough that
25   he is on video doing the acts that are alleged?
```

```
 1          I mean, what's -- what is your sort of objection?
 2   If it's a video of him in -- if there is a video where he is
 3   depicted on there -- and let's assume for the sake of this
 4   discussion it's established that it's him.  You still say
 5   there is no proof he created it?
 6          MR. NICOLAYSEN:  Yes.  Being depicted in a video
 7   is not identical legally to manufacturing child porn.
 8          This is -- I have to be very strict about this,
 9   Your Honor.  In federal child pornography litigation, there
10   are four categories:  Possession, receipt, distribution, and
11   manufacturing.  And the heart of this prosecution is
12   manufacturing.
13          And the government can say he's depicted.  I
14   understand that's their position.  But what is driving the
15   Indictment in this case and what has driven the heart of
16   their sentencing position is that he is creating these
17   specific images and videos that have --
18          THE COURT:  Let me stop you there.  Okay.  He pled
19   guilty to what counts again?
20          MR. NICOLAYSEN:  1, 3, 4, 5, and 6.
21          THE COURT:  Okay.  Hold on one second.
22          MR. NICOLAYSEN:  Sure.  3, 4, 5, and 6 are the
23   manufacturing counts.  1 -- Count 1 is the enterprise count.
24          THE COURT:  And the manufacturing is different
25   than producing in your --
```

```
 1              MR. NICOLAYSEN:  No.  It's the same.  Producing
 2    child porn, manufacturing --
 3              THE COURT:  And he pled guilty to those charges.
 4              MR. NICOLAYSEN:  Yeah, he did.
 5              Now, we admitted in general that he did create
 6    images that depicted child pornography.  That is in the
 7    joint factual basis.
 8              There was no specific reference to these images
 9    and these videos that the government is referring to.  The
10    government now is making direct allegations about specific
11    images and specific videos.  So they're going --
12              THE COURT:  So what difference does it make as it
13    relates to the sentence if in fact he pled guilty to
14    manufacturing videos, creating videos?  Are you suggesting
15    there are some videos that would reduce his exposure versus
16    others?
17              MR. NICOLAYSEN:  The government has cherrypicked
18    these images and videos that, in their judgment, would
19    heighten the level of culpability to a more extreme level
20    because of what the government claims is being depicted in
21    these particular images and --
22              THE COURT:  But it doesn't heighten the guideline
23    calculation, does it?
24              MR. NICOLAYSEN:  The guideline -- let me just
25    answer that by saying, as a generic proposition, the
```

1  guidelines in child pornography cases, especially for

2  production, are always off the charts.

3          THE COURT:  Right.

4          MR. NICOLAYSEN:  They almost become meaningless.

5  I mean, we are really, in my view, in a 3553 world here.

6          THE COURT:  Okay.  But so as it relates to the

7  calculation of the guidelines, you acknowledge that this

8  debate has very little relevance to it.  Your concern --

9          MR. NICOLAYSEN:  Well --

10          THE COURT:  -- is that under 3553(a), that the

11  government is presenting evidence that would display

12  Mr. Brinson in the most negative light.  You say that that's

13  unfair and that they should prove that with a better

14  foundation so that you can -- and give you the chance to

15  rebut those things.

16          MR. NICOLAYSEN:  Well, I can't rebut it here

17  today, but, when we see the government's use of language in

18  its sentencing papers that there's a torture chamber, using

19  the word "torture" repeatedly, that's what I'm getting to,

20  that the government wants Your Honor to believe that he not

21  only was in certain videos or pictures, he went much

22  further -- he actually made those images and videos of the

23  actions and by doing so that somehow, in the government's

24  view, puts him in a particular predatory category.

25          And we are dealing in the world of producing child

```
 1   porn.  So that's the government's basic message in their

 2   papers.

 3           And that's why I am concerned about lack of

 4   foundation.  They can say he is depicted, but they can't

 5   prove he created them.  And the government would have --

 6           THE COURT:  Again, what difference does it make?

 7           MR. NICOLAYSEN:  It makes a huge difference,

 8   Your Honor.

 9           THE COURT:  How?  It doesn't make any difference

10   as far as the guideline calculation.

11           MR. NICOLAYSEN:  No.  The guidelines are so, you

12   know, over the top that --

13           THE COURT:  So where does it make a difference?

14   That's what I am trying to understand.

15           MR. NICOLAYSEN:  It makes a difference in the 3553

16   world where Your Honor is being asked by the government to

17   impose a life sentence, a statutory maximum.

18           Now, the guidelines would say, well, he's life

19   anyway.  But the guidelines become meaningless because, as a

20   number crunching exercise, they always go to that level

21   across the board.

22           And articles are written on that, and the

23   Sentencing Commission has acknowledged it.  They realize

24   there isn't the science in the child porn guidelines that

25   they try to apply in other guidelines.
```

```
 1              So when Your Honor is being asked to impose a life
 2     sentence by the government, the government is going over the
 3     top in their papers with no supporting declarations in their
 4     filings to argue that he is the one actually making -- he is
 5     the producer and the director of the movie, he is the one
 6     behind the camera making this happen and that is the
 7     ultimate signature of a predator who deserves --
 8              THE COURT:  Well, in fairness, though, there are
 9     other things that they're arguing.  I mean, so let's assume,
10     for the sake of this discussion, I say I am not considering
11     whether or not Mr. Brinson made the videos.  But the other
12     argument you make is that -- I think you are saying we don't
13     know if it's him in the videos.  They can rebut that, can't
14     they?
15              MR. NICOLAYSEN:  Well, they can rebut it, but they
16     shouldn't be allowed to rebut it right here at the hearing
17     itself.
18              THE COURT:  When should it happen, then?
19              MR. NICOLAYSEN:  In their filing, in their
20     sentencing position.  They should have whatever declarations
21     they need, like the declaration they showed up with this
22     morning, and that gives me an opportunity to develop a
23     response.  I may acknowledge it.  It could be, I'll say,
24     Okay.  I'll agree with you there.
25              But I think it is absolutely improper to walk into
```

1  a sentencing hearing and say, I have got a declaration, when

2  you are the United States government -- this case has been

3  pending for five years, they file their sentencing position

4  three weeks ago.

5         They should have had that declaration as an

6  exhibit to their sentencing filing to lay that foundation.

7  That would have given me the right opportunity to respond,

8  and I would be in a position to decide whether or not we are

9  going to acknowledge that maybe that is him.

10        Let's remember in my view, the government has an

11  obligation when they have designated specific videos and

12  images.  It's not just producing Rule 16 discovery.  And

13  this discovery is voluminous in this case.  And it -- I

14  mean, it applies to all the defendants, and it has chats

15  and -- I don't mean voluminous as images and videos.

16        But they should have -- and certainly they should

17  do it now -- give me my own flash drive with those images

18  and those videos, and I would -- if they had submitted that

19  declaration with their sentencing papers, I would have said,

20  okay.  I am going to ask Judge Birotte, pursuant to the

21  protective order, to have the government give me my own

22  copy.

23        I realize we have Adam Walsh, but that applies to

24  discovery.  Now that we are at sentencing and the government

25  has designated specific items of evidence, I should have the

 1  copy and I would go over it with my client, and we would be

 2  in a position to submit a responsive filing.

 3          But it shouldn't be handled the way the government

 4  wants to handle it here today.

 5          THE COURT:  But in fairness, no one, no one has

 6  contested that they are not the person in these videos

 7  except now.  And --

 8          MR. NICOLAYSEN:  Who's no one?  Who's no one?

 9          THE COURT:  Moises Martinez, Arlan Harrell, Keith

10  Lawniczak.  No one has said, That's not me in the video.

11          MR. NICOLAYSEN:  Well, I don't argue for their --

12          THE COURT:  And my point is, until you filed your

13  papers, the government had no idea that you were now going

14  to say, We don't know if it's Brinson in the video in light

15  of the fact that he's pled to the sheet, all of the charges

16  against him that include manufacturing, producing.  So I'm

17  not sure why you are saying --

18          MR. NICOLAYSEN:  He's not pleading to these images

19  and these videos.

20          THE COURT:  What images is he pleading to, then?

21  I guess that's the question.

22          MR. NICOLAYSEN:  Well, he is pleading generally

23  that he created images depicting child pornography.  But

24  what the --

25          THE COURT:  But what images are they?  I mean, if

```
 1    you are talking --

 2              MR. NICOLAYSEN:  I can't --

 3              THE COURT:  You're talking about been him pleading

 4    in the ether.  He is pleading to these things.

 5              The government is saying, This is what we think he

 6    produced.  You can say you disagree.  That's what we're here

 7    for today.  I'll look at the videos, and I will make the

 8    call.

 9              But I don't -- I guess I -- I guess ultimately

10    what I am saying is I don't see any reason -- and I don't

11    view this as sandbagging or surprise when the government's

12    laid its position, they've indicated this is what they

13    think.  You disagree.  That's what a hearing is for.

14              MR. NICOLAYSEN:  Right.

15              THE COURT:  And I'm not suggesting you shouldn't

16    disagree.  You want to -- that's what you want to do, fine.

17    But that's what we're here for today.

18              MR. NICOLAYSEN:  But on --

19              THE COURT:  I will watch the videos, and I will

20    consider the -- the government's argument as to why they

21    believe Mr. Brinson is the person who made them and is

22    depicted on the video.  And if they have met their burden, I

23    will decide.  If they haven't met their burden, I won't

24    consider it.

25              MR. NICOLAYSEN:  What I am objecting to is lack of
```

1    foundation on production.  I don't see a need to spend time

2    going through videos as far as what's on the video.

3           But this is a manufacturing case, and I don't

4    believe the government can prove that Mr. Brinson made these

5    specific images and videos.

6           Now, if the government is willing to go with what

7    is just depicted, I will move on.  That's fine, but I'm not

8    going to concede --

9           THE COURT:  Well, that's what we're here for.

10   That's what we're here for.

11          MR. NICOLAYSEN:  I am not here to concede

12   production.  And when you go through their papers, it's all

13   about production, and that's what the federal charge is.

14          THE COURT:  And I get that.

15          And the government's response is, We'll present

16   the Court with the evidence that we believe demonstrates

17   production.  If they've met their burden, I agree, then they

18   have met it.  If they haven't, I won't consider it.

19          MR. NICOLAYSEN:  But that could involve forensic

20   testimony.  That's why I object because Agent Kuzma, who is

21   the same agent who interviewed my client at the time of

22   arrest, he may or may not be rendering an opinion that would

23   take us into the domain of forensic analysis of my

24   client's lack --

25          THE COURT:  Why don't we do this.  Your objection

```
 1    is noted.  It's overruled at this time.

 2             Ms. Kupersmith, you should give him the

 3    declaration so he can review it.  But I think we -- based on

 4    the standards at a sentencing hearing, I don't see any

 5    reason why, at least at this point -- I will look at his

 6    declaration.  Maybe there is something in there that

 7    suggests that we -- that the defense needs more time, but I

 8    think we can go ahead and proceed today.

 9             Your objection is noted, but at this stage it's

10    overruled.

11             MR. NICOLAYSEN:  I would ask for a recess so I can

12    review it.

13             THE COURT:  All right.  We'll, we're going to be

14    here for a while.  So you'll have -- we'll make sure that

15    you have a recess so you can review it.

16             Ms. Kupersmith, if you would be so kind, give him

17    a copy of the declaration at this point.  And if you could

18    give one to the Court as well.

19             MR. NICOLAYSEN:  Your Honor, this is a 12-page

20    declaration.

21             THE COURT:  Okay.  All right.  So I am receiving

22    it myself for the first time.  And so it is, in fact, 12

23    pages, and so I will -- we'll take a recess at an

24    appropriate time so that you can have a chance to review it.

25             But let me ask you, Mr. Nicolaysen, have you read
```

```
 1    and considered the presentence report as well as the
 2    government's position and gone over with it Mr. Brinson?
 3              MR. NICOLAYSEN:  Yes, we have done that,
 4    Your Honor, and you will see in our papers any objections
 5    are in our papers.
 6              THE COURT:  Okay.  And did you explain the
 7    contents of the presentence report to Mr. Brinson?
 8              MR. NICOLAYSEN:  I did, Your Honor.
 9              THE COURT:  And do you have any concerns about his
10    ability to understand the report?
11              MR. NICOLAYSEN:  None, Your Honor.
12              THE COURT:  All right.
13              Mr. Brinson, let me ask you directly.  Did you go
14    over the presentence report with your lawyer?
15              THE DEFENDANT:  Yes, Your Honor.
16              THE COURT:  And did you -- do you need any more
17    time to go over it with him?
18              THE DEFENDANT:  No, sir.
19              THE COURT:  Did you understand the report?
20              THE DEFENDANT:  Yes.
21              THE COURT:  Okay.  Mr. Nicolaysen, you have raised
22    numerous objections in your pleadings.  Are there any other
23    objections that you want to raise other than what's been
24    submitted in writing?
25              MR. NICOLAYSEN:  As to the PSR, no, Your Honor.
```

```
 1              THE COURT:  Okay.  So the floor is yours at this
 2   point, Mr. Nicolaysen.  I will let you be heard, and then I
 3   will allow you another opportunity after we take a recess so
 4   that you can -- if you have anything further you want to say
 5   in light of the declaration, you can be heard at that time.
 6              MR. NICOLAYSEN:  Yes, Your Honor.  Thank you.  I
 7   need just a moment.  I won't be addressing the declaration
 8   at this time, of course, but I do want to speak to the
 9   general issues on sentencing.  Just a second.  Allow me just
10   a moment, Your Honor.
11              THE COURT:  All right.
12              MR. NICOLAYSEN:  The papers filed by the defense,
13   as the Court knows, are quite lengthy and comprehensive, and
14   so I will not take time reiterating the many objections and
15   arguments that I have made in my papers.
16              I would like to focus on one particular point that
17   the government urges upon the Court.
18              Before I do that, I just want to note, though,
19   that in my papers, I spend considerable time drawing
20   distinctions between Mr. Brinson and the Co-defendants
21   Harrell and Martinez.
22              I outlined in chart form arguments made by the
23   government in its public filing as to Mr. Harrell.  And we
24   see significant differences in the nature of the abuse
25   inflicted on Harrell's victims, the age range, the scope.
```

```
 1              For example, among others, Mr. Harrell's family
 2    had a day care center and Mr. Harrell could not control
 3    himself.  He was, as is said in the world of sexually
 4    violent predators on the state side -- I handled many of
 5    those cases -- Mr. Harrell was volitionally impaired.  He
 6    could not even control himself with the young children at
 7    the family's day care center.
 8              Here, Mr. Brinson is in sharp contrast to that.
 9    The PSR notes his history includes employment as a counselor
10    at a school with young people.  He had a very good track
11    record there.  No issues.  So --
12              THE COURT:  When you say "no issues," you are
13    saying that, to your knowledge, no one has reported or made
14    any allegation similar to what's been alleged here in his
15    employment.
16              MR. NICOLAYSEN:  Yes.  That's right.
17              But, you know, a school environment is an
18    environment where reporting of this conduct by a staff
19    member is something that is readily done.
20              Parents will initiate a Complaint -- other
21    administrators will likewise -- and school board officials
22    are very sensitive to issues involving misconduct,
23    especially sexual misconduct.
24              And Mr. Brinson had an unblemished employment
25    record as an employee at a school.  So that's just one of
```

```
 1    the many distinctions that sets Mr. Brinson apart from
 2    Mr. Harrell.
 3           I argue in my papers that the distinction between
 4    Brinson and Martinez is also quite striking.  Again, I draw
 5    on my own experience as defense counsel in state court doing
 6    the sexually violent predator cases.  I do a lot of those,
 7    and so I am very familiar with the DSM clinical manual and
 8    the issues raised.
 9           And I will talk by analogy in just a moment to
10    18 USC 4248, which I also discuss in my papers.
11           But as I point out -- and I cite the clinical
12    manual provision for Martinez.  Martinez's use of the belt
13    on his stepson during the sexual abuse, which is just awful,
14    and taping the child up and acts of that sort clearly invoke
15    the clinical criteria for sexual sadism.  That is a level of
16    sexual abuse far beyond anything that Mr. Brinson committed.
17           So there are important distinctions that need to
18    be kept in mind, particularly because we are here before
19    Your Honor after this Court has already sentenced both of
20    those two defendants.
21           And it is of particular importance to me that we
22    do what the judges always instruct the jury to do -- treat
23    each defendant separately, allow Mr. Brinson's evidence to
24    be determinative of his sentence without any overlapping
25    influence from the co-defendants.
```

```
 1            By contrast, what I see the government doing here
 2    is to paint this case in its totality with a very broad
 3    brush, blurring those distinctions and asking this Court to
 4    treat all three defendants as if they are equivalent, and
 5    they are not.
 6            And with that said, I do ask Your Honor to go back
 7    and have a look, maybe take the matter under submission but
 8    look closely at the distinctions between Brinson and Harrell
 9    and likewise Brinson and Martinez.  I believe they are quite
10    meaningful.
11            THE COURT:  And assuming that there are
12    distinctions between the two, is there room for argument
13    that, regardless of the distinctions, there is genuine harm
14    that has occurred --
15            MR. NICOLAYSEN:  Yeah.
16            THE COURT:  -- and as a result -- I mean, look.
17    As you point out, the guidelines are through the charts, and
18    at a certain point, conduct is conduct.  And whether it is
19    two victims, 20 victims, 15 victims, does the amount of
20    accountability that needs to be afforded, should it matter?
21            MR. NICOLAYSEN:  Yes.  This is so important what
22    Your Honor is referring to because proportionality is
23    perhaps the most difficult thing to achieve in a child
24    pornography case involving this type of conduct that's being
25    alleged.
```

```
 1              The tendency is to just max everybody out.  There
 2    is a point in time where we shut down and we just say, I
 3    have had enough, you are gone.  And I do understand that.  I
 4    get it.  I am a parent.  The families are here.  There is a
 5    huge emotional factor that tends to weigh heavily on the way
 6    we exercise judgment.
 7              And that's why one of my goals in my papers and
 8    here today is to ask that we take the time, difficult as it
 9    is, to differentiate between Brinson and the others because,
10    when we look at the harm that was done -- and there was harm
11    that was done, and it was real harm and Mr. Brinson will
12    speak to that -- we then look to the question of whether the
13    infliction of that harm was done by someone who is a
14    predator to the degree like a Harrell, like a Martinez,
15    where that person is simply incapable of re-entering society
16    without being a predator.
17              And I have seen them.  I do the SVP cases.  I have
18    dealt with clients at the Coalinga State Hospital where they
19    are kept on civil commitment.  And SVPs, as they are called,
20    they do exist; and the defendants, I argue, fall into that
21    category.
22              But what we look to in sexual abuse cases and in
23    these cases is that issue of whether we can fairly
24    prognosticate about future sexual reoffending such that we
25    have to impose a life sentence or whether we can impose a
```

```
 1    lengthy sentence -- 20 years, 25 years, 30 years, take away
 2    his adult life but not a life sentence because there is a
 3    foreseeable opportunity for Mr. Brinson, by virtue of
 4    embracing the harm he has done, to go through sex offender
 5    treatment successfully and re-enter society without being a
 6    predator.
 7             And that's why the sex cases stand alone in the
 8    Criminal Code from every other crime, by offering the
 9    sentencing Court a mechanism that doesn't exist for
10    robberies, for RICO gang cases, for fraud.  And that
11    mechanism is the civil commitment option that I brief in my
12    papers under 18 USC 4248.
13             It's often overlooked by defense attorneys.  And I
14    will be honest, I wouldn't know a thing about it unless I
15    did the cases in state court.
16             But it's opened my eyes because the problem we
17    have as we face the Court today is the government will say,
18    as they have done, the only way to protect the public from
19    Mr. Brinson is a life sentence.
20             And that's the spirit of the government's
21    position.  And I say to this Court that is the most flawed
22    perspective because that kind of prognostication is
23    impossible.  That's why the civil --
24             THE COURT:  But by the same token, I mean, the
25    government will argue, look.  The only way to protect the
```

```
 1    community is to basically ensure he is never out in the
 2    community.
 3              MR. NICOLAYSEN:  Right.  That's what they're
 4    saying.
 5              THE COURT:  And you're -- because they are
 6    calculating a risk.  They believe the risk is too high.
 7              On the flip side, you are asking -- you are
 8    saying, no, the risk is not high -- high enough.
 9              MR. NICOLAYSEN:  No.
10              THE COURT:  And at the end of the day, one might
11    argue both sides are prognosticating; right?
12              MR. NICOLAYSEN:  No, I'm not saying that.
13              THE COURT:  Okay.
14              MR. NICOLAYSEN:  I am saying that neither side is
15    in a position to undertake the calculus of risk about
16    reoffending because it's simply too early.
17              I am very comfortable with a sentence 20, 25, 30
18    years.  The family is entitled to it.  Take away the heart
19    of his adult life.  I get that.
20              But allow the procedures created by statute.  This
21    is a congressional statute.  Congress gave Your Honor this
22    authority where -- and gave the authority to the Bureau of
23    Prisons as well and, of course, to the U.S. Attorney's
24    office.
25              As Mr. Brinson approaches -- let's say Your Honor
```

1    gives him 25 years, 30 years.  As Mr. Brinson approaches the

2    release date, Section 4248, just like the SVP statute on the

3    state side, allows for the BOP and the U.S. Attorney's

4    office to take the initiative to have clinical evaluations

5    done.  And if there's probable cause to believe, for

6    whatever reason -- I am talking theoretically now -- that

7    Mr. Brinson is still what they would call a sexually

8    dangerous person -- that's the term in the statute -- then

9    he gets transferred to a mental facility.  It could even be

10   Coalinga State Hospital or Patton State Hospital.

11          He doesn't get out.  He becomes a civil detainee

12   and undergoes that litigation process.  And if he is

13   unsuccessful at the trial on that civil matter, he is

14   subject to an indeterminate sentence.  That's certainly how

15   it works on the state side.  It's very similar here.

16          So I am not here to say to this Court he presents

17   a low risk.  I am here to say to the Court that, because

18   Mr. Brinson is properly distinguished from the other

19   defendants in -- there is a great opportunity here to be

20   more proportional and not fall into the tendency to

21   prognosticate that life is the only option.

22          We see Mr. Brinson as someone over the past five

23   years at MDC who has made remarkable changes, as a person.

24          Comments by counsel are not evidence of anything.

25   I will just begin by saying I have definitely seen it.  But

1    don't take my word for it.  I'm a lawyer.

2            That's why I had clinical psychologists evaluate

3    Mr. Brinson, and they're part of our sentencing filing.  The

4    first one to do that was Dr. Malinek, who came into this

5    early on.  And he is a frequent witness for the district

6    attorney's office.

7            I have even cross-examined him in an SVP trial.

8    He is no shrinking violet.  And I wanted candid feedback

9    from him.  That's why brought in someone who typically works

10   for the prosecution.

11           Did he find that Mr. Brinson is a pedophile?  Of

12   course.  But in the SVP world, having the mental disorder of

13   a pedophilic disorder, which is a clinical category, is not

14   in and of itself determinative of SVP, sexually violent

15   predator status.

16           In addition to having that mental disorder, the

17   individual has to be volitionally impaired, like Harrell

18   with the children at the day care center, like Martinez with

19   the extreme sadistic way he engaged his stepson.

20           And volitional impairment is often a reflection of

21   one's ability to embrace the damage they have done and

22   understand their own behavior for which treatment, of

23   course, is necessary.

24           I will be asking this Court in the J&C order to

25   designate Mr. Brinson to a specific BOP facility that

1    orders -- that offers what's called the SOTP, sex offender

2    treatment program, if I may ask Your Honor to just note the

3    penitentiary at Tucson Arizona is particularly respected for

4    that.

5          Well, what Dr. Malinek was impressed by early on

6    was Mr. Brinson's recognition that what he had done was

7    horrible, and he will speak to that today and is very -- in

8    a very heartfelt and painful way, he is appreciative that

9    there are family members here.  It's very difficult for him,

10   but he has an obligation to embrace openly, not just

11   apologize, but to really speak to the harm.

12         And when someone is able to do that, they are

13   amenable to treatment.  They are in the transformational

14   process.  They are the alcoholic at 12 step who says, I am

15   an alcoholic, I need help, and so now they begin the

16   process.

17         Will the alcoholic always be an alcoholic?

18   Absolutely.  But the question is can he or she manage it.

19   Will Mr. Brinson have pedophilic traits?  I am sure he

20   probably will.  That's not my decision to make.

21         But the ultimate issue that would be addressed if

22   and when a civil commitment inquiry is made down the road is

23   is he volitionally impaired?  He successfully treated

24   treatment, has he?

25         And if he is not volitionally impaired, he is not

1    a danger to the community.  He has learned to manage and to

2    work through that.

3            And so we see now in Dr. Abbott's report, which is

4    much more recent, in December of 2021, from a -- from the

5    perspective of a very well-respected clinician who has

6    published widely in the field of sex offense diagnosis and

7    treatment and is widely used by -- in the courts over on the

8    state side, that Dr. Abbott feels very confident that

9    Mr. Brinson is at a place in his life where he completely

10   owns what he has done, which I have seen many of my SVP

11   clients at Coalinga unable to do.  They just can't get it.

12   They don't do there, and they resist treatment.

13           So Mr. Brinson stands apart in a very meaningful

14   way from all of them -- and I believe Harrell and

15   Martinez -- in totally taking ownership of what he's done,

16   how he has hurt the children or families, and his need for

17   treatment.

18           And I say to this Court, now that we see this kind

19   of differentiation between Brinson and the others and we put

20   it into the clinical context of what Drs. Malinek and Abbott

21   have provided, which comes from huge expertise, this Court

22   has an opportunity to be more proportional in sentencing by

23   utilizing the unique option, the mechanism of the civil

24   commitment procedure that is waiting for Mr. Brinson if

25   there is indeed a reason to keep him incarcerated.

```
 1            So I am not asking, Your Honor, to give him 20, 25
 2   years and we take our chances and the families feel that
 3   justice was not been done.  It doesn't work that way.  He's
 4   not getting out if the clinical assessment towards the end
 5   of his sentence suggests that there's probable cause to keep
 6   him in.
 7            But let's allow that mechanism to operate because
 8   it is unique to the world of sex offenses.  It's unique
 9   because we cannot properly prognosticate here today.  We're
10   projecting into the vast unknown.  And that's one of the
11   reasons that I wanted to be clear as to what was created and
12   what was not.
13            But Mr. Brinson owns his behavior.  And when
14   elocutes to the Court, I will be asking Your Honor for
15   permission, if the Court will allow this, for him to turn
16   around and speak to the family members, if that is
17   permissible --
18            THE COURT:  No.  He talks to me.
19            MR. NICOLAYSEN:  Okay.  I understand fully.
20            And he will address them through Your Honor in
21   speaking from the heart in recognition of the damage he's
22   done.
23            So in closing, and I say to the Court, the one
24   conclusion the government argues, which is the only way to
25   protect the public is by giving him life is a flawed
```

```
 1    conclusion.
 2               And the 4248 civil commitment option is very real,
 3    it's very meaningful, especially for someone like
 4    Mr. Brinson who has the support of two very renowned
 5    clinicians who believe there is a foreseeable opportunity
 6    for this individual to re-enter society successfully,
 7    Your Honor.
 8               And I thank the Court for listening.
 9               THE COURT:  All right.  Thank you.
10               Mr. Brinson, is there anything that you want to
11    say before I sentence you, sir?
12               THE DEFENDANT:  Yes, sir.
13               THE COURT:  All right.  Go ahead.  You can speak
14    right from there.
15               MR. NICOLAYSEN:  Your Honor, what is the Court's
16    preference?
17               THE COURT:  He can speak right from there.  That's
18    fine.
19               MR. NICOLAYSEN:  May have just a moment, please.
20               THE COURT:  Sure.
21               MR. NICOLAYSEN:  Would you like to come up and
22    stand here --
23               THE COURT:  No, no.  He can stay right there.
24    Bring the microphone closer to him so he doesn't have to
25    stand up.
```

```
 1              MR. NICOLAYSEN:  Okay.

 2              THE COURT:  He can speak right from there.

 3              MR. NICOLAYSEN:  All right.  Very good.

 4              THE COURT:  Okay.

 5              THE DEFENDANT:  Thank you, Your Honor, for this

 6    time to speak to you.

 7              THE COURT:  All right.

 8              THE DEFENDANT:  I humble --

 9              MR. NICOLAYSEN:  Speak into the mic, though.

10              DEFENDANT:  I humble myself before you, and I come

11    to you today a changed man.  I accept full responsibility

12    for the crimes that I committed, and I have since reflected

13    deeply on the things that I have done in the five years that

14    I have been here, and I went through a lot of

15    self-reflection and changing.

16              I want to tell you that I died to myself, and I

17    realize the harm the damage and the pain that I have caused

18    the victims and also their families and everybody else that

19    has been affected indirectly.

20              Your Honor, I want you to know that I am no longer

21    the man that I was when I committed those crimes.  And I

22    want you to know that I have been seeking change and growth,

23    and I feel like my purpose in life now is to be a light for

24    people who have been like this.  And I want you to know that

25    that -- that you could have full belief that I will never
```

```
 1    reoffend again in this nature.  That's all.

 2              THE COURT:  Okay.  All right.  Thank you, sir.

 3              All right.  Ms. Kupersmith, do you want to contest

 4    or change anything in the presentence report?  And I guess,

 5    you know, just so that we have a robust and complete record,

 6    you know, look.  I am not wild about a 12-page declaration

 7    at the time of sentencing, but we're going to deal with it.

 8              But there have been a number of factual objections

 9    stated in the report.  You know, paragraph -- among

10    others -- 61, 65, 74, 86, 68.  I am hoping the government

11    will address those.

12              MS. KUPERSMITH:  Yes, Your Honor.  And we can do

13    this a number of ways.  Considering the declaration and the

14    evidence that we're submitting to Your Honor and saying that

15    it meets the reliability standards necessary for sentencing

16    and that will overcome our -- his objections by

17    preponderance of the evidence, I can save those arguments

18    after you have reviewed that evidence as to why we believe

19    that overcomes his objections.

20              THE COURT:  Well, you might as well do it now.

21              MS. KUPERSMITH:  Okay.  So as it relates to the

22    objections for Count 1, which is the enterprise charge, the

23    defendant seems to agree that Count 1 and Count 4 are

24    properly grouped and so his objections aren't related

25    specific to the guidelines, but he does say that they're
```

1    factual objections and those require response.

2         Specifically, he states that there is no

3    independent evidence to support that he was the one who

4    created the images and posted them to Website A.  But to the

5    contrary, there's significant evidence that he produced

6    those images.

7         And there is no better proof of what those

8    postings contained than the postings themselves, and we

9    included some of those in our original memorandum, and we

10   have them here for the Court to review today.

11        In the August 1st, 2016, post, he created his own

12   proof that he produced the images with the inclusion of a

13   handwritten sign with his username and a typed banner across

14   the images with his username.  That handwritten sign was

15   also recovered from the defendant's possession.

16        The November 19th post, he, again, demonstrated

17   that he created the images with the inclusion of a

18   handwritten sign placed on Minor Victim 3 with his username,

19   and that specific handwritten sign was recovered from the

20   defendant's possession in his car.

21        The January 25th, 2017, post included admissions

22   of sexual abuse in the words of the posting.  He mentioned

23   what he inflicted on Minor Victim 3 and 12, along with the

24   images that were part of that post.

25        And the defendant admits in his own psychological

1    evaluation that he produced child pornography of

2    Minor Victim 3 and uploaded them to Website A.

3          He specifically -- the evaluation specifically

4    says the defendant said he produced pornographic photos of

5    Minor Victim 3 and uploaded 20 images required for him to

6    gain unlimited access to the child pornography stored on the

7    website.

8          In the factual basis, the defendant admits that

9    the August 1st, 2016, November 19, 2016, and

10   January 25th, 2017 postings depicts Minor Victim 3.

11         And in addition to pleading guilty to the

12   production of child pornography of Minor Victim 3 as part of

13   Count 4, he makes several admissions in his communications

14   that he created the visual depictions of himself engaging in

15   sexual acts with Minor Victim 3.  Those are detailed on

16   government sentencing memo pages 21 through 23.

17         Additionally, posts by the defendant on Website A

18   include similar evidence that he produced the images

19   distributed, such as typing his username onto the image

20   itself, maintaining the handwritten signs that are depicted

21   in those images, and claiming ownership of the victims by

22   using things such as subject line "King's Boys."

23         As it relates to the objections of the sexual

24   exploitation of a child for Counts 3 through 6, the

25   defendant cites a lack of evidence for each of the

```
 1    production counts.

 2            He objects to the two-level enhancement for a

 3    sexual act as well as the four-level enhancement for the

 4    portrayal of sadistic or masochistic conduct or depiction of

 5    a toddler or infant.

 6            He objects to the statements that he had

 7    personally depicted engaging in the sexually explicit

 8    conduct with Minor Victims 3, 11, and 12.  And through the

 9    objections, he demonstrates that his claim that he does not

10    in any way at all seek to downplay the seriousness of his

11    actions is the exact opposite.

12            The applicability of those enhancements as well as

13    the defendant's personal sexual, rape, and molestation of

14    these minors depicted is unmistakenly apparent upon viewing

15    the actual material that he produced and which we are

16    admitting today.

17            THE COURT:  You are not admitting the actual --

18    the videos.

19            MS. KUPERSMITH:  We have the videos for the Court

20    to review.

21            THE COURT:  Okay.  Got it.

22            MS. KUPERSMITH:  The way the declaration is laid

23    out is it has specifics about what we know about these, and

24    it says that we have the exhibits.  The images and videos

25    and the postings and everything referenced in that
```

1    declaration is available here today, whether it's on the

2    flash drive or the stand-alone computer or however the Court

3    wants to review it.

4              THE COURT:  All right.  Go ahead.  Continue.

5              MS. KUPERSMITH:  So he's admitting that he used

6    Minor Victims 1, 3, 11, and 12 to engage in sexually

7    explicit conduct for the purpose of producing a visual

8    depiction.  But now he is refusing to acknowledge what

9    actually is in those visual depictions that he produced.

10             But the Court has the visual depictions.  We lay

11   out in the declaration and in our sentencing papers why

12   those are reliable evidence to support -- to go against

13   these objections.

14             For Minor Victim 3, Count 4, the sexual act

15   enhancement, the evidence can be found in some of the

16   following examples:  The January 26th, 2017 posts on the

17   Website A which is described in the government papers as

18   well as the PSR as well as the declaration submitted today

19   and the post itself, Image 4659 which is described in the

20   memo, the PSR, the declaration, and the image itself.

21             The other videos that he created that are

22   additionally described and the other that are described in

23   the declaration and in the PSR, all of those show why he was

24   engaging in a sexual act and that that enhancement applies.

25             The PSR also cites to U.S. adverse Rearden in the

```
1   Ninth Circuit would show why these types of sexual acts that
2   are depicted here and which the defendant admits to rise to
3   the depictions of violence four-level enhancement.
4           The defendant also objects to the two-level
5   enhancement for Minor Victim 3 in his custody, care, and
6   supervisory control.  The evidence of that enhancement can
7   be found in the defendant's own statements, including those
8   made to Martinez and Lawniczak that were provided in the
9   sentencing memo where he talks about them coming over and
10  watching them and having them in his -- coming over to see
11  him and that he has them with him in his house.
12          THE COURT:  Exhibit D or --
13          MS. KUPERSMITH:  In Exhibit -- I believe it's C
14  and D.
15          THE COURT:  C and D.  Okay.
16          MS. KUPERSMITH:  The -- also can be found in the
17  victim impact statements of the Minor Victim 3's parents
18  that talk about the relationship as well as the information
19  that's detailed in the declaration in paragraph 29.
20          Additionally, as depicted in the images and videos
21  and described in Special Agent Kuzma's declaration, they
22  were -- these videos were taken at Brinson's residence.
23          And since Minor Victim 3 was only six years old at
24  the time and Minor Victim 12 was only -- was three or less
25  at the time, they were clearly in his custody, care, or
```

1    control while they were at his house and unable to go

2    anywhere else.

3         As to Minor Victim 11 for Count 3, again, he

4    objects to the enhancements for commission of a sexual act

5    and the depictions of violence.

6         For those, again, we would point to the images and

7    videos that we described in our sentencing papers as well as

8    in the declaration and the videos themselves.

9         In addition, Minor Victim 11 was only three years

10   old and such, besides the fact that they depict violence, he

11   also was a toddler.

12        Similarly, for Minor Victim 12, Count 5, the same

13   objections and the same proof exists.  We have chats where

14   he talks about baby-sitting them.  We have videos where they

15   are at his residence.  We have corroboration from the other

16   defendants who came to his house to produce images.

17        The videos that are described in the sentencing

18   papers, in the PSR, and in the declaration as well as the

19   videos themselves all support the sexual act as well as the

20   depictions of violence.

21        And, again, Minor Victim 12, was clear from the

22   posts and the file name the defendant had saved these images

23   of Minor Victim 12 is that he was referred to as a specific

24   nickname on the website, and that specific nickname is then

25   used in his posts as well as the file names that we have

1  depicting Minor Victim 12's face while he is being sexually

2  abused.

3          Besides the depictions of violence, he also was

4  under the age of three.  So the four-level enhancement

5  applies.

6          And similarly to Minor Victim 3, he was in the

7  custody and control because he was at defendant's house

8  while defendant was baby-sitting him, which we have

9  admissions to in the chats, including where Martinez talks

10  about the boys coming over when Mr. Brinson is talking to

11  Martinez about how the boys are coming over and how every

12  time they come over he needs to sexually abuse them.

13          And he -- the victim impact statements support

14  that as well as the information detailed in paragraph 29 of

15  the declaration.

16          And similar to Minor Victim 3, while

17  Minor Victim 12 was at Brinson's house, he was basically a

18  captive of him.  He was three years old.  There is no way

19  for a child who is three years old in the presence of an

20  adult who is abusing him for him to not be in the care,

21  custody, and control of that defendant.

22          Going on to some of the other objections, the

23  defendant also objects to the application of 4B1.5.  He

24  says -- he relates the reason that the 4B1.5 shouldn't apply

25  is because the child exploitation enterprise statute has

1    predicates.

2             However, defendant's predicates for 2252A(g),

3    which is the enterprise statute, are for child pornography

4    trafficking.  Those are specifically not what 4B1.5 are

5    talking about.  Additionally, he ignores the fact that he is

6    charged with four other additional production counts beyond

7    the enterprise count.

8             And that within all of those individual production

9    counts, we have more than one time where defendant was

10   engaging in these acts that's supported by the chats, it's

11   supported by the videos, it's supported by the admissions.

12            And the calculations in the chapters serve

13   different purposes.  The offense level from Chapter 2 is

14   about offense conduct.  Chapter 4 is about criminal history.

15            He clearly meets the -- this requirement about the

16   pattern of activity and that it is not double counting.  And

17   the defendant hasn't set forth any reasons or case law to

18   support why it would not apply in this case.

19            So for all of those reasons in terms of the

20   objections to the guidelines themself, they should be

21   overruled in light of the evidence the government has

22   produced in its papers, in the PSR, as well as what is being

23   submitted today.

24            And as far as claiming that the guidelines in

25   child pornography cases are often excessive, that argument

```
 1   is a red herring.  The defendant cites to one case about
 2   that, and that is a case that specifically talks about
 3   how -- the case is talking about with the guidelines being
 4   possibly higher than reflective of the conduct is for
 5   nonacting-out offenders.  That is anything but what is
 6   happening in this case.
 7            As far as the sentencing arguments that the
 8   defendant makes in his papers and what was presented today,
 9   the defendant spends a significant amount of time talking
10   about the comparison to him and Martinez, how he is somehow
11   not as criminally liable or less dangerous than them.
12            But that is only true if the Court ignores the
13   facts that make him exactly as dangerous if not worse than
14   him.
15            He seems to selectively decide what the statements
16   by himself are reliable.  For example, he wants the Court to
17   accept his self-serving statements of his letter of remorse
18   and that he is accepting full responsibility, while at the
19   same time being in complete denial of the actual harm and
20   horrible abuse that he inflicted on these kids, including
21   evidence that the children were screaming out in pain and
22   asking him to stop and yet he continued to abuse them
23   anyway.
24            For all the points he makes about Harrell and
25   Martinez and why they are particularly dangerous, the same
```

1    is equally true for Mr. Brinson, if not more so.

2            Just as some comparisons, he says that Mr. Harrell

3    had no evidence of any interest in molesting children in

4    teenage years, but Mr. Brinson's admissions in his

5    psychological report say that he also fits that category.

6            At age 14, it talks about acts that he did.  He

7    discovered child pornography around 16 to 17 and continued

8    through the time of his arrest.  He said that at age 19 he

9    found himself sexually interested in males between 12 and

10   13.  He says that, during his late adolescence at about age

11   19, he found himself sexually interested in males.

12           The defendant points out that Harrell abused

13   toddlers and that makes him particularly dangerous.  Two of

14   Mr. Brinson's victims were three years old.  By his own

15   admission, that is an extreme degree of pedophilic disorder.

16           As seen in the evidence submitted and described in

17   the papers, the types of abuse is similar if not worse.  He

18   knowingly caused pain to these victims for his own benefit.

19           He doesn't get points for the fact that he may

20   have been around other children and didn't abuse them.  The

21   production that we have from him is probably only a tiny

22   fraction of what he actually created.

23           We have admissions that he deleted files, that he

24   was discarding hard drives, that he was encrypting devices.

25           THE COURT:  Ms. Kupersmith, do you acknowledge --

```
 1    or your last statement suggests to me that the government

 2    has no evidence at all that Mr. Brinson engaged in any of

 3    that type of conduct in connection with his employment.

 4              MS. KUPERSMITH:  Correct.

 5              THE WITNESS:  Okay.

 6              MS. KUPERSMITH:  Correct.  But to claim that that

 7    makes him better, that he --

 8              THE COURT:  No, no.  I just wanted to make sure I

 9    knew that -- I understood that point.

10              MS. KUPERSMITH:  Yes.  Yes.

11              He also claims that he started this activity just

12    in February 2016, which is the date of the start of his

13    Website A profile.  But his own psychological report

14    disputes this.

15              Again, it mentions things that he did in his

16    adolescence.  He also has actions where he went on to other

17    sites, watching videos and interacting with boys he believed

18    were 12 to 13 years old.

19              He talks about how he met Harrell on the dark

20    website trafficking in child pornography in 2015.  And

21    before meeting Harrell, he satisfied his sexual interest in

22    prepubescent males by looking at child pornography.

23              The extreme sexual abuse is shared among these

24    defendants.  It is all horrific.  There is no ranking the

25    evil that these defendants did to these children.
```

```
 1          The abuse inflicted that is visible on these

 2   videos that we are submitting to the Court today and that

 3   are described in these papers are difficult to watch.

 4          Often in these cases we're able to produce some

 5   type of screen capture to try and encompass the videos so

 6   that you don't have to look at the video and see the video

 7   to see what was happening.

 8          But in these videos, we have audio of the children

 9   screaming in pain and the defendant continuing to abuse

10   them.  We have them crying out and saying the name that they

11   called him.  We have him telling them that this name will --

12   will do other certain acts instead of other ones, that he

13   will get him Legos, that he will get him Xbox, that he will

14   bribe them in order to be able to continue to abuse them.

15          And that is corroborated not only in the videos

16   themselves but in the chats.  The chats he has with

17   Mr. Martinez are particularly illuminating in terms of the

18   level of depravity that this defendant had towards children

19   and the pain that he caused them and that he was okay with

20   causing them that pain.

21          In fact, he was going to continue abusing them so

22   that they would get used to it and feel less pain in the

23   future.  He says that on Website A.  He says that in his

24   charts, and the abuse that he inflicted is visible on these

25   images.
```

1           Mr. Nicolaysen just made the point that somehow

2     Harrell was more of a predator because of the day care kids

3     that he abused where Mr. Brinson -- and excuse my language,

4     but these are his words -- said to Mr. Martinez, "Every time

5     they come I have to fuck one of their asses."

6           He shared the children he had in his possession

7     with the other offenders, and he used those children as

8     bargaining chips to get access to additional children.

9           He arranged to meet the offenders that he was

10    conversing with online and sharing this common interest to

11    abuse more children together.  Two adults on one small

12    child, and that was Mr. Brinson's actions.

13          So to say that he is not as extreme and depraved

14    and that he is less dangerous than these other defendants is

15    only to ignore all of the evidence in this case.

16          Turning to some of the other legal arguments the

17    defendant made, the mere possibility of civil commitment is

18    not a mitigating factor.  The civil commitment process

19    involves an individual who has served the federal sentence,

20    is clear and convincing evidence that he is a sexually

21    dangerous person.

22          But of importance, this is a civil process.  And a

23    sexual dangerous person is a term of art that does not

24    include offenders who simply engaged in abuse or violence or

25    who are inclined to do so.  Specifically --

```
1              THE COURT:  Is your point that the acts in and of
2    itself merit a lengthy sentence, regardless of whether there
3    is a calculation -- or I should say, separate from any
4    calculation of likelihood of reoffending?
5              MS. KUPERSMITH:  Yeah, absolutely.
6              The civil commitment is not a 3553(a) factor, and
7    the defendant earned the life sentence based on his acts
8    alone.
9              But the existence of a civil commitment sometime
10   in the future certainly -- not only does it not take away
11   from the 3553(a) factors, but it's not even clear he would
12   meet that standard because he engaged in the -- from all of
13   the evidence we have, he engaged in this abuse because he
14   liked it, not because he has mental condition that caused
15   him to do it.  And that causal connection is really key in
16   these civil commitment processes.  It's not that every --
17   every person who engages in sexual predatory behavior could
18   be civilly committed.
19             THE COURT:  Well, I'm not sure I follow what you
20   are saying as it relates to the civil commitment.  You are
21   saying that he wouldn't -- he couldn't be considered for
22   that or --
23             MS. KUPERSMITH:  It's possible that he would not
24   be qualified for that because the civil commitment requires
25   a causal connection between the acts and the mental illness
```

```
 1    that makes them essentially a sexually dangerous person.
 2              THE COURT:  And what about at least by
 3    Mr. Brinson's account in the psych reports his abuse as a
 4    child?  Would that qualify?
 5              MS. KUPERSMITH:  I -- again, that is a civil
 6    process that is decided separately from this, and I would
 7    submit that it has no bearing on what his sentence should
 8    be.
 9              THE COURT:  Got it.
10              MS. KUPERSMITH:  But from my understanding, it's
11    not clear that he would qualify based on that because it is
12    not a mental condition.  That is a history, and he was
13    engaging in this abuse because he wanted to.
14              THE COURT:  And then from the government's
15    perspective, likelihood of recidivism.  How much weight
16    should the Court give to that, if at all, as it relates to
17    the imposition of the sentence?
18              MS. KUPERSMITH:  I think it is certainly a factor,
19    but it is just one factor.
20              And I also think what is alarming about both of
21    the psych reports that were submitted is that they seem to
22    discount the very high dangerousness level that Mr. Brinson
23    has.
24              They put him at above the average risk but
25    basically saying, eh, that's not so bad or a one-in-ten risk
```

1   but that makes him a low.  That is a significantly high

2   danger.

3         In addition to that, there are problems with the

4   way recidivism data is established to begin with.  It is

5   based on defendant getting caught.

6         In this case, he was abusing toddlers.  He was

7   doing encrypted activity.  He was on anonymous websites

8   specifically hiding his activity.

9         And in terms of assessing that dangerousness,

10   we're not talking about a drug offender who relapses or a

11   felon in possession.  We are talking about a small child who

12   has a one-in-ten chance of being abused because we let him

13   out.  That is significant.

14         But on top of that, recidivism and the chance of

15   that is just one part of the 3553(a) factors and what makes

16   him particularly dangerous and deserving of a life sentence.

17         Also want to just talk about the psychological

18   evaluations.  The absence from review of that and what those

19   conclusions were based on specifically did not review the

20   postings on Website A.  They did not review the chat

21   messages between Brinson and his co-defendants, including

22   where Brinson is admitting to intentionally and obviously

23   causing the victims pain.

24         He says -- Dr. Malinek concludes that he has --

25   Mr. Brinson has taken responsibility for his conduct and

1    clearly understands the seriousnesses of his transgression

2    and grossly inappropriate nature of his conduct.

3            However, that is not the case here.  He is

4    saying -- he makes statements to his -- to the psychologist

5    about how he is just now realizing that he may have caused

6    the victim pain when it is clear through the chats, it's

7    clear through the posts, it's clear through the videos that

8    he knew he was causing these victims pain and he continued

9    that abuse anyway.

10           So to say now that he has had this realization of

11   the connection between what he experienced as a child and he

12   did not know that the victims consented to this behavior is

13   just self-serving at the time of sentencing because --

14           THE COURT:  Is there room for an argument -- I

15   mean, look.  He reports -- defendant reports severe sexual

16   abuse in his own childhood.

17           Is there room for an argument that that abuse, as

18   twisted or however, that's how -- that's all he knew or all

19   he is familiar with and, by distorted or twisted extension,

20   that the horrific pain that he is inflicting on kids is no

21   different than the pain that he suffered as a child?

22           Does that make -- I mean, well, it probably

23   doesn't make sense just because of the twisted nature of it.

24   But my point is more along the lines of is it wholly

25   inconsistent for him to say now, you know, five years later

1    in prison, as many defendants do, I now see the error of my

2    ways?

3              Is that -- is it in fact inconsistent given at

4    least what he alleges to be his upbringing and the conduct,

5    that there's a possibility that's the experience that he has

6    had and even acknowledging the pain that he inflicted?  It

7    didn't resonate in a way that it does now?

8              MS. KUPERSMITH:  It's inconsistent with what we

9    see in the chats and what we see in the videos.  What he is

10   telling these evaluators and what he is telling the Court --

11   he specifically tells the evaluator that he didn't engage in

12   sexual sadism or masochism, that he didn't physically force

13   sex on another person, that he was convincing himself that

14   these victims consented.  But that is not what's visible in

15   these videos.

16             What is visible is that it is obvious to

17   defendant -- in fact, he admits to Defendant Martinez that

18   he knew he was causing pain and he was looking for ways to

19   drug them.  And so that is inconsistent with the conclusion

20   that all of this was because of his own history.

21             If I could have just one moment, Your Honor.

22             THE COURT:  All right.  Take your time.

23             MS. KUPERSMITH:  I just want to highlight that,

24   besides the comparison to Harrell and Martinez that make him

25   equally if not worse and besides all of these reasons that

```
 1   should not be a mitigating factor, just looking at him and

 2   his actions alone place him at a position where he deserves

 3   a life sentence.

 4            THE COURT:  Right.  So I wanted to talk with you

 5   about that.  I mean, look.  Obviously, everyone is doing

 6   what they think is what they need to do on of behalf of

 7   their respective sides, I guess.

 8            But ultimately, your point is -- take all the

 9   comparisons aside.  Let's assume he was a single defendant

10   case and all we had are the acts that we have.  The

11   government would maintain the view that alone merits the

12   sentence that you are requesting.

13            MS. KUPERSMITH:  Yes.  I don't think you can take

14   his actions away from the actions he committed with the

15   other co-defendants because part of what makes him dangerous

16   is the way he shared children and he --

17            THE COURT:  True.

18            MS. KUPERSMITH:  -- abused them jointly.

19            But if all we had was Mr. Brinson here and his

20   acts that we are looking at that we're evaluating with the

21   3553(a) factors as well as the guideline calculations, he is

22   deserving of a life sentence.

23            All of the factors point to his dangerousness, his

24   cruelty, his depravity, the horrific abuse he inflicted on

25   these children.
```

```
 1            We're not saying that every single offender
 2   deserves a life sentence, but looking at him, he does.  It
 3   is -- he is a danger to society and he -- justice demands
 4   that he, based on his conduct in this case that is proven in
 5   the videos, what was submitted, his own guilty admissions to
 6   these crimes deserve a life sentence.
 7            And he is particularly dangerous because he is --
 8   seems to either be in denial or making some type of
 9   strategic argument to get the Court to focus only on some
10   facts when the facts as a whole show how -- like, how
11   invasive this abuse was.
12            THE COURT:  And I guess I just want to make sure I
13   understand the government's view.
14            Are you arguing that it is sort of a false
15   comparison to try to compare his actions with that of
16   Harrell and Moises Martinez?
17            They're all bad, and I think Ms. Myers at
18   sentencing said, but for Moises Martinez's cooperation, you
19   would have argued for life in that case as well.
20            MS. KUPERSMITH:  Yes.  I believe there is no way
21   to rank the evil that these men committed on these children.
22            THE COURT:  Okay.
23            MS. KUPERSMITH:  If there was something greater
24   than a life sentence, perhaps we could come up with a way to
25   rank them of who deserves two versus five versus one, but
```

1     what we have here is that all three of them deserve life

2     sentence.

3              Mr. Martinez, we argued for a discount based on

4     what happened in that case.  But they deserve life sentence

5     based on their offense conduct and what they did to these

6     children and the 3553(a) factors that support that.

7              THE COURT:  All right.  Thank you.

8              So then -- look.  You have given this declaration.

9     Got to give counsel a chance to review it.  So we'll take 20

10    minutes right now to give counsel a chance to review it.

11             I'm going to have -- you know, look.  I guess we

12    are going to have to get to that point.  What documents or

13    exhibits do you have, a flash drive that I need to look at?

14    I'll do that during the break in chambers.  And then we'll

15    come back and deal with it.

16             And I want to give Mr. Nicolaysen a chance to

17    respond.  And then after that, we'll hear from any victims'

18    families that are present in the Court or Zoom.

19             MR. NICOLAYSEN:  And Your Honor, for the record at

20    least, if the Court is not inclined to agree with me on

21    this, I do believe I am entitled to have a flash drive with

22    the same images and videos here at counsel table to review

23    with Mr. Brinson.

24             And if I have to give it back to the government

25    afterwards, I will do that, although I think it should be

```
 1    made part of the record on appeal.

 2              I don't agree that the Court should be allowed to

 3    see these in chambers in-camera without viewing by the

 4    defense.  Now, I do want to --

 5              THE COURT:  Hold on.  I just want to make sure.

 6    These -- are you concerned that this is exhibits that you

 7    have not been given in the course of this litigation?

 8              MR. NICOLAYSEN:  Right.  The government, in

 9    Adam Walsh cases involving child pornography, does make

10    discovery available for viewing at, let's say, the Roybal

11    Courthouse with an agent present to supervise.

12              And the government is -- and I've had cases with

13    AUSA Devon Myers in the past, and I give her very high marks

14    professionally for making evidence available.

15              But it is not about availability.  It is about the

16    government's selection of specific images and videos for

17    sentencing.  And once the government has identified them

18    specifically for sentencing and we have a protective order

19    on the PACER Docket, it is my position that at that point in

20    time I should be given my own set.

21              I shouldn't have to make an appointment and have

22    the marshals bring Brinson over to Roybal.  We're now at

23    sentencing.  The government is investing in specific items

24    of evidence.  I should have my own set.

25              That has not been given to me, and I believe they
```

```
 1   have not yet been given to Your Honor yet, but they are
 2   about to be.  And I just want to make sure the Ninth Circuit
 3   allows me to preserve this issue for appeal.
 4          I believe it's improper to give the government --
 5   give the Court an in-camera review of something the defense
 6   is not likewise being handed in the courtroom.
 7          MS. KUPERSMITH:  Your Honor, if I could respond to
 8   that.
 9          THE COURT:  Yes.
10          MS. KUPERSMITH:  We have them available for
11   defense counsel to look at today.  Whether he wants to go in
12   a witness room.  We -- to preserve the requirements of
13   3509(m), they need to stay in government control.
14          There is no way we can give defendant a flash
15   drive to take after this.  It is not an issue of the
16   protective order.  It is about the statute of 3509(m) that
17   says these images must stay in the possession of the
18   government or the Court.
19          But we have a stand-alone computer that he can
20   review the exact same evidence that we are providing to
21   Your Honor today.
22          THE COURT:  All right.  So then you can look at --
23          MR. NICOLAYSEN:  Well, then I would ask for more
24   than just 20 minutes.  I'd like to go -- if the Court would
25   allow the marshals to escort my client into the witness room
```

```
 1    here.  I don't want to do this in lockup.  I would like to

 2    do this in the witness room adjacent to the courtroom.

 3               THE COURT:  What's the government's position?

 4               MS. KUPERSMITH:  We have no problem with that, but

 5    we need to send an agent in because this needs to stay -- we

 6    can't just give him uncontrolled access to this flash drive.

 7    It needs to stay in the government's possession but --

 8               MR. NICOLAYSEN:  It is the government's computer.

 9    This is my objection.  I need to have a private meeting

10    with -- I am not asking to put it on my own laptop.

11               THE COURT:  Right.  But the point is this is

12    contraband.  Okay?

13               MR. NICOLAYSEN:  I understand.

14               THE COURT:  And under the protective order, you

15    wouldn't be able to have this alone.  Why should that be any

16    different now?

17               MR. NICOLAYSEN:  Because the government is using

18    its own computer.  I am not asking that it load it onto my

19    laptop.  So it never leaves the government.  It is in their

20    computer at all times.

21               THE COURT:  Right.  But when you go -- during the

22    course of this litigation, you would go to Roybal --

23    right? -- and watch this -- and review the evidence.  A, was

24    it with or without your client?

25               MR. NICOLAYSEN:  No.  In this case, we didn't do
```

| | |
|---|---|
| 1 | that specifically.  We -- I wanted to have a copy of these |
| 2 | items specifically here.  But what I am willing to do -- I |
| 3 | accept the arrangement the government is offering, but what |
| 4 | I want is privacy with Mr. Brinson. |
| 5 | THE COURT:  Well, you can watch the videos with |
| 6 | your client and the agent and afterwards, you can have a |
| 7 | moment with your client to discuss it.  You don't need to |
| 8 | have it with the videos further.  You can review the |
| 9 | evidence that the government has given the Court with an |
| 10 | agent present. |
| 11 | MR. NICOLAYSEN:  Can we have the agent standing |
| 12 | right outside the door with the door closed?  I'd like -- |
| 13 | THE COURT:  No.  No. |
| 14 | MR. NICOLAYSEN:  Okay. |
| 15 | THE COURT:  While you are reviewing it, no.  And |
| 16 | after you have reviewed it, then you can have a moment with |
| 17 | your client.  And I am sorry to the marshals, I just -- I |
| 18 | need to get this done, and I think that's the only fair way |
| 19 | to do it. |
| 20 | You have your chance with your client to look at |
| 21 | the images so both you and your client understand what is at |
| 22 | issue.  I will have a chance to look at it as well. |
| 23 | Afterwards, you can have time with your client to discuss |
| 24 | it, and then we'll come back. |
| 25 | So we'll come back at 12:15, then to deal with it. |

```
 1            So do you have a copy that the Court can look at
 2   this, I suppose?
 3            MS. KUPERSMITH:  We have it on a flash drive or
 4   we -- we have two stand-alone computers with us today.  So
 5   we can send it back with you in our stand-alone computer so
 6   you don't have to load it onto the Court's computer.
 7            THE COURT:  I would much prefer that.  But I do
 8   need some -- do I need an agent to stand over my shoulder
 9   looking at this?
10            MS. KUPERSMITH:  According to 3509, Your Honor,
11   this can stay in the government or the Court's possession.
12            THE COURT:  And then passwords or whatever on
13   the --
14            MS. KUPERSMITH:  We will provide you the password,
15   but I don't want to state on the record but --
16            THE COURT:  Just put it in the Court's -- on the
17   Court's -- I'm sorry.  Give me the stand-alone computer,
18   please.  And then we'll come back at 12:15.  All right.  So
19   let's handle that.
20            MR. NICOLAYSEN:  And your Honor, again, I am just
21   asking that the Ninth Circuit give me the benefit of the
22   lowest burden of proof on review.  Is my objection to this
23   procedure properly noted?
24            THE COURT:  Your objection is noted but overruled.
25   Yes.
```

```
 1              MR. NICOLAYSEN:  Understood.
 2              THE COURT:  All right.  So then do we have -- can
 3   we get -- do we have the stand-alone computers ready?
 4   Because I just -- in the interest of time, I want to ensure
 5   that we can get all the moving parts together.  Okay?
 6              MS. KUPERSMITH:  Yes, Your Honor.  I just -- for
 7   clarity, the files are named by exhibit number as they are
 8   referenced in the declaration.
 9              THE COURT:  All right.  And then I assume you are
10   going to file this declaration under seal today?
11              MS. KUPERSMITH:  Yes, Your Honor.
12              THE COURT:  Okay.
13              MR. NICOLAYSEN:  And is my objection to that duly
14   noted?
15              THE COURT:  Yeah, the objection is noted but
16   overruled as it relates to that, the declaration of Special
17   Agent John Kuzma.
18              All right.  So if you can get that to the
19   courtroom deputy and Mr. Nicolaysen and again, to the
20   marshals.  Thank you.  I just -- I need to do it this way in
21   order to ensure that Mr. Brinson has a fair hearing.
22              All right.  Thank you.  We'll be in recess till
23   12:15.
24              THE CLERK:  All rise.  This Court is in recess.
25         (Recess taken 11:36 A.M. to 12:34 P.M.)
```

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                THE COURT:  All right.  So we're back on the
 2    record.  I have had a chance to look at the exhibits and
 3    read the declaration.
 4                Mr. Nicolaysen, have you had a chance to review
 5    the declaration and the corresponding exhibit?
 6                MR. NICOLAYSEN:  I have, Your Honor, yes.  Thank
 7    you for the opportunity.
 8                THE COURT:  Okay.  All right.
 9                So Mr. Nicolaysen, do you wish to be heard as it
10    relates to the declaration and the exhibits?
11                MR. NICOLAYSEN:  Yes, Your Honor.
12                Now that we have looked at the videos, I believe
13    that the videos raise questions regarding the accuracy of
14    the government's opinions and it is opinions that it is
15    Mr. Brinson depicted in a number of these.
16                THE COURT:  His face is in some of them.
17                MR. NICOLAYSEN:  Is in one of them, arguably.
18                THE COURT:  I think it's two.
19                MR. NICOLAYSEN:  Maybe a second.  I don't think
20    two.  I will --
21                THE COURT:  There were other videos at least -- I
22    mean, I could -- can I take judicial notice of the tattoos
23    on his hand?
24                MR. NICOLAYSEN:  I don't think that confirms him.
25    I do not.  I do not.  I don't think that that is definitive
```

1   evidence.  And in the declaration, we see in paragraphs 16,

2   17, 18, 20, and 31 the repeated use of the phrase, quote,

3   from the context of the video, unquote.

4          In other words, the agent is drawing conclusions.

5   It's the agent's interpretation of the video in relation to

6   what the agent would, I guess, call the surrounding

7   circumstances or other evidence.

8          So the government is extrapolating here.  And this

9   is why I think it was productive.  Clearly, Mr. Brinson

10  created depictions.  We have pleaded to that.  We have

11  admitted that in the general sense.

12         But what the government is arguing in its papers

13  literally is that he was engaged in a torture chamber and

14  trying to depict him literally using the word "evil" here

15  even today.

16         And when we look at this and we see clear

17  violations of the law without any doubt -- we see child sex

18  abuse, but I don't think a life sentence.  I don't see the

19  degree of extremity that the government is arguing in its

20  papers.

21         I don't see any definitive proof that he is the

22  person creating the videos, and it is arguable as to how

23  many he is in.  I will agree he's in one of them.

24  Your Honor suggests two but, you know, there's -- for

25  example, there is a particular video which the government

1  claims depicts my client inserting his finger into the minor

2  child, and I just don't think that's -- there is proof of

3  that.

4          That's an extrapolation on the government's part.

5  Without looking at the video, we would be left with nothing

6  but the government's interpretation.

7          It is highly unusual, and I would agree if Your

8  Honor said that, for a proceeding to take the time to look

9  at child pornography images.  That is out of the ordinary.

10          But in a case of this type where the government is

11  seeking life and characterizing Mr. Brinson as evil, what we

12  have to do because of the restrictions with the use of the

13  evidence is go to the images themselves.

14          We see clear violations of law, but I don't see

15  what the government sees in its depictions, that it's his

16  video, he is in it, and he deserves a life sentence.

17          I see a lengthy sentence, but I don't see a life

18  sentence.

19          I see someone for whom there is a mental disorder

20  that requires treatment for which he is highly amenable, and

21  the government is wrong when they suggest that Mr. Brinson

22  would not be a candidate for civil commitment.

23          I mean, the government is not qualified to make

24  that type of argument.  That's for clinical psychologists to

25  make, that a causal connection between a mental disorder and

```
 1    a behavior here, clearly there is a connection, but it's not
 2    for the lawyers to make that decision.
 3            And the reason the civil commitment option exists
 4    is for someone like Mr. Brinson -- okay? -- to be allowed to
 5    be re-evaluated at that future point in time to see where we
 6    are, and if he does pose any risk within the clinical
 7    standards, he stays in custody.
 8            And the sex offense rules are written uniquely for
 9    this body of law with an expectation of release but with a
10    contingency that release is not guaranteed, it is contingent
11    on clinical confirmation that you are worthy of release.
12            It is not a system where the ball has to be hit
13    out of the ballpark and land in the parking lot with a life
14    sentence right here and now.
15            I do think there is that opportunity here.  The
16    government has trivialized Dr. Abbott's report in
17    particular.  Highly qualified clinician would not be writing
18    that report if he didn't have the clinical optimism from
19    having reviewed discovery and having talked to Brinson for
20    hours, having applied clinical tests which he discusses in
21    his reports, the optimism that Mr. Brinson is someone
22    capable of foreseeably being released.
23            And I see a client highly amenable to treatment
24    and highly aware that what he has done is a disgrace.  It's
25    an absolute disgrace -- no doubt about it.  But we don't
```

 1    respond to these images of these videos, in my judgment,

 2    with a life sentence.

 3          And I will just close by reminding us of what we

 4    know.  There is no prior criminal history here.  There is --

 5    I've had in my SVP cases, for example, clients whose history

 6    would include juvenile offenses where they were being --

 7    showing antisocial personality traits as teenagers, having

 8    encounters with the law, going to CYA.

 9          That's not Mr. Brinson.  And I think the

10    transformational work that he has done over the past five

11    years, which is preliminary -- he has a long way to go, but

12    it is worthy of credit, and there are distinctions here

13    between him and the other defendants, Your Honor.

14          Thank you.

15          THE COURT:  All right.  All right.  Thank you.

16          Look, I take a different view as it relates to the

17    videos.  I have had a chance to review all of them and the

18    images and the exhibit.

19          Look, I'm not wild about this.  The government

20    does it all the time.  You get an agent up there to say it's

21    clear, it's clear, it's clear.  In some instances, yes; in

22    some instances not.  I wish -- you know, and I have been

23    there.  I wish they would just say here is what it is.  We

24    believe it.

25          You know, look.  I think paragraph 16 or -- I

1    should say paragraph 18 -- I don't know if you can say it's

2    clear, but, by the same token, the remainder of all those

3    images and the videos, I think it easily surpasses a

4    preponderance of the evidence.

5            His face is in them, tattoos that are similar to

6    what I have observed during the course of the litigation in

7    this case are there.  Possible it could be a twin or a

8    clone, possibly.  I doubt it.

9            His voice appears similar to what I have heard in

10   court today.  They reference him by name that, I think,

11   would -- that shows a connection to him.  So I think there

12   is a preponderance of the evidence to suggest it.

13           Again, I am not wild about sort of the -- what I

14   would characterize putting too much mustard on the hot dog

15   of, you know, it's clear this, it's clear that.  You know,

16   we don't -- I don't think we need to do that for this case,

17   but in any event --

18           All right.  So your objections as it relates to

19   these exhibits and your characterization, again, I take a

20   different view.  I think the preponderance of the evidence

21   standard has been met that he is in the video, that he was

22   the producer or the person who took the images, and so we'll

23   leave it at that.

24           From the government's standpoint, I know -- and I

25   apologize to those that have been waiting for a period of

```
 1    time.  I believe there are some individuals that wish to
 2    make a statement.
 3              MS. KUPERSMITH:  Yes, Your Honor.  We have two
 4    individuals on the Zoom line and one in person.
 5              THE COURT:  All right.
 6              MS. KUPERSMITH:  I believe the mother of
 7    Minor Victims 3 and 12 would like to go first, and she is on
 8    the Zoom line.
 9              THE COURT:  Okay.  I don't -- okay.  I think --
10    and she's spoken before.  Correct?
11              MS. KUPERSMITH:  Yes, Your Honor.
12              THE COURT:  Okay.  All right.  So let's see if we
13    can admit her.  If you could maybe approach the courtroom
14    deputy and give the initials so we know who to admit into
15    the Zoom room.  And we have your computer as well.
16              Ma'am, can you hear us and see us?  If you are on
17    your phone, it looks like you may be on mute because we
18    can't hear you.
19              Can you hear us?  Can you try to speak so -- I
20    can't hear you.  I just want to see if the connection is
21    there.  No.  Can you check your phone to see if it's on mute
22    or try star -- I think it's 9.
23              MOTHER OF MINOR VICTIM 3:  Can you hear me now?
24              THE COURT:  Yes, we can.  All right.  And ma'am,
25    if you could do me a favor.  If there is a way you could
```

```
 1    just stand still or stay still, and then I can see you
 2    clearly.  I want to make sure you have a chance to be heard
 3    and seen.  I appreciate you taking the time, and my
 4    apologies for the delay.
 5            If you could just -- unless -- are we going to
 6    refer her by her initials?  Is that what the government
 7    requests or --
 8            MS. KUPERSMITH:  We typically have just been
 9    referring to as the mother of Minor Victims 3 and --
10            THE COURT:  Okay.  So, ma'am, I am not going to
11    refer you to by your name for purposes of this hearing.  I
12    don't mean that as a sign of disrespect, but I know you are
13    the mother of Minor Victim 3, and so the floor is yours if
14    you wish to be heard.
15            MOTHER OF MINOR VICTIM 3:  I just feel like the
16    fact that he even talking about treatment or mental illness
17    lets me know that he hasn't grown up or changed.
18            I think that he is sick in the head.  But as far
19    as, like, changing and -- I don't think none of that
20    happened because all the stuff that happened to those kids,
21    I don't feel like he has any remorse.
22            I really only feel like because you got caught
23    that's the only reason why you feel like you want to change
24    now.  You know what I mean?
25            But those kids suffered.  I have to tell my kids
```

```
 1   that you died for them to even be able to live life again.
 2   They think you're dead.  They don't even know that you are
 3   alive right now.
 4           And I just don't feel like this is even justice
 5   for you.  You know what I mean?  And I really want you to
 6   suffer the way that you made all of these children suffer.
 7           Like, I really loved you, John, and that was
 8   really messed up.  I really loved you, and I cared about
 9   you, and I thought that you cared about us too.  And the
10   fact that you did that to us, that hurt us so bad, crushed
11   us.
12           What really hurt was my son told us, and we was
13   all in each other face looking at you, and you said, no, you
14   didn't do that and then made comments months later that you
15   did.
16           So it's like I had to second-guess my child.  Do
17   you know what I am saying?  Do you have any idea how that
18   feels that I have to look at my son every day knowing that
19   he was telling me the truth?  You will never know what we
20   had to go through.
21           But one thing that going to remain is that they
22   are loved, they are cared about.  We are going to be there
23   for them.  We are going to help them.
24           And I just want you to live life like they did.
25   You should.  You should not be getting out going to no
```

1  treatment.  You are not ill.  You are very, very smart.  I

2  was around you for years.  You are smart.  You are not sick.

3          And please quit acting like you are a victim

4  because the victims are those children that had to tell you

5  to stop several times, no, don't.  That is so hurtful, John.

6          I'm done talking.

7          THE COURT:  All right.  Thank you, ma'am.

8          And I am so sorry for you and your children, but

9  it sounds like you got the right attitude to making sure the

10  kids are loved, and they're going to need that for the rest

11  of their lives.  And so, you know, best wishes to you and

12  your family as you go through this journey.  Thank you very

13  much.

14          Ms. Kupersmith.

15          MS. KUPERSMITH:  Thank you, Your Honor.

16          The next is the mother of Minor Victim 1, who

17  should also be on Zoom.

18          THE COURT:  Do you want to approach again with the

19  initials.  So --

20          Ma'am, can you hear us?

21          MOTHER OF MINOR VICTIM 1:  Yes.

22          THE COURT:  Okay.  And my apologies for the delay.

23  I appreciate your patience.  I'm not going to address you by

24  your name.  I don't mean that as any disrespect, but I want

25  to give you the opportunity to be heard.

```
 1          So please go ahead.

 2          UNIDENTIFIED VOICE:  No, it's okay.  I completely

 3   understand.

 4          There was a statement that the defendant had made,

 5   and he had said that he -- something along the lines of

 6   saying that he had died to himself.

 7          And when I heard that, I just thought of my son,

 8   and I thought about all the kids that he harmed and that the

 9   other two defendants harmed as well.

10          You murdered their childhood.  You took all of

11   that away.  And we, as their parents, have to help them see

12   that none of it is their fault.

13          My son hates to look at himself in the mirror.  He

14   hates when I say that he is handsome and that nothing is his

15   fault because he doesn't believe it.

16          He hates the way he looks because he thinks that

17   the reason why he looks the way he looks is because you and

18   the other defendant did all those awful things to him.

19          And I am sure that the other kids that you harmed

20   feel the same way because that's the only thing that makes

21   sense to them because nothing else that they have done --

22   they didn't deserve any of this.

23          And for you to say that you feel remorse, like, I

24   don't even believe my own brother has remorse.  And I know

25   that he was smart, and I believe that the other two people
```

1  involved, including you, were smart enough and the way that

2  you manipulated these kids, I believe that you guys are just

3  trying to manipulate the Court in the same way.

4          I do have hope that maybe one day you do feel

5  remorse.  But once you are sentenced, once this court is

6  done, like, you were the last piece of the puzzle for me and

7  my family because, after this, I don't want to have to look

8  back.

9          I don't want to look at you guys.  I don't want to

10  hear you guys.  I just want to be able to focus on my kids,

11  and I want to focus on my son's healing because, again, you

12  guys have destroyed him.  You destroyed his childhood.  You

13  destroyed his worth.

14          And it's going to take a village, the world --

15  it's going to take the entire world to help him rebuild his

16  confidence and to rebuild the fact that he did not deserve

17  to be treated that way or have any of those things done to

18  him.

19          And I don't think that you understand the damage

20  or the extent of what that means.  So for you to say that

21  you have remorse and that you've changed, I don't think you

22  understand the meaning of what that actually is, the

23  definition.  I don't think you can.

24          Thank you, Your Honor.

25          THE COURT:  All right.  Thank you.  And the same

```
 1   wish for you and your family as you go forward.
 2              It is about healing, and that's all we can try to
 3   do and all you can try to do on behalf of your children.
 4   And, again, I thank you for your time and your comments.  So
 5   thank you.
 6              Okay.  Just one moment, please.
 7              MR. NICOLAYSEN:  Your Honor, we may have an
 8   interruption on the video.  I'm not sure --
 9              THE COURT:  I know.  I have a 1:00 o'clock.  So --
10              MR. NICOLAYSEN:  Oh.  Would Your Honor like to
11   recess this --
12              THE COURT:  No.  No.
13              MR. NICOLAYSEN:  May I just tell the Court that --
14   may I consult with government counsel for just a moment.
15              THE COURT:  All right.
16         (Brief pause in the proceedings.)
17              THE COURT:  Okay.
18              MR. NICOLAYSEN:  Your Honor, I consulted with the
19   government before speaking to the Court.  I want to make
20   sure that this individual who has the 1:00 o'clock is not on
21   video hearing the proceedings.
22              THE COURT:  He's not anymore.
23              MR. NICOLAYSEN:  Okay.  He's not?  Very good.
24              THE DEFENDANT:  Can I ask a question?  Whoa.  Time
25   out.  Time out.
```

```
 1          MR. NICOLAYSEN:  Your Honor, would the Court be
 2   aware as to whether he was?  The reason I am concerned is
 3   that inmate is in my client's unit.
 4          THE COURT:  Yeah, I honestly don't -- he popped on
 5   when you all saw him.
 6          MR. NICOLAYSEN:  Okay.
 7          THE COURT:  So that's -- as far as I know at least
 8   from my experience is that that's when he popped on, and so
 9   we stopped.
10          MR. NICOLAYSEN:  Very good.  All right.  Thank
11   you, Your Honor.
12          THE COURT:  All right.  In the abundance of
13   caution, I am just going to have him disconnected.
14          Mr. Lomax, if you can hear me, can you disconnect
15   and tell the folks at -- where you are housed to have you
16   reconnect at 1:45.  Can you do that.  Okay.  I can't hear
17   you.  So just disconnect.
18          Okay.  He's been disconnected.  Go ahead
19   Mrs. Kupersmith.  There was some other folks -- we covered
20   the two zooms.  Correct?
21          MS. KUPERSMITH:  Yes, Your Honor --
22          THE COURT:  Okay.
23          MS. KUPERSMITH:  -- we covered the two Zooms.  We
24   have one more who is currently in the courtroom, the father
25   of Minor Victims 3 and 12.
```

```
 1              THE COURT:  All right.  Come on down, sir.  Oh,
 2    I'm sorry, I -- come on down, sir.  We have not met.  I was
 3    looking at the folks in the first row.  We saw each other
 4    the last time.  My apologies.
 5              FATHER OF MINOR VICTIMS 3 AND 12:  No.  I'm the
 6    one you heard over the phone a few times.
 7              THE COURT:  On the truck.
 8              FATHER OF MINOR VICTIMS 3 AND 12:  Yeah.
 9              THE COURT:  That's -- okay.  So we have met.
10    Okay.  My apologies, sir.  Okay.  Take a deep breath.
11              FATHER OF MINOR VICTIMS 3 AND 12:  No disrespect.
12    No disrespect.
13              THE COURT:  I understand, but take a deep breath.
14    We are in a courtroom.  I understand you are upset.
15    Everyone's got a job to do, including me, and I -- and just
16    take a deep breath.  Okay, sir?
17              FATHER OF MINOR VICTIMS 3 AND 12:  I would have
18    listened to that boy that day, God willing, you wouldn't be
19    sitting in that chair, Partner.  Just know that.
20              It would have been me sitting in that chair
21    looking at what you looking at.  And I wouldn't regret it
22    for nothing in this world.  Okay?  I would have loved every
23    minute of it.
24              That's my heart and my soul that you played with,
25    and I trust you with them.  Okay?  I literally looked at you
```

1    like you was a brother, and not only did you portray them,

2    you betrayed me.  You act like you gave a fuck about my kids

3    and the whole time you were sitting there playing with them,

4    taking the one thing from them that I can't give them back.

5            And as bad as I want to give it back to them, I

6    can't.  Okay?  I got to lie to them every time they say

7    something about you, tell them you dead because in my heart

8    I wish like fuck you was.

9            There is nothing in this world I wouldn't give to

10   be where you at right now just to see you in a box.  I lost

11   my wife.  I lost everything behind these last five years

12   because I don't know how to fix it, and you sit there and

13   you say you sick?

14           Only thing you looking at a mother fucker that was

15   raped when he was a kid, and it didn't define me.  I took

16   that shit and I [unintelligible].  I got nine kids, and I

17   raised all nine of them plus the two stepsons I got, and

18   they don't see nothing but a daddy.  And never do I once let

19   them know what I went through when I was a kid.

20           So for you to do what you did, yeah.  There is no

21   excuse.  You ain't got no excuse.  So for you asking for --

22   your lawyer telling you, Oh, no, life ain't what he need,

23   Bro, life is about the best thing you can get because you

24   got -- everything in me would tell you, they ever let you

25   walk out that gate, I promise you I'm going to be the last

```
 1    mother fucker you see, and I put that on everything I love

 2    because there is nothing in this world, Bro, that you should

 3    be able to walk away from.

 4              You took something, my nigga, that can't nobody

 5    give these kids back.  None -- none -- all three of you all

 6    deserve the same sentence.  One got lucky.

 7              You?  You shouldn't even ask for it.  You should

 8    just be glad that that's what they gave you because you know

 9    in your heart that them two little boys loved the fuck out

10    of you.

11              THE COURT:  All right.  Anyone else,

12    Ms. Kupersmith?

13              MS. KUPERSMITH:  No, Your Honor.

14              THE COURT:  Okay.  Okay.  All right.  So there has

15    been numerous objections that have been raised.

16              You know, look.  Respectfully, I am going to

17    overrule those objections.  I mean, you know, the factual

18    objections relative to who was on the video, whether or not

19    Mr. Brinson produced those videos, I think by a

20    preponderance of the evidence standard, that has been

21    clearly met.  The government has laid out in detail as it

22    relates to each and every objection and the response to

23    that.  I adopt those just in the interest of time.

24              I think there is significant evidence to

25    demonstrate that it was Mr. Brinson in these videos.  He
```

1   produced a number of the videos.  He caused significant harm

2   to these children.  That satisfies guideline calculations

3   for the enhancements based on the videos that I watched that

4   were submitted in support of the declaration of Agent Kuzma

5   and in addition to the chats and the videos that corroborate

6   some of the activities that were going on.

7          I don't believe that there's double counting that

8   exists as it relates to the calculation of the guidelines as

9   well.  And so the objections are noted but overruled.

10         Based on the calculation of the guidelines, I do

11  find the presentence report to be otherwise accurate.  The

12  guidelines are advisory.

13         And the total offense level is -- I mean, I think

14  to use Mr. Nicolaysen's word, I mean, when you calculate the

15  total offense level, it's beyond the charts.  It caps out at

16  43, Criminal History Category I.  The guideline range is

17  life.  Supervised release range is five years to life.  Fine

18  of 50,000 to $500,000 in this case.

19         In making individualized determination of the

20  facts, I am considering the factors in 18 USC 3553(a),

21  especially but not exclusively, the nature and the

22  circumstances of the offense.  To say that this is horrific

23  and violent and tragic is an understatement.

24         You know, having reviewed all the evidence in the

25  case during the course of this litigation as well as

```
 1   reviewing the videos and hearing the statements of the
 2   family, Mr. Brinson, you abused a position of trust.  These
 3   people trusted you, cared for you.  You took advantage of
 4   that in a way that was -- it was evil.  I don't know how
 5   else to say.  It I don't know how else to say it.
 6          My sincere hope for these children is that some of
 7   them are young enough that they will be able to heal with
 8   time.  I don't know if this stuff ever goes away, quite
 9   frankly.
10          And for the parents, again, my condolences to all
11   of you as you move forward to try to deal with this reality
12   that you have, loving these kids and helping that they --
13   ensuring that they move forward with their lives.
14          The sentence has to reflect the seriousness of the
15   offense, promote a respect for the law and provide a just
16   punishment, to provide an adequate deterrence for criminal
17   conduct, to protect the public from further crimes by
18   Mr. Brinson.
19          I'm considering the kinds of sentences that are
20   available, try to avoid any unwarranted disparities.  I have
21   considered the documents submitted by the defense indicating
22   the -- his statements of abuse as a young child.
23          I have considered the two doctors' reports
24   relative to their assessment, I should say, of Mr. Brinson.
25   I have considered those.
```

```
1              But I have to say -- I mean, look.  We are talking
2    at the end of the day of some seriously horrific conduct.
3    There is no other way around it.  And a sentence that
4    defense counsel's proposing, I would argue, is asking the
5    Court to take a risk that at some point at some time
6    Mr. Brinson will not commit these kind of offenses again.
7              I'm not convinced of that, and I'm not prepared to
8    make that -- take that risk at this time.  I have considered
9    the civil commitment component.
10             Again, these are a lot of speculative thoughts, if
11   you will, about the future that I have to consider, I mean,
12   to be fair.  But I am not convinced that's outweighed --
13   that that should outweigh the facts that occurred in this
14   case.
15             And the facts that occurred in this case are
16   serious.  It involves an enterprise, whatever you want to
17   call it, of individuals that for whatever reason sought to
18   abuse children and at least in certain instances caused -- I
19   shouldn't say in certain instances -- and in doing so caused
20   significant pain to them emotionally and physically, pain of
21   which is difficult to suggest was unknown to defendants at
22   the time.  It's just difficult to comprehend that.
23             So I will now state the sentence, but I want to
24   give counsel a final chance to make any legal objection
25   before the sentence is imposed.
```

 1              Does either counsel know of any reason, other than
 2    what's been stated, as to why the sentence should not now be
 3    imposed?
 4              Ms. Kupersmith?
 5              MS. KUPERSMITH:  No, Your Honor.
 6              THE COURT:  All right.
 7              Mr. Nicolaysen?
 8              MR. NICOLAYSEN:  No, Your Honor.  Thank you.
 9              THE COURT:  All right.  So I find that the
10    following sentence is reasonable and is sufficient but no
11    greater than necessary to comply with the purposes stated in
12    Title 18, United States Code, Section 3553(a).
13              It's ordered that Mr. Brinson shall pay to the
14    United States a special assessment of $500 which will be due
15    immediately.  Any unpaid balance shall be due during the
16    period of imprisonment at a rate of not less than $25 per
17    quarter and pursuant to the Bureau of Prisons Inmate
18    Financial Responsibility Program.  Pursuant to the
19    guidelines Section 5E1.2, I am going to waive any fines in
20    this case.
21              Pursuant to the Sentencing Reform Act of 1984,
22    it's the judgment of this Court that the defendant, John
23    Richard Brinson, is hereby committed on Counts 1, 3, 4, 5,
24    and 6 of the Second Superseding Indictment to the custody of
25    the Bureau of Prisons for a term of life.

```
 1          The term consists of life on Count 1 and 360
 2   months on Counts 3, 4, 5, and 6, all to be served
 3   concurrently.
 4          I will recommend that the Bureau of Prisons
 5   conduct a mental health evaluation to provide any necessary
 6   treatment while incarcerated.
 7          Should Mr. Brinson ever been released from
 8   imprisonment, he shall be replaced on a supervised release
 9   for a term of life.  The term consists of life on Counts --
10   life on each of Counts 1, 3, 4, 5, 6 of the Second
11   Superseding Indictment, all terms to run concurrently under
12   the following terms and conditions.
13          You shall comply with the rules and regulations of
14   the U.S. Probation and Pretrial Services office.  You shall
15   cooperate in the collection of a DNA sample.  While on
16   supervision, you shall pay a special assessment in
17   accordance with the judgment's orders.
18          Within three days, if you are ever released from
19   prison, you shall register as a sex offender and keep that
20   registration current in the jurisdiction where you reside,
21   where you are employed, where you are a student, pursuant to
22   the registration procedures established in each
23   jurisdiction.
24          When registering for the first time, you shall
25   register in the jurisdiction in which the conviction
```

1    occurred if it is different from the jurisdiction of where

2    you live.  And you shall provide proof of registration to

3    your probation officer within 48 hours.

4           You shall participate in a psychological

5    counseling and psychiatric treatment and/or sex offender

6    treatment program or any combination thereof and shall abide

7    by all the rules and conditions of that program.  You do

8    retain the right to invoke the Fifth Amendment.

9           As directed by your probation officer, you shall

10   pay for all or part of your psychological counseling and

11   treatment to any sex offender treatment program or any

12   combination thereof and shall provide proof of payment as

13   directed by your probation officer.  If you don't have the

14   ability to pay, no payment shall be required.

15          You shall not view, possess any materials,

16   including pictures, photographs, books, writings, drawings,

17   videos, video games depicting child pornography as defined

18   in 18 USC 2256(8) or sexually explicit conduct depicting

19   minors as defined by 18 USC 2256(2).

20          This condition does not prohibit you from

21   possessing materials solely because they are necessary to

22   and used for collateral attack nor does it prohibit you from

23   possessing materials prepared and used for the purposes of

24   your mandated sex offender program.

25          You shall not contact the victims by any means,

1    including in person, electronic means or via third parties.

2    You shall remain at least 100 yards from all the victims in

3    this case at all times.  If any contact occurs, you shall

4    immediately leave the area of contact and report it to your

5    probation officer.

6           You shall not enter, loiter or be within 100 feet

7    of school yards, parks, public swimming pools, playgrounds,

8    youth centers, video arcade facilities, amusement and theme

9    parks or other places primarily used by persons under the

10   age of 18 without the prior written authorization of your

11   probation officer.

12          You shall not associate or have verbal, written,

13   telephonic or electronic communication with any person under

14   the age of 18 except in the presence of the parent or legal

15   guardian of said minor and on the condition that you have

16   notified said parent or legal guardian of your conviction of

17   these offenses.

18          This provision doesn't encompass persons under the

19   age of 18 such as waiters, cashiers, ticket vendors,

20   et cetera, whom you must interact with in order to obtain

21   ordinary and usual commercial services.

22          You shall not affiliate with, own, control, or

23   volunteer or be employed in any capacity by a business or

24   organization that causes you to be regularly in contact with

25   persons under the age of 18.

1          You shall not affiliate with or own or control or

2   be employed in any capacity by a business whose principal

3   product is the production or selling of materials depicting

4   or describing sexually explicit conduct as defined in 18 USC

5   2256(2).

6          You shall not own or use or have access to the

7   services of any commercial mail receiving agency nor shall

8   you open or maintain a post office box without prior written

9   approval of your probation officer.

10          You shall not view or possess any materials such

11   as videos, magazines, photographs, computer images, or other

12   matters that depict actually sexually explicit conduct

13   involving adults as defined in 18 USC 2257 (h)(1).

14          You shall not view or possess any materials,

15   including pictures, photographs, books, writings, drawings,

16   video games depicting or describing child erotica as defined

17   as a person under the age of 18 in partial or complete state

18   of nudity in sexually provocative poses viewed for the

19   purpose of sexual arousal.

20          You shall -- any employment that you have has to

21   be approved by your probation officer, and any change of

22   employment needs to be approved by your probation officer at

23   least ten days prior to any -- any change.

24          You shall not reside -- if you are ever released

25   from prison, shall not reside within the direct view of

1  school yards, parks, public swimming pools, playgrounds,

2  youth centers, video arcade facilities or other places

3  primarily used by persons under the age of 18, and your

4  residence shall be approved by your probation officer, and

5  any change in residence must be preapproved by your

6  probation officer, and you shall submit the address of the

7  proposed residence to the probation officer at least ten

8  days prior to any scheduled move.

9       You shall submit yourself to a search at any time

10  of with or without a warrant by any law enforcement officer

11  or probation officer or your person and property, house,

12  residence, vehicles, papers, computers, cell phones, or

13  other electronic communications or data storage devices or

14  media, e-mail accounts, social media accounts, cloud storage

15  accounts, effects or -- and other areas under your control

16  upon reasonable suspicion concerning a violation of the

17  condition of your supervision or unlawful conduct by you or

18  by any probation officer in the lawful discharge of the

19  officer's functions.

20       You shall possess and use only those computers and

21  computer-related devices, screen names, passwords, e-mail

22  accounts, and internet service providers that have been

23  disclosed to your probation officer.  While on supervision,

24  any changes or additions have to be disclosed to your

25  probation officer prior to your first use.

```
 1            Computers and computer-related devices include
 2   personal computers, personal data assistants, internet
 3   appliance, electronic games, cell phones, digital storage
 4   media, as well as peripheral equipment that can access or
 5   can be modified to access the internet, electronic bulletin
 6   boards, and other computers.
 7            All computers, computer-related devices and their
 8   peripheral equipment used by you shall be subject to search
 9   and seizure.  This shall not apply to items used at your
10   employment's site that's maintained by your employer.
11            And you shall abide by any rules and regulations
12   of the computer monitoring program and pay for the cost of
13   the program in an amount not to exceed $32 per month.
14            I am not going to authorize the drug testing
15   condition.  I am going to authorize a disclosure of your
16   presentence report and any previous mental health
17   evaluations or reports to your treatment provider.  And the
18   treatment provider may provide the information, except this
19   presentence report, to state, local -- state or local
20   service agencies such as the State of California Department
21   of Social Services for the purposes of your rehabilitation.
22            There are no remaining counts to be dismissed in
23   this case.  But, sir --
24            MR. NICOLAYSEN:  May I make a request --
25            THE COURT:  Hold on.  Hold on.  I'll give you a
```

```
 1    chance to do that.
 2              You have a right to appeal your conviction and
 3    sentence if you believe that the conviction or sentence is
 4    somehow illegal or unlawful.  You have the right to appeal
 5    your sentence as well.  With few exceptions, a notice of
 6    appeal must be filed within 14 days of the judgment being
 7    entered in this case.
 8              Do you understand that, sir?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  Okay.  If you are unable to afford a
11    transcript of the record in this case, one will be provided
12    at government's expense.
13              If you don't have counsel to act on your behalf,
14    you can make that request when you file your notice of
15    appeal.  You also must make the request to have counsel
16    appointed on your behalf within 14 days of the judgment
17    being entered in this case.
18              The notice of appeal must designate the judgment
19    or order that's appealed from and the fact that you are
20    appealing it to the Court of Appeals.
21              Does the government need to dismiss the underlying
22    Indictment in this case?  Has he pled guilty to the
23    superseding?
24              MS. KUPERSMITH:  Yes, Your Honor, we --
25    considering the sentence on the Second Superseding
```

```
 1    Indictment, we would dismiss the underlying first --

 2            THE COURT:  All right.  So that motion is granted.

 3            Anything further from the government?

 4            MS. KUPERSMITH:  Your Honor, we do have a couple

 5    of housekeeping matters.

 6            THE COURT:  All right.

 7            MS. KUPERSMITH:  This morning -- or last night a

 8    forfeiture order was submitted for your consideration.

 9            THE COURT:  Okay.  I haven't seen it.  So --

10            MS. KUPERSMITH:  Just wanted to make the Court

11    aware of that --

12            THE COURT:  Okay.

13            MS. KUPERSMITH:  -- as well as --

14            THE COURT:  And what is being -- what are you

15    requesting be forfeited?  Computers?  Things like that?

16            MS. KUPERSMITH:  One computer and two phones.

17            THE COURT:  Okay.  So I will review it and handle

18    it as soon as possible.

19            MR. NICOLAYSEN:  There is no objection,

20    Your Honor.

21            THE COURT:  Okay.  All right.

22            MS. KUPERSMITH:  Your Honor, we would also ask

23    that a restitution hearing, which is mandatory in this case

24    pursuant to 18 USC 2259, be set over for 90 days.

25            THE COURT:  All right.  So you guys haven't
```

1    discussed the date.

2            MS. KUPERSMITH:  We have not.

3            THE COURT:  Okay.  Let me get a date in 90 days.

4    Just bear with me one moment, please.

5            MR. NICOLAYSEN:  And your Honor, the question is

6    whether that's even needed.  Given the life sentence, there

7    is no foreseeability of paying restitution.

8            THE COURT:  Right, but it is mandated, and so I

9    have to issue an order at some point.  And so if you can --

10   if you all -- I will set it for 90 days.  If you have

11   reached an agreement as it relates to that, fine.  If not,

12   we'll have the hearing and an order will get issued.

13           Hold on one second.

14           MR. NICOLAYSEN:  May my client waive his

15   appearance?  And the reason that I say that, I would like to

16   have him designated from MDC by the Bureau of Prisons.  A

17   90-day waiting requires him to stay at MDC for a hearing,

18   which, in my opinion, is really perfunctory at this point.

19           So if the Court will allow him to orally waive his

20   presence, I certainly would appreciate that so he can move

21   forward with the designation process.

22           THE COURT:  Well, let me ask the government.  Why

23   do we need 90 days?  I mean, can't -- we can do it in a

24   month.

25           MS. KUPERSMITH:  We can --

```
 1              THE COURT:  We can do it next week.  I mean, at
 2   this --
 3              MS. KUPERSMITH:  We need a little bit of time to
 4   gather the necessary paperwork for it.  We're --
 5              THE COURT:  Okay.
 6              MS. KUPERSMITH:  -- still waiting on some of that
 7   to come to us, but we don't need 90 days.
 8              THE COURT:  So why don't we do it in a month?  And
 9   this way, we'll get it done, and then it's only 30 days as
10   opposed to him staying 90.  I'm not comfortable with him
11   waiving his presence.  I mean, I'm just not.
12              I mean, given -- there's going to be an appeal,
13   there's going to be a whole host of issues.  I'm not going
14   to add to that.
15              So we'll have a restitution hearing on May --
16              MR. NICOLAYSEN:  23rd, Your Honor, in the morning.
17   Would that work -- oh, it's on Fridays.  I realize.
18              THE COURT:  May 20th is what I was going to
19   propose.
20              MR. NICOLAYSEN:  That would be fine, Your Honor.
21   Thank you.
22              THE COURT:  May 20th, does that date work for the
23   government?
24              MS. KUPERSMITH:  Yes, Your Honor.
25              THE COURT:  All right.
```

```
 1              MR. NICOLAYSEN:  At 1:30?

 2              THE COURT:  1:30 P.M., May 20th for restitution.

 3              All right.  Anything further from the government.

 4              MS. KUPERSMITH:  We have two small other

 5   housekeeping items.  We -- just the declaration that you

 6   viewed, we will be putting that on file just so that it's

 7   there, and it will -- we are going to have to -- that go

 8   under seal.

 9              THE COURT:  Okay.

10              MS. KUPERSMITH:  And then we had asked the

11   Court -- we had provided redacted copies of the government

12   sentencing memorandum so that that could be filed because

13   the items that needed to be under seal are redacted in that

14   version, and I just wanted to alert the Court that we had

15   sent those and they haven't been put on the docket yet.

16              THE COURT:  Right.  I received them, but I want to

17   make sure I understand.  There will be two versions of the

18   sentencing memo or only one version that's redacted?

19              MS. KUPERSMITH:  So we filed the full version

20   under seal already.  What we submitted to the Court is a

21   version that is redacted so that it can be placed on the

22   regular docket and --

23              THE COURT:  And have you filed that with the Court

24   or --

25              MS. KUPERSMITH:  We sent it to the Court.
```

```
1              THE COURT:  So you want us to file it?

2              MS. KUPERSMITH:  We need the Court to approve the

3    redactions in order for us to --

4              THE COURT:  Got it.  Okay.  So I will approve the

5    redactions, if not tonight, on Monday.

6              MR. NICOLAYSEN:  May I be heard on that?

7              THE COURT:  Yes.

8              MR. NICOLAYSEN:  Your Honor, in my opinion, there

9    is no redacted version of the government sentencing brief

10   that can be properly placed on the public PACER because the

11   protective order makes it absolutely clear, and which is why

12   I filed my brief under seal, if there is anything submitted

13   to the Court that makes reference to or contains any content

14   of protective order material, that filing must be under

15   seal.

16             Well, I know the government is trying to

17   selectively redact the chat messages and things of that

18   sort, but the reality is the entirety of the government

19   sentencing position is based on protective order material.

20   All of it is.  References to touching and references to all

21   of the things we discussed today, there really is no

22   feasible manner by which redactions can be made such that

23   there is anything left for public display.

24             And I would respectfully object to a redacted

25   version.  This entire proceeding on both sides of the
```

1    litigation should be conducted under seal.

2            THE COURT:  But we've had public hearings on this

3    case.

4            MR. NICOLAYSEN:  Well, we've had a public hearing

5    with people here who are essentially part of the proceeding.

6    They have an interest in the outcome.  They are relevant to

7    these proceedings.  I fully respect that.  I would not want

8    the courtroom sealed to those individuals.

9            So I purposely did not ask for sealing.  I

10   discussed it with Mr. Brinson -- do you want me to ask the

11   Court to seal it?  I said no.  Those people who are here

12   with us, they belong here.  I agree with that.

13           But when it comes to the PACER docket which is

14   open to the world at large, that's a different story.

15           And I believe that the protective order sets

16   appropriate protocols that guide us in this discussion here

17   today.

18           So I don't think the redactions are adequate.

19   They can't be adequate.  The entire government sentencing

20   position is based on protective order material.

21           THE COURT:  Ms. Kupersmith.

22           MS. KUPERSMITH:  Your Honor, we redacted all of

23   the items that we have a requirement as well as to redact by

24   statute for --

25           THE COURT:  Yeah, but that's not the point.  I

 1  think Mr. Nicolaysen's point is a larger point.  His view

 2  is, for lack of a better term, it's all tainted.  It's all

 3  derived from stuff that came -- that is from a protective

 4  order, and so none of it should be on the docket.

 5          MS. KUPERSMITH:  There is nothing in -- in the

 6  order of what needs to be sealed, there is no basis to

 7  redact the actual conduct.

 8          And so the things that we redacted are ways that

 9  we've protected -- ongoing investigations.  We protected the

10  defendant's psychological evaluation.  We protected other

11  things that need to be protected and by statute that we have

12  to protect, and everything else there is no basis to have

13  the full thing under seal.

14          And so that's why we submitted the redacted

15  version that redacts everything that we have to redact for

16  the purposes of the protective order and the statute.

17          THE COURT:  All right.  So I will consider it, and

18  I will decide.

19          MR. NICOLAYSEN:  May I ask Your Honor to --

20          THE COURT:  I have you -- I've noted your

21  objection.

22          MR. NICOLAYSEN:  May I ask Your Honor to look at

23  the protective order when you are making your decision?

24          THE COURT:  No, I am not going to do that.

25          MR. NICOLAYSEN:  No, no.  Because I think it

```
 1   speaks in terms of if --

 2              THE COURT:  I understand.  I --

 3              MR. NICOLAYSEN:  -- the filing is in whole or in

 4   part.

 5              THE COURT:  I know how to do my job.  I will look

 6   at the protective order as well as the order.

 7              MR. NICOLAYSEN:  I thank you Your Honor for the

 8   time.

 9              THE COURT:  All right.  Anything further from the

10   government?

11              MS. KUPERSMITH:  That was it, Your Honor.

12              THE COURT:  All right.  Anything further from the

13   defense?

14              MR. NICOLAYSEN:  Your Honor, in terms of

15   designation, of course, the Bureau of Prisons makes those

16   decisions, but I would ask that the J&C order contain an

17   express recommendation of designation to a facility that

18   offers the SOTP program, sex offender treatment, but

19   specifically the USP, the penitentiary in Tucson, Arizona.

20              THE COURT:  All right.  I will make a

21   recommendation that he be housed in Arizona.

22              Sir, it's only a recommendation.  I don't have

23   control over the BOP, but you certainly need the treatment,

24   and so I will make that recommendation.

25              MR. NICOLAYSEN:  Thank you very much, Your Honor.
```

1          THE COURT:  Anything further, Mr. Nicolaysen?

2          MR. NICOLAYSEN:  Nothing further from the defense,

3     Your Honor.  Thank you.

4          THE COURT:  Thank you.

5          THE CLERK:  All rise.  This Court is in recess.

6        (Proceedings concluded at 1:26 P.M.)

7                        --oOo--

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          CERTIFICATE

 2

 3       I hereby certify that pursuant to Section 753,

 4  Title 28, United States Code, the foregoing is a true and

 5  correct transcript of the stenographically reported

 6  proceedings held in the above-entitled matter and that the

 7  transcript page format is in conformance with the

 8  regulations of the Judicial Conference of the United States.

 9

10  Date:  July 26, 2022.

11

12

13

14                  ___/S/ CHIA MEI JUI_____

15              Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25
```