John R. Brinson, Jr.
_____
NAME

Reg# 76587-097
_____
PRISON IDENTIFICATION/BOOKING NO.

USP Tucson, PO Box 24550, Tucson, AZ 85734
_____
ADDRESS OR PLACE OF CONFINEMENT



Note:    If represented by an attorney, provide name, address, & telephone number. *It is your responsibility to notify the Clerk of Court in writing of any change of address.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOHN R. BRINSON, JR. <br> FULL NAME OF MOVANT <br> (Include name under which you were convicted) <br><br> Petitioner. | **CASE NUMBER:** <br><br> CV  2:25CV2052-AB <br> To be supplied by the Clerk of the United States District Court <br><br> CR  2:17-CR-00404-AB <br> Criminal case under which sentence was imposed. <br><br> **MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY** <br> **28 U.S.C § 2255** |

### INSTRUCTIONS - READ CAREFULLY

This motion must be legibly handwritten or typewritten and signed by the movant under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form. Where more room is needed to answer any questions use reverse side of sheet.

Additional pages are not permitted. No citation or authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

Upon receipt, your motion will be filed if it is in proper order. **NO FEE** is required with this motion

If you do not have the necessary funds for transcripts, counsel, appeal, and other costs connected with a motion of this type, you may request permission to proceed *in forma pauperis*, in which event you must execute the declaration on the last page, setting forth information establishing your inability to pay costs. If you wish to proceed *in forma pauperis*, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

Only judgments entered by one court may be challenged in a single motion. If you seek to challenge judgments entered by different judges or divisions either in the same district or in a different district, you must file separate motions as to each judgment.

Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the motion you file seeking relief from any judgment of conviction.

When the motion is fully completed, the original and three (3) copies must be mailed to the Clerk of the United States District Court, whose address is 255 East Temple Street, Suite TS-134, Los Angeles, California 90012.

## MOTION

1. Name and location of court that entered judgment of conviction under attack: U.S. District Court Central District of California, Western Division - Los Angeles

2. Date of judgment of conviction: @ April 22, 2022

3. Length of sentence: Life-Ct1, 360 Months-Cts3-6  Sentencing judge: Hon. Andre Birotte Jr.

4. Nature of offense or offenses for which you were convicted: Ct1-Child Exploitation Enterprise, 18 U.S.C. § 2252A(g); Cts3-6 Production of Child Pornography, 18 U.S.C. § 2251(a).

5. What was your plea? *(check one)*

   ☐ Not guilty
   ☒ Guilty   Open Plea
   ☐ Nolo Contendere

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:
   N/A

6. Kind of trial: *(check one)*

   ☐ Jury
   ☐ Judge only

7. Did you testify at the trial?

   ☐ Yes    ☐ No

8. Did you appeal from the judgment of conviction?

   ☒ Yes    ☐ No

9.  If you did appeal, answer the following:

    (a) Name of court __United States Court of Appeals for the Ninth Circuit__

    (b) Result __Judgment Affirmed__

    (c) Date of result __November 21, 2023__

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?

    ☒ Yes        ☐ No

11. If your answer to question number 10 was "yes," give the following information:

    (a) (1) Name of Court __United States Supreme Court__

        (2) Nature of proceeding __Writ of Certiorari__

        (3) Grounds raised __Whether Brinson's Life Sentence as a youthful offender is warranted.__

        (4) Did you receive an evidentiary hearing on your petition, application, or motion?

            ☐ Yes        ☒ No

        (5) Result __Request for Certiorari denied__

        (6) Date of result __March 18, 2024__

    (b) (1) Name of Court _____

        (2) Nature of proceeding _____

        (3) Grounds raised _____

        (4) Did you receive an evidentiary hearing on your petition, application, or motion?

            ☐ Yes        ☐ No

        (5) Result _____

        (6) Date of result _____

    (c) (1) Name of Court _____

        (2) Nature of proceeding _____

        (3) Grounds raised _____

        (4) Did you receive an evidentiary hearing on your petition, application, or motion?

            ☐ Yes        ☐ No

(5) Result _____

(6) Date of result _____

(d) Did you appeal, to an appellate federal court having jurisdiction, the results of action taken on any petition, application, or motion?

(1) First petition, etc.    ☐ Yes ☐ No

(2) Second petition, etc. ☐ Yes ☐ No

(3) Third petition, etc.  ☐ Yes ☐ No

(e) If you did not appeal from the adverse action on any petition, application, or motion, explain briefly why you did not:

Writ Certiorari is final step before § 2255

12. State concisely every ground on which you claim that you are being held unlawfully.

**CAUTION:** If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date. For your information, the following is a list of the most frequently raised grounds for relief in this type of proceeding. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds that you have, whether listed below or not. However, you should raise in this motion all available grounds (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

If you select one or more of the grounds listed below for relief, you must allege facts in support of the grounds you select. The petition will be returned to you if you merely check (a) through (j) or any one or more of these grounds without alleging facts in support.

(a) Conviction obtained by plea of guilty that was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

**MOTION**
**28 U.S.C. § 2255**

A.  Ground one: Counsel's advice to enter an open plea prejudiced Brinson by eliminating the voluntary and intelligent nature of his plea-Ineffective Assistance

Supporting facts (tell your story briefly without citing cases or law): _____
(SEE ATTACHED MEMORANDUM IN SUPPORT)

B.  Ground two: Counsel's mischaracterization of the sentencing outcome made Brinson's choice to forego trial, instead enter unknowing guilty plea-Ineffective Assistance

Supporting facts (tell your story briefly without citing cases or law): _____
(SEE ATTACHED MEMORANDUM IN SUPPORT)

C.  Ground three: Counsel's reliance on incorrect standard of proof required to prove Brinson's guilty when Brinson relied on faulty advice-Ineffective Assistance

Supporting facts (tell your story briefly without citing cases or law): _____
(SEE ATTACHED MEMORANDUM IN SUPPORT)

D.  Ground four: _____

Supporting facts (tell your story briefly without citing cases or law): _____

13.  If any of the grounds listed in 12 A, B, C, or D were not previously presented, state briefly what grounds were not presented, and give your reasons for not presenting them: Ineffective Assistance is not normally litigated during direct appeal and writ of certiorari.

14.  Do you have any petition or appeal now pending in any court as to the judgment under attack?

☐ Yes    ☒ No

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At a preliminary hearing: Gregory Nicolaysen, Attorney, 27240 Turnberry Lane, Ste 200, Valencia, California, 91355.

(b) At arraignment and plea: Same as above

(c) At trial: Not Applicable

(d) At sentencing: Same as above

(e) On appeal: Verna Wefald, Attorney, 65 North Raymond Ave, Ste 320, Pasadena, California, 91103

(f) In any post-conviction proceeding: Pro-Se

(g) On appeal from any adverse ruling in a post-conviction proceeding: Not Applicable

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court at approximately the same time?

☐ Yes    ☒ No

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

☐ Yes    ☒ No

(a) If so, give the name and location of the court that imposed sentence to be served in the future: _____

(b) Give the date and length of sentence to be served in the future: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed sentence to be served in the future?

☐ Yes    ☐ No

WHEREFORE, movant prays that the court grant him all relief to which he may be entitled in this proceeding.

_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on *February 26, 2025*        _____
*Date*                                        *Signature of Movant*

JOHN RICHARD BRINSON, JR.
REG no. 76587-097
UNITED STATES PENITENTIARY -- TUCSON
P.O. BOX 24550
TUCSON, AZ 85734-4550


UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION -- LOS ANGELES

JOHN R. BRINSON, JR.,
   Movant,


    v.                          Crim Case No 2:17-CR-00404-AB
                                   CIVIL CASE NO.

UNITED STATES OF AMERICA
   Respondent.

---

### MEMORANDUM IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

     John Richard Brinson, Jr., pro se Petitioner, submits this Memorandum in Support of his Motion filed pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct his federal sentence in case CR-17-404-AB. Brinson challenges his sentence on grounds that it was imposed in violation of the laws or Constitution of the United States based on the ineffectiveness of counsel representing him in district court proceedings.

     Attorney Mr. Gregory Nicolaysen represented Brinson throughout the guilt and punishment phases of the criminal case.

## GROUNDS FOR RELIEF

In the instant motion, Brinson raises the following grounds for relief:

GROUND ONE: Counsel's advice to enter an open plea prejudiced Brinson by eliminating the voluntary and intelligent nature of his plea and merits a finding of ineffective assistance of counsel.

GROUND TWO: Counsel's mischaracterization of the sentencing outcome made Brinson's choice to forego trial and instead enter a guilty plea unknowing and merits a finding of ineffective assistance of counsel.

GROUND THREE: Counsel's reliance on the incorrect standard of proof required to prove Brinson's guilt prejudiced Brinson when he relied on counsel's faulty advice which constitutes ineffective assistance of counsel.

## BACKGROUND

On July 23, 2021, in the United States District Court for the Central District of California, Western Division -- Los Angeles, Brinson entered an open plea to one count of violating 18 U.S.C. § 2251A(g) and four counts of violating 18 U.S.C. § 2251(a).

On April 22, 2022, Brinson was sentenced to a term of life plus 120 years imprisonment.

Brinson subsequently filed an appeal in the Ninth Circuit Court of Appeals (case no. 22-50093, decided 11/21/23) and applied to

the United States Supreme Court for a writ of certiorari (case no. 23-6736, decided 3/18/24), neither of which resulted in relief.

Brinson now timely files this Motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct his Sentence.

## GROUND ONE DISCUSSION

In Ground One, Brinson, alleges that counsel's performance both prejudiced and harmed him when counsel advised Brinson to enter an open plea which offered absolutely no benefit versus going to trial. Specifically, Brinson contends that counsel's advice about entering an open plea was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision" about pleading guilty versus going to trial. Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002)(quoting United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992).

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." Lee v. United States, 582 U.S. 357, 363 (2017)(citing Lafler v. Cooper, 566 U.S. 156, 165 (2012)). The two-pronged Strickland test "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985).

In pertinent respects, Brinson's situation is indistinguishable

from the defendant in <u>Moore v. Czerniak</u>, 574 F.3d 1092, 1094 (9th
Cir. 2009), wherein the court found counsel's deficient
performance prejudiced Moore because had he gone to trial Moore
"would have faced a potential sentence identical to that he
received as a result of his plea bargain."

Brinson, like all defendants in criminal cases, faced a decision
as to whether he should have his case heard by a jury of his
peers at trial or seek and possibly accept a plea agreement
offered by the government. Only if a plea agreement is more
advantageous to a criminal defendant will counsel advise a
defendant to waive his constitutional right to a trial in which
the government must prove its case.

Given the strength of the government's case against Brinson and
his co-defendants, reasonable counsel would have advised Brinson
to go to trial versus entering a plea, as the Court was
positioned to impose the same sentence as it would had Brinson
chose to go to trial and been found guilty. Yet counsel advised
Brinson to do the exact opposite.

It was counsel's duty to accurately and adequately inform Brinson
about his chances at trial -- potential defense strategies, the
evidence available to the government to prove its case, the
likely outcome, and sentencing exposure if found guilty. An
uninformed or inaccurately informed defendant cannot make a
knowing and intelligent decision about whether to waive his right

to a trial by his peers without such information, and relies on counsel to provide such information. "The right to adequate assistance of counsel cannot be defined or enforced without taking account of the central role plea bargaining plays in securing convictions and determining sentences." Lafler, 132 S. Ct. at 1388. Because of the "reality [] that plea bargains have become so central to the administration of the criminal justice system," Missouri v. Frye, 132 S. Ct. 1399, 1407 (2012), the Supreme Court has recognized that the Sixth Amendment right to counsel "extends to the plea bargaining process." During plea negotiations, defendants are entitled to the effective assistance of competent counsel. Lafler, 132 S. Ct. at 1384; see also Frye, 132 S. Ct. at 1407.

When a defendant, like Brinson, claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Lee, 582 U.S. 357, 365 (2017). Moreover, such defendant does not have to show he would have been better off going to trial. Id.. Rather, the analysis focuses on the decision-making process of deciding between entering a plea or going to trial and examines the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead. Due process requires Brinson's guilty plea be knowing, intelligent, and voluntary. See Boykin v. Alabama, 395 U.S. 238, 242-43 (1969); see also Hill, 474 U.S. at 56 (a plea

must represent a voluntary and intelligent choice among the alternative causes of action open to the defendant).

Here, counsel advised Brinson to forego trial and assured him that were he to enter an open plea, the court was not going to hand down a life sentence due to the fact that Brinson was a youthful, first-time offender. Counsel also assured Brinson that entering an open plea would preserve his appellate and collateral review rights. Brinson relied on counsel's information when deciding to enter a plea versus going to trial.

The Supreme Court has recognized that the Sixth Amendment right to counsel "extends to the plea bargaining process." Frye, 132 S. Ct. at 1407. During plea negotiations, Brinson was entitled to the effective assistance of competent counsel. Id.; also Lafler, 132 S. Ct. 1384. Yet counsel's advice to Brinson to enter an open plea, without the benefit of a plea agreement, cannot be characterized as either strategic or tactical, as Brinson remained exposed to an identical level of punishment as he would have received had he been convicted at trial on all counts. It was counsel's gross mischaracterization of the benefits of an open plea which affected the voluntary nature of Benson's plea before the Court.

And even though the Court elicited nothing from Brinson during the change of plea hearing to ensure Brinson was aware of the true ramifications of entering an open plea versus entering into

a plea agreement with the government or going to trial and having
his guilt or innocence decided by a jury of his peers, it became
readily apparent that Brinson was not ready to enter a plea. Yet
when Brinson sought clarification from the Court about the
charges he was preparing to plead to, counsel interfered. In the
following exchange which occurred at the conclusion of the Rule
11 colloquy, Brinson clearly evidenced that he was not ready to
enter a plea and actually began to engage the Court directly, but
was quickly snubbed by counsel, who advised Brinson off-the-
record to just get on with the proceedings and not raise any
questions with the Court.

> THE COURT:...Mr. Brinson did you understand everything that
> the prosecution said about the nature of the charges and the
> elements of the charges?
>
> BRINSON: Yes, your Honor.
>
> THE COURT: And, did you discuss all of that with Mr.
> Nicolaysen?
>
> BRINSON: Yes.
>
> THE COURT: And, do you have any questions of me about any of
> the charges?
>
> BRINSON: I do. I do.
>
> THE COURT: All right.
>
> BRINSON: Just quickly -- --
>
> MR. NICOLAYSEN: Well, just a moment.
>
> BRINSON: -- -- is the A -- --.
>
> (July 23, 2021 Plea Hearing Transcript @ 13-15)

This was followed by the Court ordering a recess, during which
attorney Nicolaysen, speaking off-the-record, explicitly
instructed Brinson to "just get through this Court inquiry and
only answer 'yes' and 'no' to all questions asked by the Judge."
and directed Brinson to "not make any additional inquiries about
the charges or potential penalties in order to get a good
sentence at a later date." That Brinson answers all of the
Court's subsequent questions in a rote, nearly robotic manner
shows how strongly an obviously questioning defendant was
persuaded by counsel to simply "get through the process."

In addition, counsel never fully explained what an open plea
actually was, compared to a negotiated plea resulting in a plea
agreement, nor what benefits -- if any -- Brinson would realize
from entering an open plea versus forcing the government to prove
each element of its case against him at trial wherein the verdict
on each count would come from an impartial jury. Instead, during
one of his few in-person attorney-client consultations, counsel
merely explained to Brinson that, while there was a risk that the
sentencing judge could pronounce a harsher sentence closer to
life, a maximum sentence was not only highly unlikely but the
chances of such were negligible, and in fact he had never seen a
judge sentence a youthful, first-time offender -- which counsel
intended to describe Brinson -- to life in prison.

Counsel essentially overwhelmed the voluntary and knowing nature
of Brinson's choice of plea-vs-trial by his aggressive promotion

of an open plea which he presented as Brinson's best option, even though Brinson realized absolutely no benefit from entering an open plea. Yet counsel advised Brinson that the government's only plea offer removed his incentive to negotiate a plea as it offered him the exact same penal consequences as he would get as a result of being convicted at trial on all counts and receiving the maximum sentence for each count.

But for counsel's errors, Brinson would not have pleaded guilty but instead would have insisted on going to trial. Lee, 582 U.S. at 365 (quoting Hill). In such situations, a defendant does not have to show he would have been better off going to trial. Id. Rather, the analysis focuses on the decision-making process when a plea is offered. See, generally, Lee, 582 U.S. at 367.

Counsel's failure to fully advise Brinson of the options available to him, instead resorting to coercing his client into foregoing his chances at a trial which held the same potential consequences as a written or open plea, warrants a finding of ineffective assistance.

## GROUND TWO DISCUSSION

In Ground Two, Brinson contends that counsel's gross mischaracterization of the likely outcome at sentencing both prejudiced and harmed him as it undermined his ability to make a knowing and intelligent decision when choosing between going to trial or entering a plea. Attorney Nicolaysen had counseled

Brinson that because the government's only plea offer offered the
exact same penal consequences as he would receive were he to lose
at trial, there was no incentive for Brinson to accept a plea
agreement from the government, and that he should instead enter
an open plea. Linked to the fact mentioned in Ground One that
counsel had assured Brinson it was not possible   the sentencing
court would hand down a life sentence, counsel's advice strongly
induced Brinson to surrender his opportunity for success at trial
and instead enter an open plea in which he would be required to
plead guilty to all five remaining counts without any written
agreement between him and the government for consideration by the
Court. In other words, counsel advised Brinson to forfeit his
right to trial in exchange for absolutely nothing.

Inexplicably, counsel simultaneously told Brinson's mother that
Brinson would avoid spending the rest of his life in prison by
accepting the government's plea offer. In a conversation with
Brinson's mother which took place around November of 2017,
counsel said that "if [Brinson] did not accept the government's
plea offer, he would end up going away for life plus 30 years."
See Exhibit B at 1, Affidavit of Alma Lugo. Clearly, counsel's
statement was intended to communicate to Brinson's mother that
the government's plea offer guaranteed Brinson some benefits,
including avoiding a life sentence and, based on counsel's
assurance to this effect, Brinson's mother says she attempted "to
convince him to enter into a plea as proposed by said
attorney."Id. Brinson's mother succinctly avers counsel "would

constantly assure me that he had the case under his control, and
that I would not need to worry about my son, John, receiving a
life sentence, if my son followed the instructions provided by
Attorney Nicolaysen." Id. at 2.

A question remains as to which of counsel's incongruous
instructions -- accept the government's offered plea agreement or
enter an open plea without an agreement with the government -
-counsel intended for Brinson to follow.

Whether advising Brinson to enter an open plea or accept the
government's plea offer, counsel never provided Brinson with
accurate information regarding his sentencing exposure when
advising him on entering a plea. The actual fact is that whether
Brinson was convicted at trial or entered a guilty plea to all
five charged counts, the actual, combined total maximum
punishment he was exposed to was imprisonment for life plus 120
years. And yet counsel had matter-of-factly assured Brinson that
he would avoid a life sentence only by entering an open plea, as
counsel strongly advised.

The Ninth Circuit has clearly established that "the gross
mischaracterization of the likely outcome..., combined with
erroneous advice on the possible effects of going to trial falls
below the level of competence required of defense attorneys."
Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986); see also United
States v. Manzo, 675 F.3d 1204 (9th Cir. 2012)(trial counsel's

-11-

advice to defendant about the possible sentence constitutionally
deficient where the misadvice "had a major impact on the
calculation of the discretionary Sentencing Guidelines."). In
analyzing counsel's performance, the relevant question is not
whether "counsel's advice [was] right or wrong, but...whether
that advice was within the range of competence demanded of
attorney's in criminal cases." McMann v. Richardson, 387 U.S.
759, 771 (1970).

Here, counsel's deficient performance deprived Brinson of a trial
by causing him to accept a plea where, but for counsel's errors,
he would not have pleaded guilty and would have insisted on going
to trial. See Lee, 582 U.S. at 357 (2017)(quoting Hill v.
Lockhart). In such situations, Brinson does not need to show he
would have been better off going to trial, id., since the
analysis focuses on the decision-making process when a plea is
offered. See, generally, Lee, 582 U.S. at 367 ("the decision
whether to plead guilty also involves assessing the respective
consequences of a conviction after trial and by plea"). Brinson
has thus shown he qualifies for relief under Strickland where
counsel's advice about the open plea was "so incorrect and so
insufficient that it undermined [Brinson's] ability to make an
intelligent decision" about pleading guilty versus going to
trial. See Turner v. Calderon, 281 F.3d 851, 880 (9th Cir.
2002)(quoting United States v. Day, 969 F.2d 39, 43 (3d Cir.
1992)).

## GROUND THREE DISCUSSION

In Ground Three, Brinson argues that counsel's unfamiliarity with
the basic content and mechanics of the federal sentencing
guidelines, the applicable standard of proof, and the use of
relevant conduct constitute ineffective assistance of counsel.

"Familiarity with the structure of and basic content of the
Guidelines has become a necessity for counsel who seek to give
effective representation." Day, 969 F.2d at 43. "Failing to
predict a sentence correctly is not the same as failing to
understand the mechanics of the sentencing guidelines." See,
e.g., United v. Contreras-Castellanos, 191 F. Appx 773, 776 n.1
(10th Cir. 2006); United States v. McCoy, 215 F.3d 102, 108 (D.C.
Cir. 2000). Cases such as Contreras-Castellano, McCoy, and Day
thus distinguish ordinary errors in applying the guidelines from
complete unfamiliarity with their basic structure and mechanics
and conclude that the latter may amount to ineffective assistance
of counsel at sentencing. See also United States v. Washington,
619 F.3d 1252, 1260 (10th Cir. 2010)(same).

## Inaccurate Offense Level Calculation

Where the government calculated Brinson's total offense level as
being at or about Level 55, counsel errantly calculated the total
offense level under the sentencing guidelines as level 39 for a
proposed guidelines sentencing range of 262 to 327 months
imprisonment for Brinson who was in Criminal History Category I,

with no prior convictions. It seems apparent counsel was either
unfamiliar with, or simply chose to ignore, the nine-step
procedure used to calculate the appropriate sentence under the
guidelines. See U.S.S.G. § 1B1.1; see also United States v.
Crawford, 185 F.3d 1024, 1026 (9th Cir. 1999). And because
Brinson had no reason to disbelieve or question counsel's
calculations, he trusted the information counsel provided him,
among the fact that Brinson had no prior experience or knowledge
of how such calculations even worked. There can be no doubt such
highly erroneous guidelines calculations played a role in Brinson
following counsel's advice to enter an open plea.

Any reasonable attorney would have understood that, tactically,
there was no possible way that Brinson's total offense level
under the sentencing guidelines could be accurately calculated to
be level 39, especially under the relatively low threshold of a
preponderance of the evidence standard. Moreover, any reviewing
court would have a hardtime seeing what kind of strategy, save
an effective one, would lead a lawyer to deliberately fashion an
advisory sentencing guideline sentence using his own made-up
procedure.

Indeed, when deciding which guideline to apply, a district court
must determine the guidelines section in Chapter Two of the
Guidelines (Offense Conduct) "applicable to the offense of
conviction" and "the base offense level and apply any appropriate
specific offense characteristics, cross references, and special

instructions contained in the particular guidelines in Chapter
Two in the order listed." U.S.S.G. § 1B1.1. If there are multiple
counts of conviction, such as the five counts in Brinson's case,
the steps are repeated for each count; the counts are grouped and
the offense level is adjusted with the offense level for the most
serious group being applied. The Ninth Circuit has emphasized
"that it is not the defendant's underlying relevant conduct, but
the crime of conviction that governs the selection of the
appropriate guideline section." United States v. McEnry, 659 F.3d
893, 897 (9th Cir. 2011). The "district court may not use
relevant conduct to select whatever guideline it wants; relevant
conduct may be considered only in the application of enhancements
and adjustments, once a guidelines has been selected." United
States v. Takahasi, 205 F.3d 1161, 1167 (9th Cir. 2000).

In Brinson's case, counsel seemed clueless regarding the use of
relevant conduct when imposing sentencing enhancements and
adjustments, and wholly unacquainted with the nine-step procedure
for calculating the correct sentencing guideline range. Counsel's
first and most important step would be to determine the
applicable offense guideline section for each offense for which
Brinson's was convicted. U.S.S.G. § 1B1.1(1). Brinson was found
guilty of (1) engaging in a child exploitation enterprise
("CCE"), in violation of 18 U.S.C. § 2252A(g)(Count One), with an
applicable guideline of U.S.S.G. § 2G2.6 and a base offense level
of 35; and (2) producing child pornography, in violation of 18
U.S.C. § 2251(a), with an applicable guideline of U.S.S.G. §

2G2.1 and a base offense level of 32 (Counts Three, Four, Five, and Six).

As to the CCE offense, the base offense level was enhanced due to the victim's age (+4 levels); Brinson's supervisory role (+2 levels); and because Brinson engaged in aggravated sexual abuse (+2 levels); resulting in an 8-level increase and an adjusted offense level for the CCE offense in Count One of Level 43. As to the production offenses, the base offense level was enhanced because of the victim's age (+4 levels); because Brinson distributed the images (+2 levels); because Brinson committed a sexual act with the minor (+2 levels); because the material portrayed an infant or toddler (+4 levels); and because Brinson has a supervisory role (+2 levels); thereby resulting in a 12-level increase and an adjusted offense level for the production offenses in Counts Three and Six of level 44 and a 14-level increase and an adjusted offense level for the production offenses in Counts Four and Five of Level 46. Counts One and Four were appropriately grouped as they involved the same minor victim, which required that the sentencing Court look to the adjusted offense level and then identify the offense level applicable to the most serious group, in this case the production count with an adjusted offense Level 46. Other enhancements were also applied to Brinson's adjusted offense level including a grouping adjustment (+4 levels) and adjustment for pattern of activity (+5 levels), for a total offense level of 55 points which, after applying a 3-level reduction for acceptance of

responsibility, led to a total offense level calculation of 52
points. Finally, pursuant to Application Note 2 under Chapter
Five, Part A, which states that "an offense level of more than 43
is to be treated as an offense level of 43, "Brinson's total
offense level was calculated to be 43 which, for criminal history
category I, resulted in an advisory guideline sentence of life
imprisonment.

Counsel's calculation of an offense level of 39 was simply wrong,
and yet counsel fervently challenged the PSR's guidelines
calculation in a meritless argument at sentencing, deserving a
finding of ineffective assistance.

Incorrect Standard of Proof

The federal sentencing guidelines rely on specific standards to
be met, one of which is a specific standard of proof. here,
Brinson's attorney, lacking any support in law or facts, sought
to exclude consideration of all relevant conduct under the
"preponderance of evidence" standard, when in fact "clear-and-
convincing evidence" was the applicable standard.

When the district court erroneously concluded that the factual
basis of the proposed sentencing enhancements must be proved by a
preponderance of the evidence, counsel wrongly agreed, revealing
he had not adequately researched which standard was appropriate
based on Brinson's circumstances. In the Ninth Circuit, the

preponderance of evidence standard is generally the appropriate
standard for factual findings used for sentencing. United States
v. Felix, 561 F.3d 1036, 1045 (9th Cir. 2009)(due process does
not require a higher standard of proof than preponderance of the
evidence when determining relevant conduct). However, "when a
sentencing factor has an extremely disproportionate effect of the
sentence relative to the offense of conviction, the government
may have to prove the factor by clear and convincing evidence."
Jordan, 256 F.3d at 930 (under a clear and convincing standard
the government must "prove [its] case to a higher probability
than is required by the preponderance-of-the-evidence standard").

Brinson's case required the clear and convincing standard of
proof. See United States v. Taskov, 564 Fed. Appx. 292, 295 (9th
Cir. 2014)(noting its "concern that the district court calculated
Taskov's sentencing range under the Guidelines based on findings
by a preponderance of the evidence, rather than by the mere
rigorous clear and convincing evidence standard). Yet counsel was
asked and mistakenly responded that the standard of proof at
sentencing was a preponderance of the evidence, despite the
uncontestable fact that the sentencing factors, to which counsel
objected, increased Brinson's offense level from Level 32 to
Level 52 and established a life sentence. It appears from
counsel's assertion and presentation at sentencing regarding the
applicable standard of proof, as well as his frivolous challenges
about relevant conduct, that he not only failed to understand the
basic structure and mechanics of the sentencing guidelines, but

also failed to make a viable challenge to the sentencing factors under the mistaken belief that the sentencing court could not use relevant conduct to increase Brinson's sentence. So it is clear the sentencing strategy and tactic, attorney Nicolaysen employed in Brinson's case was not only untenable, it was wholly unreasonable. Counsel relied on an entirely flawed legal theory that had no chance of success and presented that theory to Brinson in order to persuade him to forfeit his right to trial and instead plead guilty without the benefit of a written agreement with the government.

A misapprehension of the law that leads a lawyer to submit a frivolous argument during the sentencing phase of a prosecution constitutes an "inadequacy in rudimentary trial preparation and presentation that falls outside the range of competent assistance." Smith v. Stewart, 241 F.3d 1191, 1200 (9th Cir. 2000)(counsel failed to investigate and failed to do basic research). if counsel fails to reasonably investigate or seek critical sentencing information and provides inaccurate or misleading advice as a result, counsel's performance is deficient. See Crawford v. Fleming, 323 F. Supp. 3d 1186, 1189 (D. Or. 2018)(citing United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998).

Relevant Conduct Argument

Counsel demonstrated ineffective assistance by asserting his

sentencing theory that relevant conduct was totally excluded from consideration under the sentencing guidelines, which is wholly untrue. Counsel literally claimed that Brinson's sentence was being unconstitutionally enhanced through the application of relevant conduct, even though at the time of Brinson's sentencing, the Ninth Circuit Court of Appeals had considered and rejected nearly identical arguments regarding challenges to the use of relevant conduct at sentencing. See, e.g., United States v. Christensen, 732 F.3d 1094, 1102 (9th Cir. 2013)("a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come"); United States v. Barragan, 871 F.3d 689, 716 (9th Cir. 2017)(district court may consider uncharged relevant conduct at sentencing).

In addition, at the time of Brinson's sentencing, counsel should have been aware that by statute, "there is no limitation...on the information concerning the background, character, and conduct of person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; see also U.S.S.G. § 6A1.3(a); United States v. Vanderwerfhorst, 576 F.3d 929, 935 (9th Cir. 2009). Counsel's arguments to the contrary are clear evidence of not only his ignorance of established law but of his ineffectiveness in representing Brinson.

It is clear counsel not only failed to investigate or research

the law regarding relevant conduct, he also failed to do basic research about determining a sentence under the federal sentencing guidelines, both of which led counsel to forego a viable argument at sentencing and instead present a preposterous, untenable, legally-unsupported challenge which failed to benefit Brinson in any meaningful way, yet was clear evidence of counsel's ineffectiveness. So not only has Brinson presented abundant evidence of counsel's deficient performance, he has also showed that counsel's deficient performance prejudiced him, entitling him to relief. See Glover v. United States, 531 U.S. 198, 203-04 (2001)(holding that if there is a reasonable probability that the outcome of a proceeding might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief).

Brinson respectfully requests that relief.

## REQUEST FOR EVIDENTIARY HEARING

Wherefore, for all the reasons, facts, and legal authority presented herein, Brinson respectfully requests that this Honorable Court provide him with prompt relief on all claims raised or, in the alternative, Brinson requests that this Court grant an evidentiary hearing, appoint him counsel for such purpose, and provide all the other relief to which he is entitled.

"Evidentiary hearings are particularly appropriate when claims

-21-

raise facts which occurred out-of-the-courtroom and off-the-record." United States v. Chacon-Palomares, 208 F,3d 1157, 1159 (9th Cir. 2000)(remanding a 2255 action for an evidentiary hearing where counsel allegedly underestimated defendant's actual sentence by 102 months and the court was confronted with conflicting affidavits). Additionally, inquiries into what a defendant would have done had he been fully informed are also especially appropriate for an evidentiary hearing. United States v. Burrows, 872 F.2d 915, 917 (9th Cir. 1990)(evidentiary hearings are particularly appropriate when "claims raise facts which occurred out of the courtromm and off the record."). See also United States v. Werle, 35 F.4th 1195, 1202 (9th Cir. 2022)(collecting cases); and Lee v. United States, 582 U.S. 357, 359 (2017)(concluding that the petitioner-defendant overcame Stricland by showing in an evidentiary hearing that he "would have gone to trial if he had know about" certain key facts).

in fact, a "hearing must be granted unless the movant's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. Rodriguez, 49 F.4th 1205, 1211-13 (9th Cir. 2022). In other words, "a hearing is mandatory whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's clams." Baumann v. United States, 692 F.2d 565, 571 (9th Cir. 1982).

## RESPECTFULLY SUBMITTED

On this   day of February, 2025. Pursuant to 28 U.S.C. § 1746.

Respectfully,

John Richard Brinson Jr.
Reg No. 76587-097
U.S.P. Tucson  Unit, C-1
P.O. Box. 24550
Tucson, Arizona. 85734.

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that I served a copy of
the enclosed Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside,
or Correct Sentence by a Person in Federal Custody, along with a
copy of the enclosed Memorandum in Support of Motion Under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a
Person in Federal Custody on the party(-ies) named below by
placing copies of the same in the institution mail system with
sufficient first class postage affixed and addressed to:

United States Attorney's Office
312 North Spring Street
Los Angeles, CA 90012
Signed this _26_ day of _February_____, 2025, by John Richard
Brinson Jr.

_____
John Richard Brinson, Jr.

Certificate  02/26/2025.

-24-



<u>Affidavit of John Richard Brinson, Jr.</u>

During the guilt and punishment phases of my federal criminal case, I strictly followed the advice of retained counsel Gregory Nicolaysen. I trusted and relied on everything Nicolaysen told me, and each decision I made was consonant with his professional advice. I do not recall any decision I made in contradiction to his advice. During one of our sporadic in-person meetings early in his representation, Nicolaysen told me the government was confident that based on the evidence it would present at trial, a jury would find me guilty on all counts, resulting in a Life sentence, so when the prosecutor in the case tendered an offer to recommend a Life sentence in exchange for me surrendering my right to a jury trial and pleading guilty to all counts, offering me absolutely no benefit whatever, Nicolaysen called the offer "absurd and preposerous" and advised me to forego the offer in favor of trial. On my attorney's advice I rejected the prosecutor's ~~offer~~ offer and told Nicolaysen I wanted to go to trial.

While a trial was my only possible chance of acquittal, I knew such outcome was unrealistic, especially in light of the fact that Nicolaysen was prepared to present little to nothing in way of a defense. Realizing this created a sense of hopelessness which prevaded every subsequent conversation we had. Nicolaysen was in regular contact with my Mom and, knowing I frequently called her from the jail, he began telling her that he had the case under control, and she should convince me to just trust him because if I followed his advice, I would not receive a Life sentence. From then on, my mother told me that I only had to do exactly as Nicolaysen said and I wouldn't get a Life sentence.

Nicolaysen began speaking to me about an "Open Plea" which he explained would free the judge to sentence me "on his own" without needing to consider the terms of a plea agreement. Nicolaysen said

- 1 -

under an open plea, the judge would not give me a Life sentence (which he said the judge believed I "didn't deserve") because I was a youthful, first-time offender who himself was abused as a child, and my entering an Open Plea would permit the judge to craft a fair sentence, but definitely lower than Life. Clinging to my attorney's promises as my only hope of avoiding spending the rest of my life in prison, I readily agreed to an open plea — which Nicolaysen characterized as "best for me" and "better than trial" because I would be avoiding a Life sentence. My exact statement to him was, "as long as I don't get Life in prison I'll take the Open plea, otherwise I might as well go to trial."

   In preparation for my change of plea hearing, Nicolaysen began coaching me on how to answer the questions the court would ask me. He spent considerable time familiarizing me with each question and practicing my answers. He was particularly adament that I not interrupt the proceeding by asking questions of the Court; to simply answer each question "yes" or "no." On the question of whether anyone had made me any promises in regard to my sentence, I was concerned when he told me to answer "no" because Nicolaysen unequivocally stated that an Open plea protected me from a Life sentence. In response, Nicolaysen told me to "just go with the flow," answer every question the way he instructed me, and not diverge from what we practiced. However, during the Plea Colloquy, I told the court I had some questions, but Nicolaysen interrupted me and threatened to cancel the hearing because he didn't know what I was going to ask. That would have been fine with me because the Court had brought up an additional charge of Aiding and Abetting that Nicolaysen had never discussed with me. The hearing was paused while Nicolaysen and I spoke by phone, and once again he reiterated that I needed to, "just go with the flow" and answer the Court's questions exactly how he taught me to, adding

- 2 -

that my concerns would be addressed after the hearing. When the hearing resumed, I simply answered the court's questions as Nicolaysen had instructed me. On a later visit, he said that I did the right thing, assured me that my questions was irrelevant, and the question about sentencing was a mere technicality, reiterating once again, that the judge would not give me a Life sentence.

   Prior to sentencing, Nicolaysen prepared a Memorandum in which he calculated my sentence under the federal Sentencing guidelines. He assured me the Court would approve his version over the government's, because theirs was not applied correctly. When I expressed concern over the result of his calculations — a sentence range of 20-27 years for a level 39 — being extremely lower than the government's, he said that their calculations were "simply wrong" and I had nothing to worry about. I told him that the disparity could be based on something the government found on my computer, and that we never went to go view the evidence found on my computer, he told me that anything found on my computer was irrelevant because it was relevant conduct if not in the indictment, and that relevant conduct could not be used at sentencing. I chose to trust my attorney was a professional and had properly and accurately researched and calculated my sentcing exposure according to all applicable instructions. Yet, it became clear at sentencing this was not the case, as even the Court expressed dismay over Nicolaysen's sentencing calculations and arguments, and I learned the hard way that Nicolaysn's assurances of an open plea shielding me from a Life Sentence were worthless. Were it not for each of the specific assurances Nicolaysen gave me regarding the open plea, evidentiary Standard, sentencing guidelines and sentencing range calculations, exclusion of relevant conduct, and especially his statement that the judge would not slap me with a Life sentence, I would have insisted on going to trial.

The foregoing is true and correct to the best of my knowledge
pursuant to 28 USC § 1746.

John Brin

John Richard Brinson, Jr.                    February 26, 2025



# AFFIDAVIT

STATE OF TEXAS                              Affidavit of Alma Lugo

COUNTY OF BEXAR

I, Alma Lugo, do hereby swear, affirm or declare under penalties of perjury that the following statements
are true and correct:

1. My name is Alma Lugo. I am 53 years of age. I am; currently, at RRM, Crosspoint, in San
   Antonio, Texas, with a projected release date of August 19, 2025. I am fully competent to make
   this affidavit and have personal knowledge of the facts stated in this affidavit. To the best of my
   knowledge, all of the facts stated in this affidavit are true and correct.

2. I am the biological mother of John Richard Brinson, Jr. having birthed him on June 20, 1993, in
   Goldsboro, North Carolina. I make this affidavit in support of my son, John's Motion to Vacate
   his sentence in which he strongly argued that court-appointed attorney Gregory Nicolaysen,
   provided ineffective assistance of counsel during my son, John's criminal prosecution and
   sentencing in his federal case, in which he received a life sentence of imprisonment, even after
   entering an OPEN PLEA without a written agreement.

3. I received a call from attorney Nicolaysen early on or about August of 2017, during his legal
   representation of my son, John. At said time, I was living in Jacksonville, North Carolina, and my
   son John was detained at Metropolitan Detention Center in Los Angeles, California. Attorney
   Nicolaysen, during this call, to me, stated, "I advise you to sell all of your belonging, everything
   you own, and move to Los Angeles" where my son, John, was being detained, in custody,
   pending trial on sex abuse charges. Attorney Nicolaysen implied, while conversing with me, that
   my son, John, would never see the light of day again, and; therefore, I would be closer to him, if I
   relocated.

4. I comprehended Attorney Nicolaysen's comment to; preposterously, suggest that he was not
   willing, and/or professionally able to provide my son, John, with competent legal representation
   by properly researching the applicable laws, investigating my son, John's past, or conducting an
   overall adequate, legal service, in this case.

5. In another call between Attorney Nicolaysen and myself, the attorney had been provided with the
   audio recording where my son, John and I were conversing about some intimate topics. Amongst
   those topics was my son, John's hair and the length of such, which in my culture, is considered to
   be sacred. My son John and I began discussing whether or not he should cut his hair. In the call
   between Attorney Nicolaysen and myself, the attorney; completely, misconstrued the recorded
   conversation between my son, John and I. Attorney Nicolaysen, mistakenly assumed, I was
   describing my son's manhood, or his genitalia. Such an interpretation by Attorney Nicolaysen
   along with his telling me I was in grave trouble with the government because I was discussing my
   son's genitalia, demonstrated to me that the attorney never had my sons, John's, best interest at
   heart, in the sex offense case.

6. In later conversing with Attorney Nicolaysen, on or about, November 2017, I was assured by the
   attorney that if my son, John, did not accept the government's plea offer that my son, John, would
   end up going away for life plus 30 years. I comprehend Attorney Nicolaysen to mean that the
   government's plea offer guaranteed my son, John, some benefits in the bargain, including

avoiding a life sentence. On the basis of Attorney Nicolaysen's assurances and guarantees, I talked to my son, John, and attempted to convince him to enter into a plea as proposed by said attorney.

7.  I comprehended, as best as I could, due to each time I conversed with Attorney Nicolaysen, he spoke in undecipheral legal terms, and in a manipulative tone, laced with innuendo, speculation, and unsupported inferences, to the point of lies and untruths. Attorney Nicolaysen's communications to me implied or suggested that my son, John, and the facts of his case, would be used as an example for other sex offense prosecutions, so my son John's, only option was to accept the government's offer to enter a plea and avoid a trial.

8.  I was told by Attorney Nicolaysen, on or about July 2018, that he had instructed my son, John, during one of his consultations, to not show any emotion during court proceedings, suggesting that my son, John, was somehow too emotional, i.e., weak and highly culpable.

9.  In my communications with Attorney Nicolaysen, that occurred during the period from 2017 to 2021, I told said attorney a lot of information about my family and my son, John's involvement with Child Protective Services. I, also, told Attorney Nicolaysen about my son's time in Foster Care in Fresno, California. Attorney Nicolaysen rebuffed most of the details that I provided to him, and appeared to disregard the information that was relevant and mitigating.

10. I was, at all times, willing and able to tell Attorney Nicolaysen about me and my son, John's, background and current life situations. I would have also been willing to testify to these matters and provide other family members, witnesses, and friends to corroborate my statements.

11. I provided Attorney Nicolaysen with character letters for my son, John's, trial and none of those letters were presented on behalf of my son, John. Those letters included friends, family, coaches and teachers from my son, John's, Jr. High School, High School and college.

12. I, often, called Attorney Nicolaysen during his, almost five years of representation of my son, John's, case, and he was not available a lot of the times. When I was able to discuss the status and potential outcome of my son, John's, case Attorney Nicolaysen would constantly assure me that he had the case under his control, and that I would not need to worry about my son, John, receiving a life sentence, if my son followed the instructions provided by Attorney Nicolaysen.

13. I have never seen, nor heard of my son, John, engaging in any sex offending behavior with children. I could have informed Attorney Nicolaysen that my son had made a statement to me that he had performed all acts of offense under duress and threats from someone else, had Attorney Nicolaysen made himself available to me. I could have answered any questions and/or requests, had he asked.

I signed this affidavit on October 12, 2024 at RRM Crosspoint in San Antonio, Texas.

Alma Lugo

10/12/2024

JAMES MARK NAPIER
Notary Public, State of Texas
Comm. Expires 09-22-2026
Notary ID 12127129

John Richard Brinson, Jr. #76537-097
United States Penitentiary - Tucson
P.O. Box 24550
Tucson, AZ 85734









United States Courthouse
255 East Temple St., Suite TS-134
Los Angeles, CA 90012

