John Richard Brinson, Jr.
Reg. no. 76587-097
United States Penitentiary -- Tucson
P.O. Box 24550
Tucson, AZ 85734-4550



FILED
CLERK, U.S. DISTRICT COURT
NOV 2 4 2025
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION -- LOS ANGELES

JOHN R. BRINSON, JR.,
   Movant,

v.

UNITED STATES OF AMERICA,
   Respondent

Cv. no. 2:25-cv-02652-AB

Cr. no. 2:17-cr-00404-AB

### MOVANT'S RESPONSE TO GOVERNMENT'S OPPOSITION BRIEF

   John R. Brinson, Jr., Movant, hereby submits his pro se Reply to the Government's Opposition brief filed July 28, 2025 (Cv. Doc. 9, hereafter Dkt. 9).

   Most notably concerning the Opposition brief filed by the Government is the fact that although two of Brinson's claims for relief are founded on statements made to him by defense counsel Nicolaysen, there is no affidavit from Nicolaysen to refute Brinson's claims, nor does the Government contradict or deny the statements Brinson attributes to his attorney. In his 2255 motion and supporting affidavits, Brinson directly quotes Nicolaysen giving blanket assurances and guarantees regarding sentencing, yet there is no opposing statement from either Nicolaysen or the government refuting Brinson's allegations. Brinson's statements must be construed as true in the absence of any evidence to the contrary.

Grounds One and Two

   In Grounds One and Two, Brinson contends his attorney's mischaracterization of and advice to enter an open plea (Ground One) combined with counsel's guarantee that if he accepted an open plea he would not receive a life sentence (Ground Two) prejudiced him by improperly influencing the voluntary and intelligent nature of his plea. Both grounds are based on multiple conversations between Brinson and Nicolaysen which took place prior to, during, and after Brinson's change of plea hearing. Presently, the record contains only Brinson's recounting of those conversations. See 2255 at 11 ("counsel had matter-of-factly assured Brinson that he would avoid a life sentence only by entering an open plea"); also 2255 Exh. A at 1 ("if I just followed his advice, I would not receive a life sentence"); id at 1-2 ("Nicolaysen said under an open plea, the judge would not give me a life sentence"); id at 3 ("reiterating once again, that the judge would not give me a life sentence"). There can be no denying counsel's promises influenced Brinson's decision to enter an open plea.

> My exact statement to [Nicolaysen] was, "as long as I don't get life in prison I'll take the open plea, otherwise I might as well go to trial." 2255 Exh. A at 2

   In preparation for entering an open plea, Nicolaysen explicitly instructed Brinson that during the change of plea hearing he was to recite only the specific answers scripted for him by counsel. See 2255 Exh. A at 2 ("In preparation for my change of plea hearing, Nicolaysen began coaching me on how to answer the questions the court would ask me"). Such coaching may be good preparation for a first-time defendant, but insisting on specific answers teeters on the verge of making a defendant's statements involuntary. And under no circumstances can counsel ever justify instructing a defendant to respond untruthfully to a court's inquiry, yet this is precisely what Nicolaysen did. This bombshell is found in Brinson's affidavit:

> On the question of whether anyone had made me any promises in regard to my sentence, I was concerned when he told me to answer "no" because Nicolaysen unequivocally stated that an open plea protected me from a life sentence. In response, Nicolaysen told me to "just go with the flow["], answer every question the way he instructed me, and not diverge from what we practiced. 2255 Exh. A at 2.

   Inexplicably, the government's Response is entirely devoid of any discussion of Brinson's claim. The mere fact that Brinson makes such allegation merits further inquiry by this Court, and yet the opposition says nothing to address this. Most telling is the fact that there isn't even an opposing affidavit by defense attorney Nicolaysen to refute the claim. Absolutely nothing in the record refutes Brinson's factual allegations.

Brinson even provides additional witness testimony to support his claim. In her sworn affidavit, Brinson's mother states "On the basis of Attorney Nicolaysen's assurances and guarantees, I talked to my son, John, and attempted to convince him to enter into a plea as proposed by said attorney." She further reveals that "Attorney Nicolaysen would constantly assure me that he had the case under his control, and that I would not need to worry about my son, John, receiving a life sentence, if my son followed the instructions provided by Attorney Nicolaysen." 2255 Exh. B at 2.

While it may not be unethical for Nicolaysen to help Brinson craft what to say to the Court ("He spent considerable time familiarizing me with each question and practicing my answers." 2255 Exh. A at 2), that counsel instructed Brinson to disregard the truth by concealing that fact that Nicolaysen had indeed assured him that "the court was not going to hand down a life sentence" by itself merits a finding of ineffective assistance under Strickland. See 2255 at 6, also id at 10 ("counsel had assured Brinson it was not possible the sentencing court would hand down a life sentence").

Counsel had trained Brinson over many hours of preparation to "simply get through" the plea hearing "in order to get a good sentence at a later date." 2255 at 8. Brinson's affidavit paints the picture with the phrases "familiarizing me with each question," "coaching me on how to answer the questions," "practicing my answers." Counsel scripted nearly every word Brinson was to say and practiced with him over many months of preparation, so during the change of plea hearing when new charges were brought up that they hadn't discussed, and Brinson applied the brakes, broke from the script and asked a question, counsel quickly sidelined Brinson's interaction with the Court, heading-off any accidental revelation of counsel's promise that, no matter what, he would not get a life sentence if he entered an open plea. With the proceeding paused, counsel wrangled Brinson in. During a brief phone conversation counsel induced Brinson to return to the script, "answer the questions exactly as he taught me to", 2255 Exh. A at 2, and "not ask any additional inquiries." 2255 at 8. That is why, after the hearing resumed, Brinson gave the answers -- at times untruthful -- he did.

Even when the plea colloquy was paused in order for Nicolaysen and Brinson to talk, Nicolaysen once again instructed Brinson to answer the Court's questions exactly as Nicolaysen had trained him to, resulting in the answers which the government copiously quotes Brinson providing. See Dkt. 9 at 11-13. Brinson answered the Court's inquiries as he did only because Nicolaysen again warned him that if he did not stick to giving only the answers they had practiced, Brinson would be exposed to a life sentence. This fear motivated Brinson to only give the answers Nicolaysen instructed him to. See 2255 Exh. A at 2.

Moreover, an attorney who instructs his client to lie to the Court will likely also himself lie to the Court, yet the government touts the fact that Nicolaysen denied there had been "any promises, representations, or guarantees" made to Brinson about his sentence. See Dkt. 9 at 13, 20. The ambiguity between the answers given in Court and the claims made in      Brinson's 2255 demand resolution. See Center for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001) (evidentiary hearing required when ambiguities exist in pleading or the evidentiary materials offered in support thereof).

Nor does the government argue against Brinson's assertion that counsel failed to fully explain an open plea. Counsel strategically led Brinson to believe that entering an open plea would protect him from a life sentence, and Brinson had no reason to disbelieve him, but also could not have known this was untrue because Nicolaysen never fully explained the particulars of an open plea. Nicolaysen simply told Brinson little more than that an open plea would protect him from a life sentence, and Brinson entered an open plea solely based on counsel's assurances. There is no statement from Nicolaysen or the government claiming otherwise.

The brief filed by the government simply does not oppose in any meaningful way the facts as presented by Brinson or the effect of counsel's actions on Brinson's claims in Grounds One and Two. It is simply ludicrous for the government to file an opposition brief without supplying a statement from Nicolaysen, particularly when Courts are to take declarations supporting a motion as true absent sham, frivolity, or other objections. On the contrary, everything points to the authenticity and truthfulness of Brinson's allegations in Ground One and Two.

As raised in Ground One, Nicolaysen's ineffective assistance was prejudicial because it was the cause of the false statements Brinson made to the Court during the plea colloquy about counsel's promises made to Brinson regarding his sentence. Brinson did so in obedience to counsel's instruction and based on the inaccurate and incomplete information counsel provided to Brinson regarding an open plea, as raised in Ground Two. The voluntariness of Brinson's plea "depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 US 759, 772 (1970). By contending there was a promise regarding sentencing made by counsel outside the record, and in the absence of any testimony from Nicolaysen to the contrary, Brinson has established justifiable grounds for granting the requested relief or at minimum an evidentiary hearing.

More than merely "suggesting that [Brinson] could avoid a life sentence by pleading guilty," Dkt. 9 at 21, and certainly more than "an erroneous prediction" of a potential sentencing outcome, id, Nicolaysen told Brinson outright that an open plea guaranteed him a sentence of less-than-life. The government resorts to excusing such deficient performance by arguing that "even if" Nicolaysen's performance was deficient under Strickland, the Court overcame any deficiency by engaging Brinson in the plea colloquy, forgetting that Nicolaysen had convinced Brinson to answer the Court's questions deceptively in order to proceed to entering an open plea. See 2255 Exh. A at 2 (on the question of whether anyone had made Brinson any assurances on sentencing, Nicolaysen instructed him to answer "no"). Counsel both instructed Brinson to lie under oath and misinformed him about the effects of an open plea.

Since this Court's analysis focuses on counsel's advice which influenced Brinson's decision-making process prior to entering his plea, it is curious that the government, even after filing a motion to waive Brinson's attorney-client privilege, chose to not provide any testimony from the attorney whose conduct is in question. Brinson, on the other hand, has submitted multiple affidavits setting forth specific facts that demonstrate genuine issues appropriate for an evidentiary hearing. Consequently, the Court must assume the facts as set-out in Brinson's affidavit and Almo Lugo's affidavit are true. Their statements, which remain entirely uncontroverted, establish sufficient grounds for an evidentiary hearing by showing there are genuine issues of fact remaining to be tried. See Kaffenberger v. Kremer, 4 F.R.D. 478, 1945 US Dist. LEXIS 1410 (D. Pa. 1945) (where defendant filed affidavit in support of its motion and respondent filed no affidavit in opposition thereto, motion must be decided on facts averred in complaint and defendant's affidavit which, for purposes of the motion, will be averred as true).

Brinson never questioned the correctness of any information provided by his attorney and he should not be barred from relief because of decisions he made based on information supplied by counsel when it is shown counsel did not satisfy the objective and reasonable standard found in Strickland.

Brinson has thus met his burden of showing that counsel's representation fell below an objective standard of reasonableness, resulting in prejudice and meriting relief under Grounds One and Two. See Strickland v. Washington, 466 US 668, 688 (1984).

Ground Three

The government euphemistically characterizes the conduct Brinson complains of in his third ground for relief as trial counsel "attempting to argue for a lower guidelines calculation," Dkt. 9 at 15, and describes counsel's complete ineptitude as "zealous advocacy." Id at 22. There is no hiding the fact that Nicolaysen had failed to fulfill his responsibilities and make necessary and proper preparation for presenting mitigating arguments at Brinson's sentencing hearing. Rather, his unfamiliarity with the basic content and mechanics of the federal sentencing guidelines was on full display as he presented frivolous, meritless arguments one-after-the-other. Ignoring the obvious, the government urges this Court to believe that Brinson's attorney may have had reasons for what he did, yet stops short of stating what professional strategy counsel may have been attempting to employ. The government suggests the Court give Nicolaysen "the benefit of the doubt" because there are "countless ways to provide effective assistance in any given case," presumably saying that one of the "countless ways to provide effective assistance" includes fashioning an advisory sentencing guidelines calculation using procedures of the attorney's own design rather than adhering to the instructions contained in the Sentencing Guidelines themselves.

There is simply no way to characterize Nicolaysen's erroneous sentencing calculations as mere errors. Nicolaysen based his entire sentencing argument on faulty calculations and baseless claims, revealing his ignorance of specific facts of the case, including facts Brinson admitted to (such as the age of the victim in each charged count). Nicolaysen's performance not only fell far afield from what could be reasonably considered "ordinary errors", as he exhibited a complete and utter unfamiliarity with the basic structure and mechanics of the sentencing guidelines. See United States v. Washington, 619 F.3d 1252, 1260 (10th Cir. 2010) (finding complete and utter unfamiliarity with the basic structure and mechanics of the sentencing guidelines amounts to ineffective assistance of counsel). The government apparently hopes to convince this Court that even though Nicolaysen failed to prepare and present proper mitigating arguments on Brinson's behalf, his "advocacy on behalf of defendant at sentencing clearly met the threshold of competent counsel." Dkt. 9 at 23. The fact that counsel prepared and presented such unfounded and meritless sentencing arguments is itself sufficient to find his representation of Brinson was ineffective.

The government devotes much space to everything except the facts brought forth by Brinson in his 2255. For example, in response to Brinson's argument that counsel relied on the incorrect criteria for standard of proof, the government simply states "There were no errors by the Court or defendant's attorney with respect to the standard of proof," Dkt. 9 at 18, even though counsel raised only legally-unsupported evidentiary claims to challenge the government's position.

    Yet nowhere in its brief does the government address Brinson's claim that the wildly erroneous sentencing guidelines calculations provided to him by counsel affected the intelligent and knowing nature of Brinson's plea. 2255 at 14 ("such highly erroneous guidelines calculations played a role in Brinson following counsel's advice to enter an open plea"). Brinson had been told by counsel that he need not to be concerned with sentencing calculations. Counsel had assured Brinson that the calculations didn't matter under an open plea, which he said protected Brinson from a life sentence. And yet counsel fashioned a completely erroneous sentencing level calculation without regard for the proper process as used by the prosecutor hoping to see Brinson punished to the fullest extent possible, the probation officer preparing the Pre-Sentence Report, and the Court reviewing sentencing options. Instead, counsel ignored entirely the instructions contained in the Guidelines themselves and "deliberately fashion[ed] an advisory sentencing guidelines sentence using his own made-up procedure." 2255 at 14. At minimum, such is proof that "counsel was either unfamiliar with, or simply chose to ignore, the nine-step procedure used to calculate the appropriate sentence under the Guidelines." Id.

    This Court seemed unimpressed with counsel's performance during sentencing, and will likely identify no new justification for counsel's unfounded arguments. It is patently clear counsel relied on his own contrived guidelines calculations and standards. Certainly the government does not mean to count not only incorrect but inexplicably erroneous guidelines calculations as among the "countless ways to provide effective assistance in any given case." Dkt. 9 at 16. Such cannot qualify under Strickland's "objectively reasonable" standard. The guidelines instructions are readily available and counsel was not without resources to assist him in properly calculating Brinson's sentencing guidelines range. Nor was counsel ignorant of the facts of the case presented in the Pre-Sentence Report. To argue at sentencing against facts which Brinson had previously admitted to in open court -- and did so based on counsel's instructions -- is not something a reasonable, competent attorney would attempt.

    Nicolaysen advised Brinson incorrectly regarding his offense level calculation, advised him incorrectly regarding the standard of proof the Court would apply at sentencing, and relied on incorrect information in preparing Brinson's sentencing arguments, resulting in counsel presenting ineffective and frivolous arguments at Brinson's sentencing hearing. In so doing, counsel employed an untenable and wholly unreasonable strategy that had absolutely no chance of success of persuading the Court to sentence Brinson in any way different than as advocated by the government.

    Brinson has shown Nicolaysen not only grossly mishandled the sentencing guidelines and incorrectly calculated his offense level, but in the absence of adequate representation, failed to present any availing sentencing arguments on Brinson's behalf. Such is not indicative of reasonable counsel and deserves a finding of ineffective assistance under Strickland.

Brinson's Uncontroverted Claims Warrant Relief

    Based on the facts presented herein and in his 2255, Brinson prays this Court grant relief in the form of an evidentiary hearing or as requested in his 2255.

Respectfully submitted this 7 day of November, 2025, by:

_____
John R. Brinson, Jr.

CERTIFICATE OF SERVICE AND MAILING

I, __John Richard Brinson, Jr,__ certify under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing attached _____

__MOVANT'S RESPONSE TO GOVERNMENT'S OPPOSITION BRIEF__

was deposited in the institutional legal mail system after being properly addressed to the address(es) listed below, having first-class postage prepaid, affixed to the envelope, on the date below. The original of the attached document was filed with the clerk of court using U.S. Postal Service, at the following addres:

| | |
|---|---|
| Western Division | Certified Mail Number: |
| Suite TS-134 | 9589-0710-5270-2967-2468-25 |
| 255 E. Temple St. | |
| Los Angeles, CA 90012 | |

A true and correct copy of the attached was served on:

| | |
|---|---|
| United States Attorney's Office | Certified Mail Number: |
| 312 North Spring Street | |
| Los Angeles, CA 90012 | |

I certify that the attached was filed with the Court, served on the above named party, and deposited in the institutional legal mail system on this __17th__ day of __November__, 20__25__. The attached is considered filed into the Court on the date above in accordance with __Houston v. Lack__, 101 L.Ed.2d 245 (1988).

/S/ _[signature]_

Case Name: __JOHN R. BRINSON, JR.,__ Vs. __UNITED STATES OF AMERICA__

Case Number: __2:25-cv-02652-AB; criminal (2:17-cr-00404-AB)__

